**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

SEATON INSURANCE COMPANY, f/k/a UNIGARD MUTUAL INSURANCE COMPANY,

Plaintiff,

v.

ILLINOIS UNION INSURANCE COMPANY, f/k/a GATX INSURANCE COMPANY,

Defendant.

Civil Action No.: 07-332-S

**PLAINTIFF SEATON INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY JENNIFER R. DEVERY, ESQ. AND PAUL W. KALISH, ESQ. OF CROWELL & MORING LLP**

Plaintiff Seaton Insurance Company, f/k/a Unigard Mutual Insurance Company ("Seaton"), submits this Memorandum of Law in support of its Motion to Disqualify Jennifer R. Devery, Esq. and Paul W. Kalish, Esq. of Crowell & Moring LLP from representing Defendant Illinois Union Insurance Company f/k/a GATX Insurance Company ("Illinois Union") in this matter. As set forth below and in the accompanying Affidavit of Joseph P. Follis dated January 17, 2008 ("Follis Aff."), the Crowell & Moring law firm ("C&M") ***currently represents Seaton in other cases*** and has done so in the past. [Follis Aff., ¶2]. Seaton does not consent to C&M's representation of interests that are adverse to Seaton's in this case. Accordingly, there is no basis under the applicable Rhode Island Rules of Professional Conduct for the Court to permit C&M to appear in this matter for Illinois Union and the Court should rule that C&M is disqualified from the representation. The Rhode Island Rules of Professional Conduct simply do not allow simultaneous representation by C&M of Seaton and a party who is adverse to Seaton's interests when Seaton has objected to the dual representation.

**STATEMENT OF FACTS**

This action was commenced by Seaton on August 31, 2007 in order to recover amounts that are owed to Seaton by Illinois Union under certain facultative reinsurance certificates. [Complaint, p. 1]. As of this date, Seaton has paid ***more than $3.5 million*** in defense and settlement costs for underlying asbestos claims asserted against its policyholder, Borg-Warner Corporation ("Borg-Warner"), under a policy that was issued by Seaton's predecessor to Borg-Warner for the period from September 1, 1974 to September 1, 1975. Illinois Union issued facultative reinsurance certificates pursuant to which it agreed to reimburse Seaton for any losses paid by Seaton under the Borg-Warner policy [Complaint, ¶¶7-20]. Although these losses have been presented in a timely manner to Illinois Union, the claims have not been paid in whole or in part, nor has Illinois Union advised Seaton of any specific claims or amounts that it contests. Instead, Illinois Union has simply engaged in a strategy of delay and stone-walling which ultimately forced Seaton to commence this action to recover the sums that are currently due under the reinsurance contracts and additional losses that will be paid in the future.

Illinois Union retained the law firm of Partridge, Snow & Hahn, LLP to represent its interests and, pursuant to an assented to extension, filed its Answer on November 13, 2007. [PACER No. 6]. In connection with responding to the Complaint, Illinois Union also retained the New York law firm of Mound, Cotton, Wollan & Greengrass to represent its interests in the case along with Partridge, Snow & Hahn LLP. Seaton assented to the motions for attorneys from Mound, Cotton to appear in the case *pro hac vice*. [PACER Nos. 7, 8] and the Court granted the Mound, Cotton attorneys' request for leave to appear on November 26, 2007. [See Text Order 11/26/07]. The Mound, Cotton attorneys were listed on the Answer filed by Illinois Union on

November 13, 2007. An initial Rule 16 Conference was set for December 13, 2007, but was adjourned by agreement with the approval of the Court due to the unavailability of counsel.

Thereafter, for reasons which have never been explained, Illinois Union apparently decided to switch counsel to appear in this case along with Partridge, Snow & Hahn. Having been granted leave to appear *pro hac vice*, the attorneys from Mound, Cotton abruptly filed a Notice of Withdrawal of Appearance on December 28, 2007 [PACER Nos. 11, 12]. At the same time, Illinois Union moved for the admission *pro hac vice* of Jennifer R. Devery, Esq. and Paul W. Kalish, Esq. of the Crowell & Moring firm located in Washington, D.C. [PACER Nos. 13, 14].

Seaton timely objected to Illinois Union's motions to admit Attorneys Devery and Kalish *pro hac vice* based upon a conflict of interest, as the law firm of C&M ***currently represents*** and has previously represented Seaton in matters in other jurisdictions, and now seeks to represent an adverse party at the same time that it is representing Seaton. [PACER Nos. 15, 16].[1] In connection with these other cases (including one that is currently pending) Seaton has provided C&M with privileged and confidential information relating to its business operations. [Follis Aff., ¶2]. Seaton had every reason to expect that C&M would maintain the privileged and confidential nature of such information and never be in a position to potentially use the information to harm Seaton's interests. [Follis Aff., ¶2]. Indeed, the central purpose of the rule

[1] At the time that Seaton's Objection to the *pro hac vice* applications of Crowell & Moring was filed, the case was assigned to Chief Judge Lisi and a Rule 16 Conference was set for January 9, 2008. As indicated in Seaton's Objection, Seaton suggested that the matter of Crowell & Moring's involvement in the case, including whether there was a need to fully brief the matter, be considered at the Scheduling Conference, which was then only a few days away. Thereafter, Judge Lisi issued an order cancelling the January 9, 2008 conference and recusing herself from further involvement in the case. The case was reassigned to District Judge Smith and Magistrate Judge Martin. A Rule 16 Conference is set for February 8, 2008.

barring dual representation without consent would be completely undermined if C&M is allowed to appear in the case over Seaton's vigorous objection.

Illinois Union (which is part of the ACE Group of Insurance Companies ("ACE")) was fully aware at the time it dismissed Mound, Cotton and filed the motions for the attorneys at C&M to appear that Seaton objected to any involvement of C&M in this case. Further, Seaton has not and does not agree to waive any conflict of interest that C&M has, and continues to oppose any attempt by C&M to represent Illinois Union in this lawsuit. [Follis Aff., ¶3]. Illinois Union subsequently filed a Reply Brief in response to Seaton's Objection on January 10, 2008 [PACER No. 20] admitting that "a purported conflict of interest may be grounds for a properly supported motion to disqualify," but arguing that determining any issue of disqualification before the attorneys are admitted *pro hac vice* is premature.

Seaton does not agree to waive the conflict of interest presented by C&M's current and prior representation of Seaton and its proposed representation of Illinois Union in this case. The purported "waiver" of conflicts of interest contained in the letter dated June 30, 2003 [attached as Exhibit 1 to Illinois Union's Reply Brief], from Clifford B. Hendler of Crowell & Moring to Thomas M. Ryan, Esq. of Randall America (an entirely unrelated corporation), is ***not*** binding upon Seaton and predates this suit by several years. [Follis Aff., ¶¶4-11]. Indeed, as Mr. Follis' Affidavit makes clear, Seaton never authorized Randall America to waive any conflict on its behalf. [*Id.*]. Certainly, there is no basis for the Court to find that this letter, which was not even signed by Seaton, constitutes a wholesale "blanket" waiver of all conflicts for all time—which is precisely the position being taken by Illinois Union here.

Randall America[2] and Seaton are two separate and entirely unrelated entities. [Follis Aff., ¶¶4-5]. In the past, Randall America f/k/a Eastgate, Inc. acted as a third-party administrator for Seaton pursuant to an "Agreement Relating to Administration of Run-Off Business" dated as of March 31, 1999 (the "Run-Off Agreement") [Follis Aff., ¶6; Exhibit A thereto]. The Run-Off Agreement sets forth the respective obligations, rights and duties of Seaton and Randall America, but nowhere in the Run-Off Agreement does Seaton explicitly or implicitly vest Randall America with the authority to waive conflicts of interest on its behalf in any particular matter, much less to agree to the "blanket" waiver of all cases for all time that Illinois Union now claims exists by virtue of the June 30, 2003 letter [Follis Aff., ¶7 and Ex. A]. Moreover, Seaton ***terminated*** the Run-Off Agreement and its relationship with Randall America as of March 31, 2006, nearly two years ago. [Follis Aff., ¶8; Ex. B thereto]. Nevertheless, Illinois Union inappropriately asserts that some type of waiver that is unbounded with respect to time, case or subject matter is in place and should be enforced here so that its counsel can represent Illinois Union against Seaton, a current client of C&M.

The context of the June 30, 2003 letter relied upon by Illinois Union makes it clear that Seaton did not waive any present or future conflicts of interest stemming from C&M's dual representation, much less agree to any type of "blanket" waiver that would tie its hands forever with respect to new cases that did not even exist in 2003. ***First,*** Thomas Ryan, Esq., the addressee of the June 30, 2003 letter, is ***not*** an employee of Randall America and has never worked for Randall America.[3] [Follis Aff., ¶9]. ***Second***, the letter is not a conflict of interest

[2] In its Reply Brief, Illinois Union asserts (without any factual support) that Randall America is presently known as Resolute New England. *See* Reply Brief, at 2. However, Resolute New England is ***not*** a successor to Randall America, and the two entities are ***not*** affiliated. [Follis Aff., ¶4].

[3] Nor has Mr. Ryan ever been an employee of Seaton. [Follis Aff., ¶9].

waiver, but instead relates to "business matters" which are "the last 'piece of the puzzle'" to confirm the relationship between C&M and Randall America (not Seaton) for the year 2003. The letter, which was marked by C&M as "privileged and confidential, attorney-client communication, attorney work product,"[4] details C&M's rates and staffing plans for cases to be administered by Randall America in 2003—some five years ago. The letter is not a conflict waiver by Seaton and there is no language in the letter which provides the Court with a basis to give it such effect. And in any event, any purported "consent" to waive a conflict in a case that did not even exist at the time has been revoked.

## ARGUMENT

### I. THE RHODE ISLAND RULES OF PROFESSIONAL CONDUCT DO NOT ALLOW CONCURRENT REPRESENTATION OF PARTIES WITH ADVERSE INTERESTS WITHOUT INFORMED CONSENT, WHICH HAS NOT BEEN GIVEN BY SEATON

Rule 1.7 of the Rhode Island Rules of Professional Conduct states, in part, that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Rules of Prof'l Conduct, R.1.7(a).[5] A lawyer with a concurrent conflict of interest may represent a client ***only*** if "each affected client gives informed consent, confirmed in writing." Rules of Prof'l Conduct, R.1.7(b). Informed consent expressly requires that each affected client have a reasonable opportunity to consider the risks and alternatives to the proposed concurrent representation. Rules of Prof'l Conduct R.1.7, cmt. 17, 19.

---

[4] Notwithstanding this designation, C&M filed this letter on the public docket of this Court.

[5] Pursuant to Local Rule 208, the Rules of Professional Conduct as adopted by the Rhode Island Supreme Court shall be the Standards of Professional Conduct for attorneys appearing and/or practicing before this Court, including those seeking admission *pro hac vice*. *See also Obert v. Republic Western Ins. Co.*, 190 F. Supp. 2d 279, 297-98 (D.R.I. 2002); *Haaffenreffer v. Coleman*, Civ. No. 06-299T, 2007 U.S. Dist. LEXIS 75432, at *5-6, n.1 (D.R.I. Oct. 10, 2007).

Moreover, courts are critical of "blanket" future conflict waivers and loath to give them effect. *Univ. of Rochester v. G.D. Searle & Co., Inc.*, Civ. No. 00-6161, 2000 U.S. Dist. LEXIS 19030, at *32 (W.D.N.Y. 2000); *see also Fla. Ins. Guaranty Ass'n, Inc. v. Carey Canada, Inc.*, 749 F. Supp. 225 (S.D. Fla. 1990) (striking down an advance waiver for insufficient consultation or full disclosure); *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 227-29 (7th Cir. 1978)(a document intended to grant standing consent must identify the possibility of future conflicts and the circumstances under which adverse representation would be undertaken); Restatement (Third) of Law Governing Lawyers §202, Comment d (1990) (courts have refused to infer from a general, prior consent that a client was consenting to later, conflicted representation). Even with advance consent, if circumstances develop that change the nature of the concurrent representation so that a conflict of interest arises, the consent may be ineffective. *See* Rules of Prof'l Conduct R.1.7, cmt. 21. And, of course, consent may always be revoked.

The duties of loyalty and confidentiality owed by attorneys to their clients require informed consent to the concurrent representation of parties with adverse interests. *See* Rules of Prof'l Conduct R.1.7, cmt. 6; Rules of Prof'l Conduct R.1.6. The scope of the duty of confidentiality under the Rules of Professional Conduct is broader than the range of information that would be protected under the attorney-client privilege. Rules of Prof'l Conduct R.1.6, cmt. 1. One of the primary concerns with conflicts of interest that arise in situations of concurrent representation is that counsel has access to information that is confidential to each client. *See Putnam Resources, L.P. v. Sammartino, Inc.*, 124 F.R.D. 530 (D.R.I. 1988).

Because of its current and former representation of Seaton, C&M has confidential information belonging to Seaton. [Follis Aff., ¶2]. As the client, Seaton is entitled to limit C&M's use of that information against Seaton by an adverse party. As the applicable rules state:

"A fundamental principle in the client-lawyer relationship is that the lawyer maintain confidentiality of information relating to the representation." R.I. Rules Prof'l Conduct R.1.6, cmt. 1. Cases interpreting this rule have noted that when an attorney is in possession of a client's confidential information, the attorney may not use that information in representing an adverse client. *See Falvey v. A.P.C. Sales Corp.*, 185 F.R.D. 120, 125 (D.R.I. 1999)(disqualifying a firm who had material and confidential information which could be used adversely to the client seeking disqualification); *Putnam Res., L.P. v. Sammartino, Inc.*, 124 F.R.D. 530, 532 (D.R.I. 1988)(resolving any doubts concerning the propriety of representation by disqualifying firm with confidential information that could be used adversely against the client seeking disqualification).

**A. Randall America Lacked the Authority To Waive Crowell & Moring's Conflict of Interest on Seaton's Behalf for All Time**

C&M has failed to present any evidence suggesting that Seaton knowingly consented in 2003 to any waiver of a conflict, much less a waiver that would be effective for all time as to all future cases in all jurisdictions and all circumstances. Randall America may have engaged C&M in its role as third-party administrator; however, Randall America lacked the authority under the Run-Off Agreement to act as Seaton's agent for the purpose of granting a conflict waiver, particularly one claimed to be of indefinite duration and to apply to all cases whenever and wherever filed and without regard to the nature of the dispute. The Run-Off Agreement specified the obligations, rights and powers of the respective parties. Nowhere in the Run-Off Agreement does Seaton explicitly or implicitly vest Randall America with the authority to waive conflicts of interest on its behalf, much less sign off on a purported "blanket" waiver that would survive the termination of Randall America as a third-party administrator.

Randall America's obligations and duties as a third-party administrator for Seaton are set forth on Schedule 1 of the Run-Off Agreement. As part of its claims handling services for



1104232v1

Seaton, Randall America was authorized to "liaise with professional advisers in respect of disputed Claims in terms of providing information, initial instructions and negotiating a budget." *See* Section 3.1 of Schedule 1 to the Run-Off Agreement. This Section 3.1 did not vest Randall America with the authority to consent to the representation of parties whose interests are adverse to Seaton. Randall America had no authority to bind Seaton to anything after the Run-Off Agreement was terminated.

Moreover, Section 8.1 of the Run-Off Agreement states that "[n]either party shall assign or deal in any other manner with any of their rights or obligations under this Agreement ***without the prior written consent of the other…***" (emphasis added). If Randall America intended to "consent" to the representation of both Seaton and other insurance carriers whose interests were adverse to Seaton's by the same counsel, then Randall America was required to obtain the prior written consent of Seaton. It did not. Seaton did not grant any such consent because it was never requested to do so by Randall America and any such unilateral action by Randall America exceeded the scope of its authority as third-party administrator under the Run-Off Agreement.

Not only did Randall America lack express authority to consent to C&M's dual representation of Seaton and other insurance companies who are adverse to Seaton, but Randall America also lacked implied authority to consent to the dual representation. Authority may be implied where the authority to conduct a transaction includes authority to do acts which are incidental to the transaction or are reasonably necessary to accomplish the transaction. *Transurface Carriers, Inc. v. Ford Motor Co.*, 138 F.2d 42, 45 (1st Cir. 1984). The purported "consent" to C&M's representation of Seaton and parties adverse to Seaton was neither incidental to nor necessary for the performance of the Run-Off Agreement. Therefore, Randall

America also lacked implied authority to consent to C&M's dual representation, particularly in a case that did not even exist at the time of the alleged "consent."

Illinois Union relies upon certain correspondence from C&M to Thomas Ryan, Esq. dated June 30, 2003 as a "waiver" of any conflicts in connection with C&M's representation of other insurance carrier clients. Even if Randall America had the requisite authority to act on Seaton's behalf, Thomas Ryan has never worked for Randall America. C&M cannot rely upon the authority of Mr. Ryan as an employee of Randall America to bind either Randall America or Seaton because Mr. Ryan was never an employee of either company. [Follis Aff., ¶9].

**B. Any Waiver of Crowell & Moring's Conflict of Interest Has Been Revoked by Seaton.**

Even if the Court could construe the June 30, 2003 letter to operate as a "waiver," the waiver has now been revoked by Seaton. A client who has consented to a conflict of interest may revoke its consent at any time. Rules of Prof'l Conduct R.1.7, cmt. 20. It is axiomatic that a client has the right to select its counsel. Under Rule 1.16 of the Rhode Island Rules of Professional Conduct, a client can discharge its attorney at any time, with or without cause. The Restatement of the Law Governing Lawyers accords the client the same rights for the revocation of waivers. Restatement of the Law Governing Lawyers §122, comment *f* (1958). Similarly, the Model Rules' view is that consent waivers are always revocable. Model Rules of Professional Conduct, cmt. 21.

Thus, even assuming that Randall America had the requisite authority to waive potential conflicts of interest stemming from C&M's dual representation of Seaton and other insurance carriers in 2003, Seaton has since revoked its consent. Seaton terminated the Run-Off Agreement as of March 31, 2006 and there is no contractual relationship between these parties. It would be manifestly inappropriate for the Court to rule that Seaton is forever bound by the



1104232v1

purported "waiver" given by a third-party administrator whose contract has been terminated as to all cases for all time. In August 2006, Seaton became aware of C&M's representation of another ACE insurance carrier with adverse interests in a proceeding wholly unrelated to this lawsuit. Upon learning of the concurrent representation and conflict of interest, Seaton promptly objected to C&M's representation of the adverse party. Seaton's timely objection to C&M's representation of the adverse party provided notice to C&M that Seaton objected to any attempts by C&M to engage in concurrent representation. [Follis Aff., ¶11].

C&M's reliance upon the June 30, 2003 letter, which is signed only by one of its own partners and ***not*** by any officer or employee of Seaton, is misplaced. Not only did the individual recipient of that letter lack authority to act on Seaton's behalf, but Randall America also lacked the authority to consent to C&M's concurrent representation of Seaton and adverse parties. Even if Randall America had the authority to consent to the concurrent representation by virtue of the Run-Off Agreement, upon termination of the Run-Off Agreement as of March 31, 2006, any of Randall America's implied authority thereunder was terminated. Moreover, Seaton expressly objected to C&M's concurrent representation of an adverse party in other proceedings and has thus been on notice before this suit was even filed that it would be inappropriate for C&M to appear in the case. Any consent by or on behalf of Seaton to C&M's representation of parties with adverse interests has been withdrawn; permitting the representation of Illinois Union by C&M here would be a violation of the Rhode Island Rules of Professional Conduct.

## II. IT IS WITHIN THE COURT'S DISCRETION TO DENY ADMISSION *PRO HAC VICE.*

Counsel admitted *pro hac vice* appear by permission of the Court and are allowed to practice on a case-by-case basis. *Obert v. Republic Western Ins. Co.*, 190 F. Supp. 2d 279, 297 (D.R.I. 2002). *Pro hac vice* admission is generally a privilege and not a right. *Id.* at 298. In

deciding whether to admit counsel *pro hac vice*, "the client's interest should be paramount, not counsel's interests." *Id.* A court is entitled to disqualify *pro hac vice* counsel without a hearing upon knowledge of counsel's conflict of interest. *Id.* at 299. Here, the Court allowed attorneys who did not have a conflict of interest to appear in the case; there is no reason for the Court to tolerate Illinois Union's abuse of the privilege by seeking to substitute out-of-state counsel known to have a conflict of interest.

Illinois Union would not be prejudiced in any way by the disqualification of Attorneys Devery and Kalish and of C&M, nor does the disqualification adversely affect the current litigation. Illinois Union is well-represented by the law firm of Partridge, Snow & Hahn LLP and by attorneys who are members in good standing of the bar of Rhode Island who do have a conflict of interest. Illinois Union made the choice to have New York counsel who had been admitted in the case withdraw with absolutely no assurance that the Court would permit a substitution and with full knowledge that their newly chosen counsel was conflicted. In addition, a decision by the court on counsel's admission *pro hac vice* early in the litigation "preserve[s] the integrity of the proceeding" (*Obert*, 190 F. Supp. 2d at 299) and provides for the efficient administration of justice. *Haaffenreffer v. Coleman*, Civ. No. 06-299T, 2007 U.S. Dist. LEXIS 75432, at *5-6, n.1 (D.R.I. Oct. 10, 2007). Any doubt about disqualification because of conflict of interest in concurrent representation should be resolved in favor of disqualification. *Falvey v. A.P.C. Sales Corp.*, 185 F.R.D. 120, 126 (D.R.I. 1999)

## CONCLUSION

For the foregoing reasons, Seaton respectfully requests that the Court disqualify Jennifer R. Dever, Esq. and Paul W. Kalish, Esq., and any other attorneys associated with Crowell and Moring, LLP, from representing Illinois Union in this matter and deny Illinois Union's Motion

for Admission *Pro Hac Vice* of Attorneys Devery and Kalish. Further, insofar as Illinois Union persisted in seeking to have C&M appear in this action notwithstanding the presence of a clear conflict, Seaton should be awarded its attorneys' fees and costs incurred in bringing this Motion.

Respectfully submitted,
**SEATON INSURANCE COMPANY, f/k/a**
**UNIGARD MUTUAL INSURANCE COMPANY**
By its attorneys,

*/s/ John T. Harding*

John T. Harding, *pro hac vice*
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
(617) 439-7500

Thomas M. Robinson, RI Bar # 6193
MORRISON MAHONEY LLP
10 Weybosset Street, Suite 900
Providence, RI 02903-7141
(401) 331-4660

Dated: January 17, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the Electronic Case Filing (ECF) system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 17, 2008.

*/s/ John T. Harding*

John T. Harding