**From:** Hendler, Cliff
**Sent:** Tuesday, October 03, 2006 12:46 PM
**To:** 'Joe Follis'
**Subject:** FW: Seaton Insurance and Crowell & Moring
**Attachments:** SFX41B8.pdf

Privileged and Confidential

Joe: These conflicts understandings that enabled us to obtain ACE USA Companies' consent to begin representing Seaton ar Stonewall, and ultimately other carriers as well, went back to the very early days of what was then called Randall America, whe Bob Burns sought to bring us in to replace certain prior counsel that Bob had less confidence in.

Soon into that process, Tom Ryan took over the leadership of that organization, and we worked directly with Tom Ryan or conflicts issues. In that connection, you may find helpful (and I have attached as a PDF) a June 30, 2003 letter to Tom Ryan th memorialized billing rates for 2003, but also included a recap of conflicts understandings at pages 3-4. Essentially, ACE USA Companies -- which had the power to refuse to consent to our firm taking on the Seaton and Stonewall representations -- insis on conditions under which ACE USA Companies would be "no worse off" for granting the consents than they would have been had they refused the consents. Seaton and Stonewall acquiesced in order to obtain our firm's services, apparently figuring that advantages to Seaton and Stonewall from the upgrade in representation would be real and immediate, and the potential downs that Crowell & Moring might at times be adverse to Seaton and Stonewall was speculative (and probably that even if Crowell & Moring itself did not take the positions adverse to Seaton and Stonewall, some other firm would be retained to take those very same positions against Seaton and Stonewall anyway).

I hear your concerns. Things had worked smoothly as to conflicts matters for five and a half years, and I am very frustrated that concerns have arisen at this time, just when the circumstances might suggest possibilities for our firm to play a greater rol defending Seaton and Stonewall. I will give you a call to follow up, but wanted to send you this PDF right away to be responsiv to your e-mail.

Thanks very much for taking the time to try understand the background of the conflicts understandings that, on the one har did not give Seaton and Stonewall a right to veto ACE USA Companies having Crowell & Moring act adversely to Seaton and Stonewall, but did, on the other hand, win for Seaton and Stonewall the ability to use Crowell & Moring legal services over whi ACE USA Companies had, to that point, essentially had a monopoly. I very much appreciate your consideration. Cliff H.

Clifford B. Hendler, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

Phone: 202-624-2928
Fax: 202-628-5116
chendler@crowell.com

---

**From:** Joe Follis [mailto:joe.follis@castlewood-us.com]
**Sent:** Tuesday, October 03, 2006 11:48 AM
**To:** Hendler, Cliff
**Subject:** Seaton Insurance and Crowell & Moring

Cliff, this development remains a significant concern to Seaton. Please provide me with a copy of the conflicts waivers that yo refer to below. If such waivers are not in writing, then Seaton would like to know the specifics of such waivers, including who provided the waivers; when; and what, specifically, was provided for.

I don't know what might have occurred prior to my arrival, but today (and going forward), Seaton is not expecting to be sued by firms that represent us.... I trust that you can understand as much.

Joe

Joseph P. Follis
Vice President
Seaton Insurance Company

---

**From:** Hendler, Cliff [mailto:CHendler@crowell.com]
**Sent:** Monday, October 02, 2006 10:09 PM
**To:** Joe Follis
**Cc:** Robert Burns
**Subject:** Seaton Insurance and Crowell & Moring

Privileged and Confidential/ Attorney Client Communication/ Attorney Work Product

Joe: I hope had a good weekend. I wanted to send you this e-mail to follow up on a discussion that I had with Bob Burns or Friday afternoon regarding the fact that my new reinsurance partner, Bill O'Neill, has initiated some kind of reinsurance arbitrati against Seaton. Bob thought it might make sense for me to share directly with you some of the ideas and background that I discussed with Bob.

As you may remember from a long voicemail that I left for you at the time back in August, Bill evidently initiated the arbitration on behalf of one or more ACE USA Companies. (Because of an ethics wall that we set up within the firm, and that I \ say more about in a minute, I have never seen the actual document that Bill apparently sent to Seaton.)

Conflicts waivers going back to earliest days of our firm's representation of Stonewall and Seaton permitted Bill to initia the reinsunce matter as a matter of legal ethics, but in talking with Bob on Friday afternoon, it seemed to me important to share with you more of the background.

Back in 2001 when my partner Andy Marks and I were first approached about representing Stonewall and Seaton, A( USA Companies essentially had a monopoly on using Crowell & Moring's legal services. ACE USA Companies and predecessors had asked Crowell & Moring to do large volumes of cases for over a dozen years, and, in return, ACE USA Companies insisted that Crowell & Moring not represent other general liability carriers (a) so that there would never be a shorta of Crowell insurance team lawyers to help them and (b) so that Crowell & Moring would always be free as a conflicts matter to pursue claims on ACE USA Companies' behalf against other carriers, if necessary.

While Andy and I greatly appreciated the opportunities to represent the ACE USA Companies, Andy and I and our colleagues also very much wanted to take on the new work for Stonewall and Seaton, where it sounded like we might have an opportunity to build an innovative partnership with Stonewall and Seaton and help Stonewall and Seaton achieve better financi results by upgrading the calibre of their legal representation and by participating in strategic planning for the books of business be defended. But we absolutely could not take on those two proposed new representations, unless we could first persaude the ACE USA Companies to drop their insistence on having a monopoly over our firm's legal work.

One of the most difficult negotiations -- but for my firm, most important negotiations -- that I ever conducted was the process of dialogue through which the ACE USA Companies ultimately agreed to drop their insistence that our firm represent c ACE USA Companies. In the end, ACE USA Companies decided to trust that we had the depth of expertise and commitment them to deliver the services that they needed, even if key partners like myself also become dedicated to helping Stonewall an Seaton. But a key term that ACE USA Companies insisted upon, and that Stonewall and Seaton ultimately agreed to accept ir order to obtain our services, was the proviso that if ACE USA Companies needed Crowell & Moring to pursue claims against Stonewall or Seaton, Stonewall or Seaton would not object on conflicts grounds, i.e. Stonewall and Seaton would not argue th Crowell & Moring could not proceed on behalf of ACE USA Companies against Stonewall and Seaton on the basis that Stonev and Seaton are Crowell & Moring clients too.

Stonewall and Seaton agreed to ACE USA Companies' conditions; Crowell & Moring had the opportunity to begin working with Stonewall and Seaton on some of their most significant matters, even as we continued to meet ACE USA Companies' needs; our firm thanked both groups of clients very much; and -- at least until August -- things had worked out fine a conflicts matter for five and a half years.

When my reinsurance partner was instructed to initiate that reinsurance matter adverse to Seaton -- exercising the rigl that ACE USA Companies had so emphatically reserved five and a half years earlier -- I immediately left voicemails for you an Ray and Bob, and I set up an internal ethics wall here at the firm so that Bill and attorneys working with him adverse to Seaton the reinsurance issues do not discuss that work against Seaton with those of us like me who represent Seaton. Likewise, those us who represent Seaton do not discuss our work for Seaton with the attorneys doing the reinsurance work against Seaton.

Especially after my trip to Rhode Island to meet with you about REDACTED , I had high hopes that there might be new possibilities for our firm to work for Seaton and Stonewall, if we could deliver superior results with the cost-effectiveness that companies in run off have no choice but to require. And I so did not want Bill's initiation of the reinsurance proceeding to confuse you or Ray or Bob about my dedication zealously to represent Seaton and Stonewall in the current matte entrusted to us (and hopefully future matters as well, if we could earn that work through successes with our current docket).

Bottom line, the fact that ACE USA Companies had a "right" to have our firm initiate the reinsurance arbitration, and the fact that the ethics wall insures that ACE USA Companies cannot, as a practical matter, somehow obtain an unfair advantage ir the reinsurance arbitration by getting me or other attorneys representing you to help them, does NOT, of course, end the discussion. You and your colleagues need to be comfortable with me (and with the other Crowell & Moring lawyers working for you), and you need to have confidence that we are zealously looking to protect your interests in all of the matters entrusted to ι To the extent that you are not sure about us, it is completely up to you to decide not to retain us for any future work or even to fi us off of some or all of the existing cases in which we are representing you, subject to your recognizing the disadvantages that bringing in new counsel at this point could have for Seaton or Stonewall in particular ongoing cases.

Thus, my goal with this e-mail is to figure out the best way to reassure you and your colleagues of our loyalty and dedication to the Seaton and Stonewall work that you have been counting on us to do for you. In sum, I am looking to have yoι conclude that our experience and lawyering skills make us the best possible lawyers to get the best possible substantive results those cases for you, and to have you conclude that you can fully count on our dedication and loyalty to apply that experience ai those skills on your behalf.

In that connection, Bob shared with me that you have reason to believe that Carl Wall himself may be concerned about this situation of my defending Seaton in some cases, even as a partner of mine has initiated a reinsurance arbitration against Seaton. You, Ray and Bob have met me personally and had the chance to work with me and a number of my colleagues for several months now (and Bob, and Ray to a lesser extent, have had experience working with me and colleagues of mine from prior positions). But so far as I can recall, Carl Wall and I have never met, and I may be just a name to him.

In these circumstances, I thought of two things that I might do to help work all of this out. First, it seemed to me to make sense for the two of us to talk either by phone or face to face, so that I can answer any questions that you might have about th historical background and I can reassure you directly of my continued dedication to partnering with Seaton and Stonewall, as w discussed when I flew up to meet with you before the REDACTED mediation this summer.

Second, to underscore for Carl Wall my continued commitment to representing Seaton and Stonewall, notwithstanding my partner's having initiated a reinsurance arbitration, it occurred to me that it might make sense for me to fly down Carl's office Florida, so that I could explain the historical background to him and give him an opportunity to size up for himself one of the lea partners from a firm that is very much hoping to get to continue to do important work for Seaton and Stonewall. At a minimum, I suggesting such a trip, I would want to convey how seriously we take wanting to maintain your, Ray, Bob and Carl's confidence us. Do you think that it would be a good idea for me to try to arrange such a meeting, and, if so, would the best approach be fo me to call Carl directly or would it be to ask if you might be willing to help set up a such meeting, since you know both of us?

Anyhow, as I mentioned in my voicemail for you Sunday night, I will give you a call Tuesday afternoon to see if you ha had an opportunity to read through this long e-mail, and, if so, if you have any initial questions or reactions. I so much enjoyed t spirit of our discussions in August, and really hope that we will all be able to get past the concerns that my partner's initiating th reinsurance arbitration has raised. Thank you very much for your consideration! Cliff Hendler

Clifford B. Hendler, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

Phone: 202-624-2928
Fax: 202-628-5116
chendler@crowell.com