# EXHIBIT A

# AMERICAN BAR ASSOCIATION

STANDING COMMITTEE ON ETHICS AND PROFESSIONAL RESPONSIBILITY

**Formal Opinion 05-436** **May 11, 2005**

**Informed Consent to Future Conflicts of Interest;**
**Withdrawal of Formal Opinion 93-372**

*The Model Rules contemplate that a lawyer in appropriate circumstances may obtain the effective informed consent of a client to future conflicts of interest. General and open-ended consent is more likely to be effective when given by a client that is an experienced user of legal services, particularly if, for example, the client is independently represented by other counsel in giving consent and the consent is limited to future conflicts unrelated to the subject of the representation. Rule 1.7, as amended in February 2002, permits a lawyer to obtain effective informed consent to a wider range of future conflicts than would have been possible under the Model Rules prior to their amendment. Formal Opinion 93-372 (Waiver of Future Conflicts of Interest)[1] therefore is withdrawn.*

This opinion applies the ABA Model Rules of Professional Conduct[2] to the subject of a lawyer obtaining a client's informed consent to future conflicts of interest. The Committee concludes, for the reasons discussed below, that ABA Model Rule of Professional Conduct 1.7 permits effective informed consent to a wider range of future conflicts than would have been possible under the Model Rules prior to their amendment.

## Model Rules 1.7, 1.6, and 1.9

Rule 1.7 addresses concurrent conflicts of interest and the circumstances in which a lawyer may, with the informed consent of each affected client, represent a client notwithstanding a concurrent conflict. Rule 1.6, regarding confidentiality of information, and Rule 1.9, regarding duties to former clients, are relevant with respect to the confidentiality issues relating to obtaining such consent.

In 1993, when the Committee issued Opinion 93-372, the Model Rules did

---

1. ABA Formal Opinion 93-372 (April 16, 1993), in FORMAL AND INFORMAL ETHICS OPINIONS 1983-1998 167 (ABA 2000).

2. This opinion is based on the Model Rules of Professional Conduct as amended by the American Bar Association House of Delegates through August 2003. The laws, court rules, regulations, rules of professional conduct, and opinions promulgated in the individual jurisdictions are controlling.

---

AMERICAN BAR ASSOCIATION STANDING COMMITTEE ON ETHICS AND PROFESSIONAL RESPONSIBILITY, 321 N. Clark Street, Chicago, Illinois 60610-4714 Telephone (312)988-5300 CHAIR: Charles E. McCallum, Grand Rapids, MI ❑ Elizabeth Alston, Mandeville, LA ❑ William B. Dunn, Detroit, MI ❑ Marcia B. Marsh Goffney, Canton, MI ❑ James A. Kawachika, Honolulu, HI ❑ Steven C. Krane, New York, NY ❑ E. Fitzgerald Parnell, III, Charlotte, NC ❑ John P. Ratnaswamy, Chicago, IL ❑ Irma Russell, Memphis, TN ❑ CENTER FOR PROFESSIONAL RESPONSIBILITY: George A. Kuhlman, Ethics Counsel; Eileen B. Libby, Associate Ethics Counsel

© 2005 by the American Bar Association. All rights reserved.

not expressly address a client's giving informed consent to future conflicts of interest. Moreover, no Rule or Comment[3] provided express guidance as to when an earlier matter for a former client and a later matter for a different client should be considered substantially related. In 2002, that changed in both respects.

In February 2002, Model Rule 1.7 was restructured and revised. Rule 1.7(a) defines a "concurrent conflict of interest."[4] Rule 1.7(b) addresses the circumstances under which a lawyer may undertake or continue representation of a client in reliance upon the client's informed consent to a conflict:

> Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

The Comments to Model Rule 1.7 were also revised. New Comment [22] expressly addresses the subject of a client's giving informed consent to future conflicts:

> Whether a lawyer may properly request a client to waive conflicts that might arise in the future is subject to the test of paragraph (b) [of Model Rule 1.7]. The effectiveness of such waivers is generally determined by the extent to which the client reasonably understands the material risks that the waiver entails. The more comprehensive the explanation of the types of future representations that might arise and the actual and reasonably foreseeable adverse consequences of those representations, the greater the likelihood that the client will have the requisite understanding. Thus, if the client agrees to consent to a particular type of conflict with which the client is already familiar, then the consent ordinarily will be effective with regard to that type of conflict. If the consent is general and open-ended, then the consent ordinarily will be ineffective, because it is not reasonably likely that the client will have understood the material risks involved. On the other hand, if the client is an experienced user of the legal services involved and is reasonably informed regarding the risk that a conflict may arise, such consent is more likely to be effective, particularly if, e.g., the client is independently represented by other counsel

---

3. "The Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule.... The Comments are intended as guides to interpretation, but the text of each Rule is authoritative." MODEL RULES OF PROFESSIONAL CONDUCT PREAMBLE: A LAWYER'S RESPONSIBILITIES cmt. 21.

4. What constitutes a conflict of interest is beyond the scope of this opinion.

in giving consent and the consent is limited to future conflicts unrelated to the subject of the representation. In any case, advance consent cannot be effective if the circumstances that materialize in the future are such as would make the conflict nonconsentable under paragraph (b).

The Committee believes that the term "waiver," as used in the first part of Comment [22], is intended to mean the same thing as the term "informed consent," as used in Rule 1.7 and elsewhere in the Comments.

We interpret the meaning of the term "unrelated to the subject of the representation" in Comment [22] by referring to Comment [3] to Model Rule 1.9, also added in February 2002. Comment [3] provides guidance on when an earlier matter for a former client and a later matter for a different client are to be considered "substantially related." The Comment, which is lengthy, begins with the general principle that "[m]atters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." We are of the opinion, therefore, that the term "unrelated to" as used in Comment [22] should be read as meaning not "substantially related to," as that term is used in Rule 1.9 and its Comment [3], i.e., that the future matters as to which the client's consent to the lawyer's conflicting representation is sought do not involve the same transaction or legal dispute that is the subject of the lawyer's present representation of the consenting client, and are not of such a nature that the disclosure or use by the lawyer of information relating to the representation of the consenting client would materially advance the position of the future clients.

**Opinion 93-372**

As noted above, when the Committee issued Opinion 93-372 no Model Rule or Comment expressly addressed informed consent to future conflicts of interest, and none provided express guidance on when successive matters for different clients are to be considered substantially related. Opinion 93-372 cites Model Rules 1.7 and 1.6, Disciplinary Rule 5-105(c) of the predecessor Model Code of Professional Responsibility, and authorities that pre-date (with the exception of one decision) the Model Rules. Opinion 93-372 does not cite Model Rule 1.9.

Opinion 93-372 concludes that the effectiveness of a client's "consent after consultation"[5] is generally limited to circumstances in which the lawyer is able to and does identify the potential party or class of parties that may be represent-

5. In 2002, as a result of a recommendation by the ABA Commission on Evaluation of the Rules of Professional Conduct, the term "consent after consultation" was replaced in the Model Rules with the term "informed consent." No change in the meaning of the term as it is used in Rule 1.7 and in other affected Rules was intended by this amendment. *See* "Model Rule 1.0, Reporter's Explanation of Changes" ¶ 5, available at http://www.abanet.org/cpr/e2k-rule10rem.html.

ed in the future matter(s). Opinion 93-372 also concludes that, in some instances, the lawyer may need to identify the nature of the likely future matter(s). Although Opinion 93-372 acknowledges that clients differ in their level of sophistication, the opinion does not vary its conclusions as to the likely effectiveness of informed consent to future conflicts when the client is an experienced user of legal services or has had the opportunity to be represented by independent counsel in relation to such consent. Also, although Opinion 93-372 is based to a considerable degree on concerns about the possibility of disclosure or use of the client's confidential information against it in a later matter,[6] it does not address those concerns in the context of the lawyer's seeking informed consent that is limited to future matters that are not substantially related to the client's matter. An informed consent that is limited to future matters that are not substantially related should not raise the concerns regarding the disclosure and use of confidential information that were among the central considerations underlying Opinion 93-372, given the criteria, discussed earlier, for determining whether successive matters are substantially related.

Comment [22] supports a lawyer's seeking, and the effectiveness of, a client's informed consent to future conflicts of interest in the circumstances that are acknowledged by Opinion 93-372. The Comment goes further, however, by supporting the likely validity of an "open-ended" informed consent if the client is an experienced user of legal services, particularly if, for example, the client has had the opportunity to be represented by independent counsel in relation to such consent and the consent is limited to matters not substantially related to the subject of the prior representation. Thus, Opinion 93-372 is no longer consistent with the Model Rules.[7]

**Additional Limitations and Requirements**

The Committee notes the following additional limitations and requirements relating to a client's giving informed consent to a future conflict of interest. First, under Rule 1.7(b)(2) and (3), some conflicts are not consentable.[8] An

6. Opinion 93-372 stated that consent to waive a future conflict of interest does not have the effect of authorizing the lawyer to reveal or use confidential client information. *See* FORMAL AND INFORMAL ETHICS OPINIONS 1983-1998 at 171-73. That remains the case. *See also* Rules 1.6(a) and 1.9(b)(2) and (c)(1). Opinion 93-372's reliance on confidentiality concerns as a basis for limiting the scope of the effectiveness of consent to future conflicts seemed to be based on the risk that the lawyer later may violate Rules 1.6 or 1.9. The Committee does not view the hypothetical risk that the lawyer later might violate the Model Rules as a sufficient basis for proscribing the sort of informed consent to future conflicts contemplated by Rule 1.7 cmt. 22.

7. Opinion 93-372's limitation of the scope of effective consent to future conflicts, which is its central conclusion, is inconsistent with the amended Model Rules. Hence, we withdraw Opinion 93-372 in its entirety. The Committee notes that other conclusions in Opinion 93-372 on related points are consistent in whole or in part with the Model Rules as amended; those other conclusions are incorporated in this opinion.

8. *See also* Model Rule 1.7 cmts. 14 to 17.

informed consent to a future conflict (like an informed consent to a current conflict) cannot alter that circumstance. Second, under Rule 1.7(b)(4), the client's informed consent must be confirmed in writing. Third, as noted earlier, a client's informed consent to a future conflict, without more, does not constitute the client's informed consent to the disclosure or use of the client's confidential information against the client. Finally, a lawyer, when considering taking on a later matter covered by an informed consent given in advance, even if the conflict is consentable, still must determine whether accepting the engagement is impermissible for any other reason under Rules 1.7(b) and 1.9, or any other Model Rule. The lawyer also must determine whether informed consent is required from the client that is to be represented in that later matter.