**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

SEATON INSURANCE COMPANY, f/k/a UNIGARD MUTUAL INSURANCE COMPANY,

Plaintiff,

v.

ILLINOIS UNION INSURANCE COMPANY, f/k/a GATX INSURANCE COMPANY,

Defendant.

Civil Action No.: 07-332-S

**SUPPLEMENTAL AFFIDAVIT OF JOSEPH P. FOLLIS**
**IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL**

I, Joseph P. Follis, make the following supplemental affidavit under oath in support of Plaintiff's Motion to Disqualify Counsel. In particular, this affidavit is submitted to address certain matters that were raised by Defendant Illinois Union Insurance Company f/k/a GATX Insurance Company ("Illinois Union") in its Memorandum in Opposition to Plaintiff's Motion to Disqualify Counsel and the supporting Declarations of Clifford B. Hendler and Mark D. Plevin. As set forth below, Plaintiff Seaton Insurance Company f/k/a Unigard Mutual Insurance Company ("Seaton") is a current client of Crowell & Moring, and Seaton has not consented to Crowell & Moring appearing in this action on behalf of an adverse party. Moreover, Crowell & Moring has been well aware of Seaton's objections to Crowell & Moring concurrently representing Seaton and entities adverse to Seaton since at least October 2006, when I specifically advised Mr. Hendler that I never expected to be sued by my company's current attorneys and that I would not agree to waive any such conflicts going forward with respect to new claims such as the one involved in this case. I further state as follows:

1. I am the Vice President of Seaton and am fully familiar with its business, including the matters that are the subject of this case and that are discussed in the Opposition Brief dated February 4, 2008 filed on behalf of Illinois Union in response to the Motion to Disqualify Crowell & Moring filed by Seaton in this action.

2. The law firm of Crowell & Moring LLP ("C&M") currently represents Seaton in other active litigation and has previously represented Seaton in litigations in other jurisdictions.

3. Seaton has objected and continues to object to C&M's representation of parties adverse to Seaton, including C&M's proposed representation of Illinois Union here.

4. As of March 31, 1999, Seaton entered into an Agreement Relating to Administration of Run-Off Business (the "Run-Off Agreement") with Randall America, f/k/a Eastgate, Inc. ("Randall America"), pursuant to which Randall America acted as a third-party administrator for Seaton with respect to the handling of claims.

5. During the time that Randall America was handling claims on behalf of Seaton, I was not aware of the June 30, 2003 letter sent by Mr. Hendler to Mr. Ryan that is relied upon by C&M to support its claim that there was some type of agreement in place to waive conflicts involving the representation by C&M of the ACE Companies. In any event, as explained by Thomas Ryan in the affidavit that he has submitted in this action, it was never Mr. Ryan's intention to enter into any type of blanket waiver of conflicts involving the ACE Companies that would apply to all claims for all time. Instead, as Mr. Ryan explains, and as the June 30, 2003 letter clearly states, the only understanding that was in place as of that time was that companies whose claims were being handled by Randall America would not use the fact that C&M represented them in certain matters as a grounds for disqualifying C&M in large, multi-defendant insurance coverage cases based upon the fact that there could be a theoretical divergence in the

interests of such companies and the ACE Companies on particular issues. As Mr. Ryan clearly explains, the June 30, 2003 letter was never intended by him to constitute some type of blanket waiver of all future conflicts (such as this one) where the interests of a company whose claims had been handled by Randall America were actually adverse to the interests of the ACE Companies.

6. Seaton terminated the Run-Off Agreement and its relationship with Randall America as of March 31, 2006. Accordingly, as of that date, no employee of Randall America (including Mr. Bendig) had any authority to take any position on behalf of Seaton with respect to the issue of conflict waivers. Thus, any statement by Mr. Bendig concerning the June 30, 2003 letter is entirely beside the point, particularly as there is nothing to suggest that he had any role in negotiating the rates and discussing the other issues included in the letter at the time it was sent.

7. In August and September 2006, C&M, on behalf of certain ACE Companies, issued arbitration demands for two separate claims against Seaton, both of which are unrelated to the claims that are the subject of this litigation. No arbitration panel was selected in either matter as the parties attempted to reach a settlement, and both arbitrations were stayed until November 2007.

8. Upon learning of C&M's representation of parties adverse to Seaton in the arbitrations, I contacted C&M and explicitly objected to the dual representation. Specifically, on October 3, 2006, I sent an e-mail message to Clifford B. Hendler of C&M stating that "***today (and going forward), Seaton is not expecting to be sued by firms that represent us***." A copy of my October 3, 2006 e-mail is attached to Mr. Hendler's Declaration as Exhibit C. [For the Court's convenience another copy of this e-mail is attached as Exhibit A hereto].

9. In response to my objection to C&M's representation, Mr. Hendler forwarded to me by e-mail a copy of a letter from C&M to Thomas Ryan of Randall America dated June 30, 2003. [A copy of Mr. Hendler's October 3, 2006 e-mail is attached to Mr. Hendler's Declaration as Exhibit C, and a copy of the June 30, 2003 letter is attached to Mr. Hendler's Declaration as Exhibit A]. However, Mr. Hendler did not otherwise challenge my position on behalf of Seaton that C&M was disqualified from representing the ACE Companies in matters directly adverse to Seaton as there was no consent to such dual representation. Further, neither Mr. Hendler nor anyone else from C&M sought to negotiate a waiver agreement with Seaton at any time thereafter.

10. Seaton has no record of ever receiving a copy of the June 30, 2003 letter until October 3, 2006, well ***after*** Seaton had terminated its relationship with Randall America. Further, to the extent that C&M relies upon an e-mail from Mr. Bendig dated June 16, 2006 regarding his "interpretation" of the June 2003 letter, his statement also post-dated the termination of Seaton's agreement with Randall America.

11. Seaton did not sign the June 30, 2003 letter, nor did Seaton agree to waive all conflicts of interest in perpetuity. Seaton did not receive any consideration from C&M for the purported "blanket" waiver of all conflicts of interest for all time, without regard to the facts and circumstances of any particular claim. Neither Seaton (nor Randall America) could have known about all cases and claims that might arise in the future, including the claims that are the subject of this case and therefore could not have given informed consent at the time. Moreover, as Mr. Ryan's affidavit makes clear, the arrangement that was reached between Randall America and C&M was limited to a very narrow category of cases totally unlike the circumstances here.

12. As set forth above, I explicitly advised C&M that Seaton did not consent to dual representation and did not expect C&M's attorneys to be representing parties whose interests are adverse to Seaton's. C&M did not seek a waiver from Seaton of the conflict of interest after Seaton clearly objected to C&M's representation of adverse parties in the 2006 arbitrations. Instead, C&M, on behalf of certain ACE Companies, issued to Seaton demands for arbitration for seven new matters in November 2007. Also in November 2007, the stays on the 2006 arbitrations were lifted as the parties were unable to reach a settlement.

13. In December 2007, defendant Illinois Union sought to replace its counsel with C&M. Again, C&M never sought Seaton's consent to the proposed representation of Illinois Union in this matter.

14. Seaton does not agree to waive the conflict of interest presented by C&M's current and prior representation of Seaton and the proposed representation of Illinois Union in this lawsuit. C&M has been on clear notice since October 2006 that Seaton would not consent to any such representation.

Signed under the pains and penalties of perjury this 19 day of February 2008.

Joseph P. Follis

Joseph P. Follis, Vice President