**EXHIBIT A**

**From:** Joe Follis [joe.follis@castlewood-us.com]
**Sent:** Tuesday, October 03, 2006 11:48 AM
Hendler, Cliff
**Subject:** Seaton Insurance and Crowell & Moring

Cliff, this development remains a significant concern to Seaton. Please provide me with a copy of the conflicts waivers that you refer to below. If such waivers are not in writing, then Seaton would like to know the specifics of such waivers, including who provided the waivers; when; and what, specifically, was provided for.

I don't know what might have occurred prior to my arrival, but today (and going forward), Seaton is not expecting to be sued by firms that represent us.... I trust that you can understand as much.

Joe

Joseph P. Follis
Vice President
Seaton Insurance Company

---

**From:** Hendler, Cliff [mailto:CHendler@crowell.com]
**Sent:** Monday, October 02, 2006 10:09 PM
**To:** Joe Follis
**Cc:** Robert Burns
**Subject:** Seaton Insurance and Crowell & Moring

Privileged and Confidential/ Attorney Client Communication/ Attorney Work Product

Jo[illegible] I hope had a good weekend. I wanted to send you this e-mail to follow up on a discussion that I had with Bob Burns on Fri[illegible] afternoon regarding the fact that my new reinsurance partner, Bill O'Neill, has initiated some kind of reinsurance arbitration against Seaton. Bob thought it might make sense for me to share directly with you some of the ideas and background that I discussed with Bob.

As you may remember from a long voicemail that I left for you at the time back in August, Bill evidently initiated the arbitration on behalf of one or more ACE USA Companies. (Because of an ethics wall that we set up within the firm, and that I will say more about in a minute, I have never seen the actual document that Bill apparently sent to Seaton.)

Conflicts waivers going back to earliest days of our firm's representation of Stonewall and Seaton permitted Bill to initiate the reinsurice matter as a matter of legal ethics, but in talking with Bob on Friday afternoon, it seemed to me important to share with you more of the background.

Back in 2001 when my partner Andy Marks and I were first approached about representing Stonewall and Seaton, ACE USA Companies essentially had a monopoly on using Crowell & Moring's legal services. ACE USA Companies and predecessors had asked Crowell & Moring to do large volumes of cases for over a dozen years, and, in return, ACE USA Companies insisted that Crowell & Moring not represent other general liability carriers (a) so that there would never be a shortage of Crowell insurance team lawyers to help them and (b) so that Crowell & Moring would always be free as a conflicts matter to pursue claims on ACE USA Companies' behalf against other carriers, if necessary.

While Andy and I greatly appreciated the opportunities to represent the ACE USA Companies, Andy and I and our colleagues also very much wanted to take on the new work for Stonewall and Seaton, where it sounded like we might have an opportunity to build an innovative partnership with Stonewall and Seaton and help Stonewall and Seaton achieve better financial results by upgrading the calibre of their legal representation and by participating in strategic planning for the books of business to be defended. But we absolutely could not take on those two proposed new representations, unless we could first persaude the ACE USA Companies to drop their insistence on having a monopoly over our firm's legal work.

One of the most difficult negotiations -- but for my firm, most important negotiations -- that I ever conducted was the process of dialogue through which the ACE USA Companies ultimately agreed to drop their insistence that our firm represent only ACE USA Companies. In the end, ACE USA Companies decided to trust that we had the depth of expertise and commitment to them to deliver the services that they needed, even if key partners like myself also become dedicated to helping Stonewall and

Seaton. But a key term that ACE USA Companies insisted upon, and that Stonewall and Seaton ultimately agreed to accept in order to obtain o[illegible] ACE USA Companies needed Crowell & Moring to pursue claims against Stonewall or Seaton, Stonewall or Seaton would not object on conflicts grounds, i.e. Stonewall and Seaton would not argue that Crowell & Moring could not proceed on behalf of ACE USA Companies against Stonewall and Seaton on the basis that Stonewall and Seaton are Crowell & Moring clients too.

Stonewall and Seaton agreed to ACE USA Companies' conditions; Crowell & Moring had the opportunity to begin wc. j with Stonewall and Seaton on some of their most significant matters, even as we continued to meet ACE USA Companies' needs; our firm thanked both groups of clients very much; and -- at least until August -- things had worked out fine as a conflicts matter for five and a half years.

When my reinsurance partner was instructed to initiate that reinsurance matter adverse to Seaton -- exercising the right that ACE USA Companies had so emphatically reserved five and a half years earlier -- I immediately left voicemails for you and Ray and Bob, and I set up an internal ethics wall here at the firm so that Bill and attorneys working with him adverse to Seaton on the reinsurance issues do not discuss that work against Seaton with those of us like me who represent Seaton. Likewise, those of us who represent Seaton do not discuss our work for Seaton with the attorneys doing the reinsurance work against Seaton. Especially after my trip to Rhode Island to meet with you about REDACTED had high hopes that there might be new possibilities for our firm to work for Seaton and Stonewall, if we could deliver superior results with the cost-effectiveness that companies in run off have no choice but to require. And I so did not want Bill's initiation of the reinsurance proceeding to confuse you or Ray or Bob about my dedication zealously to represent Seaton and Stonewall in the current matters entrusted to us (and hopefully future matters as well, if we could earn that work through successes with our current docket).

Bottom line, the fact that ACE USA Companies had a "right" to have our firm initiate the reinsurance arbitration, and the fact that the ethics wall insures that ACE USA Companies cannot, as a practical matter, somehow obtain an unfair advantage in the reinsurance arbitration by getting me or other attorneys representing you to help them, does NOT, of course, end the discussion. You and your colleagues need to be comfortable with me (and with the other Crowell & Moring lawyers working for you), and you need to have confidence that we are zealously looking to protect your interests in all of the matters entrusted to us. To the extent that you are not sure about us, it is completely up to you to decide not to retain us for any future work or even to fire us off of some or all of the existing cases in which we are representing you, subject to your recognizing the disadvantages that bringing in new counsel at this point could have for Seaton or Stonewall in particular ongoing cases.

Thus, my goal with this e-mail is to figure out the best way to reassure you and your colleagues of our loyalty and ded^ation to the Seaton and Stonewall work that you have been counting on us to do for you. In sum, I am looking to have you co le that our experience and lawyering skills make us the best possible lawyers to get the best possible substantive results in those cases for you, and to have you conclude that you can fully count on our dedication and loyalty to apply that experience and those skills on your behalf.

In that connection, Bob shared with me that you have reason to believe that Carl Wall himself may be concerned about this situation of my defending Seaton in some cases, even as a partner of mine has initiated a reinsurance arbitration against Seaton. You, Ray and Bob have met me personally and had the chance to work with me and a number of my colleagues for several months now (and Bob, and Ray to a lesser extent, have had experience working with me and colleagues of mine from prior positions). But so far as I can recall, Carl Wall and I have never met, and I may be just a name to him.

In these circumstances, I thought of two things that I might do to help work all of this out. First, it seemed to me to make sense for the two of us to talk either by phone or face to face, so that I can answer any questions that you might have about the historical background and I can reassure you directly of my continued dedication to partnering with Seaton and Stonewall, as we discussed when I flew up to meet with you before the mediation this summer.

REDACTED

Second, to underscore for Carl Wall my continued commitment to representing Seaton and Stonewall, notwithstanding my partner's having initiated a reinsurance arbitration, it occurred to me that it might make sense for me to fly down Carl's office in Florida, so that I could explain the historical background to him and give him an opportunity to size up for himself one of the lead partners from a firm that is very much hoping to get to continue to do important work for Seaton and Stonewall. At a minimum, by suggesting such a trip, I would want to convey how seriously we take wanting to maintain your, Ray, Bob and Carl's confidence in us. Do you think that it would be a good idea for me to try to arrange such a meeting, and, if so, would the best approach be for me to call Carl directly or would it be to ask if you might be willing to help set up a such meeting, since you know both of us?

Anyhow, as I mentioned in my voicemail for you Sunday night, I will give you a call Tuesday afternoon to see if you have had an opportunity to read through this long e-mail, and, if so, if you have any initial questions or reactions. I so much enjoyed the spirit of our discussions in August, and really hope that we will all be able to get past the concerns that my partner's initiating the rei ance arbitration has raised. Thank you very much for your consideration! Cliff Hendler

Clifford B. Hendler, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

Ph 202-624-2928
Fa 202-628-5116
chendler@crowell.com

1/31/2008