UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SEATON INSURANCE COMPANY, f/k/a :
UNIGARD MUTUAL INSURANCE COMPANY, :
Plaintiff, :
:
v. : CA 07-332 S
:
ILLINOIS UNION INSURANCE COMPANY, :
f/k/a GATX INSURANCE COMPANY, :
Defendant. :

**MEMORANDUM AND ORDER**
**ADDRESSING PRO HAC VICE AND**
**RELATED MOTIONS**

Before the Court are five motions:

1. Motion for Admission Pro Hac Vice (Doc. #13) which seeks the admission pro hac vice of Jennifer R. Devery, Esq., of the law firm of Crowell and Moring LLP;

2. Motion for Admission Pro Hac Vice (Doc. #14) which seeks the admission pro hac vice of Paul W. Kalish, Esq., of the same firm (collectively the "Pro Hac Vice Motions");

3. Plaintiff Seaton Insurance Company's Motion to Disqualify Jennifer R. Devery, Esq. and Paul W. Kalish, Esq. of Crowell & Moring LLP (Doc. #24) ("Motion to Disqualify");

4. Defendant's Motion for Leave to File Surreply in Support of Opposition to Plaintiff's Motion to Disqualify Counsel (Doc. #37) ("Motion to File Surreply"); and

5. Defendant's Amended Motion for Leave to File Surreply in Support of Opposition to Plaintiff's Motion to Disqualify Counsel (Doc. #39) ("Amended Motion to File Surreply").

For the reasons stated in this Memorandum and Order, the Court rules as follows:

1. The Pro Hac Vice Motions are DENIED;
2. The Motion to Disqualify is ruled moot;
3. The Motion to File Surreply is ruled moot; and

4. The Amended Motion to File Surreply is GRANTED.

**Discussion**

Defendant Illinois Union Insurance Company, f/k/a GATX Insurance Company ("Illinois Union" or "Defendant"), seeks to have two attorneys from the firm of Crowell & Moring LLP ("C&M") admitted pro hac vice in the instant action. Plaintiff Seaton Insurance Company, f/k/a Unigard Mutual Insurance Company ("Seaton" or "Plaintiff"), objects to their admission on the ground that C&M has a conflict of interest in that C&M currently represents and has previously represented Seaton in matters in other jurisdictions. See Plaintiff's Objection to Defendant's Motion for Entry of Appearance Pro Hac Vice (Re: Paul W. Kalish, Esq., of Crowell & Moring LLP) (Doc. #15); Plaintiff's Objection to Defendant's Motion for Entry of Appearance Pro Hac Vice (Re: Jennifer R. Devery, Esq., of Crowell & Moring LLP) (Doc. #16). Illinois Union contends that Seaton has waived the conflict of interest and asserts that "Seaton's motives for bringing its objection at this late hour are questionable." Memorandum of Law in Support of Illinois Union Insurance Company's Opposition to Plaintiff's Motion to Disqualify Counsel (Doc. #27) ("Defendant's Mem.") at 26.

***The Purported Waiver***

Illinois Union relies upon a June 30, 2003, letter (the "Letter") from Clifford Hendler ("Hendler"), a senior partner at C&M, to Thomas D. Ryan ("Ryan") of Randall America (now known as Cavell America) to support its contention that Seaton, through its agent Randall America, granted C&M a broad "advance conflict waiver." Defendant's Mem. at 6. There are several problems with the Letter.

First, the purported waiver is essentially buried within the

Letter's three and a half single-spaced pages.[1] The subject of the Letter is "Crowell and Moring Billing Rates," and the first eight paragraphs are devoted to this topic, as are the Letter's three footnotes and the enclosure.[2]

In the penultimate paragraph of the Letter, the language upon which C&M relies for its contention that Seaton agreed to a broad advance conflict waiver appears. The paragraph begins with an introductory sentence which suggests that the information stated therein is nothing more than a perfunctory recitation of the terms of an existing arrangement under which C&M and Randall America have been operating.

> Lastly, as we formally renew our business relationship with you for 2003, our Professional Responsibility Committee requests that we reiterate that the same conflicts understandings and waivers[3] that have enabled our firm both to represent Randall America carriers and other firm insurance clients will remain in effect.

Declaration of Clifford B. Hendler in Support of Defendant Illinois Union's Opposition to Plaintiff's Motion to Disqualify Counsel ("Hendler Decl."), Exhibit ("Ex.") A at 3. The almost "by the way" tone of this transitional sentence certainly does

---

[1] A copy of the June 30, 2003, Letter is attached as Exhibit ("Ex.") A to the Declaration of Clifford B. Hendler in Support of Defendant Illinois Union's Opposition to Plaintiff's Motion to Disqualify Counsel ("Hendler Decl.").

[2] The enclosure bears the heading "New Randall America Rates for 2003," Hendler Decl., Ex. A at 5, and lists the hourly billing rates for more than forty C&M attorneys and support personnel.

[3] Despite this reference in the Letter to "the same conflicts understandings and waivers," Hendler Decl., Ex. A at 3, Illinois Union has not produced any waiver except the Letter. The Court, therefore, concludes that the only written conflict of interest waiver which C&M possesses relative to its claim that Seaton has waived any conflict of interest is the June 30, 2003, Letter.

not convey that it heralds, in effect, a request for a new,[4] broad advance conflicts waiver.

Second, the conflict described in the paragraph containing the alleged waiver does not mention the situation presented by the instant case. Instead, the paragraph refers to large, multi-insurer cases where there could be a theoretical possibility that the interests of insurers whose claims were being handled by Randall America might diverge from the interests of C&M's long-time client, the ACE Companies. As Ryan, the addressee of the Letter, explains in his affidavit:

> In the usual case, the interests of the insurers would generally be aligned. However, [C&M] advised me that because of the firm's long-standing relationship with the ACE Companies, ACE was concerned that it not be precluded from retaining [C&M] to represent the ACE Companies in such cases because of the possibility that the interests of the ACE Companies could be adverse in some respect to the interests of companies for which Randall America was acting as claims administrator. In other words, the ACE

---

[4] The Court uses the term "new" here deliberately. Although the Letter refers to the "the same conflicts understandings and waivers," id., there is no evidence that those "understandings and waivers," which were applicable to Seaton, were in writing. Thus, the allegedly broad advance conflict waiver was "new" in the sense that it was being stated in writing by a lawyer (Hendler) and transmitted to Ryan (the person Illinois Union contends gave informed consent), a circumstance which could potentially satisfy the requirement that a client affected by a concurrent conflict of interest must give "informed consent, confirmed in writing." Rule 1.7(b)(4) of the Rhode Island Rules of Professional Conduct; see also Defendant's Mem. at 13 n.7 (noting that under the Rules of Professional Conduct a client's signature on a conflicts waiver is unnecessary because "'[c]onfirmed in writing,' when used in reference to the informed consent of a person, denotes informed consent that is given in writing by the person or a writing that a lawyer promptly transmits to the person confirming an oral informed consent.")(quoting Rule 1.0(b)). Here, nothing in the penultimate paragraph of the Letter explicitly alerts the recipient (Ryan) that something which C&M apparently has been lacking, i.e., a written broad advance conflict waiver from Randall America that will be applicable to entities such as Seaton in circumstances like the instant action, is being sought and which will be effective unless Ryan disavows the statements in the paragraph.

> Companies did not want the fact that [C&M] was representing companies for which Randall America was acting as claims administrator to interfere with their ability to retain [C&M] for such cases.

Affidavit of Thomas M. Ryan in Support of Plaintiff's Motion to Disqualify Counsel ("Ryan Aff.") ¶ 9.

Ryan's explanation and interpretation of the waiver language is credible. There is no mention in the paragraph of a situation like the instant matter, where the interest of the ACE companies (which include Illinois Union) and companies for which Randall America was acting as a claims administrator (which include Seaton) are actually adverse. Thus, in addition to its buried location, the content of the paragraph is insufficient to constitute informed consent to a waiver of the conflict of interest presented by the current situation. See Glenwood Farms, Inc. v. Garve Ivey, Docket No. 03-217-P-S, 2005 U.S. Dist. LEXIS 24403, at *96 n.46 (D. Me. Oct. 20, 2005)("A prospective waiver is valid if it identifies the potential opposing party and the nature or the likely subject matter in dispute and permits the client to appreciate the potential effect of the waiver.")(citing Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc., 142 F.Supp.2d 579, 583 (D. Del. 2001)); see also Florida Ins. Guaranty Ass'n, Inc. v. Carey Canada, Inc., 749 F.Supp. 255, 260 (S.D. Fla. 1990) (finding that a "standing consent [to represent adverse parties] must by necessity be exceedingly explicit").

Third, Ryan has affirmed that his understanding at the time he received the Letter was: 1) that any agreement regarding conflicts would be limited in time;[5] and 2) that any such agreement would be limited to waiving conflicts in cases

[5] Ryan specifically states: "The June 30, 2003[,] letter was never intended to be any type of binding agreement between [C&M] and Randall America with respect to the handling of cases that extended beyond 2003." Ryan Aff. ¶ 7.

involving multiple insurer defendants who are sued together in the same case. Ryan has further affirmed that he "never had any understanding that [C&M] (on behalf of the ACE Companies) ever requested that I agree to a blanket waiver of future conflicts in cases where the interests of the ACE Companies and companies for which Randall American was acting as claims administrator [which included Seaton] were ***actually adverse*** ...." Ryan Aff. ¶ 11. Given the content of the Letter and the language of the paragraph at issue, Ryan's statements are credible. Indeed, the Court finds it difficult to understand how anyone, even a lawyer like Ryan, would recognize that a broad advance conflicts waiver extending to cases beyond "multi-carrier insurance matters," Hendler Decl., Ex. A at 3, which would extend into perpetuity and which would be irrevocable, was being sought by this paragraph of the Letter. The only "request[]" mentioned in the paragraph is that made by C&M's Professional Responsibility Committee to Hendler that he reiterate that for 2003 that "the same conflicts understandings and waivers ... will remain in effect." Id. Certainly, there is nothing to suggest that by this paragraph C&M is, in effect, requesting that Ryan, on behalf of Randall America and all the other insurance companies for whom Randall America was acting, waive any and all conflict of interests that might arise at any time in the future regarding any insurance related matter regardless of the circumstances and to do so irrevocably. To the extent that Illinois Union contends that the Letter constitutes informed consent to such a waiver,[6] the Court rejects

[6] In its surreply memorandum, Illinois Union argues that the Letter "clearly addresses conflicts where [C&M] would represent the ACE USA Companies (or other firm insurance clients) with regard to insurance-related matters; the waiver obviously does not apply to, for example, a labor or real estate dispute against Seaton." Defendant Illinois Union Insurance Company's Surreply in Opposition to Plaintiff's Motion to Disqualify Counsel ("Defendant's Surreply Mem.") at 5.

such contention.

There are additional difficulties with the Letter constituting a valid waiver of the conflict of interest presented by the instant action. The Letter is not signed by any officer or employee of Seaton or even Randall America.[7] Seaton terminated the Run-Off Agreement, pursuant to which Randall America was acting as an agent for Seaton, on March 31, 2006. See Supplemental Affidavit of Joseph P. Follis in Support of Plaintiff's Motion to Disqualify ("Follis Supp. Aff.") ¶ 6. Seaton did not receive a copy of the Letter until October 3, 2006, more than three years after it was sent and after Seaton had terminated its relationship with Randall America. See id. ¶ 10. While Illinois Union offers arguments to address each of these obstacles, the Court finds it unnecessary to discuss them. Even assuming Ryan had authority to waive conflicts of interest for Seaton, for the reasons already discussed there is no way that the Letter could constitute informed consent of a broad, advance conflict waiver encompassing the instant action.

In summary, the Court concludes that the Letter does not constitute informed consent of a waiver of the conflict of interest presented by C&M's attempt to represent Illinois Union in the instant action. Accordingly, I find that Seaton has not waived the conflict of interest.

***Timeliness of Seaton's Objection***

Illinois Union repeatedly claims or implies that Seaton has been tardy in raising the conflict issue and that Seaton is belatedly doing so only for tactical reasons. For example, Illinois Union states:

> Although issues concerning the [C&M] conflict waiver have

[7] Ryan was an employee of National Indemnity Company, where he had certain responsibilities for claims that were administered by Randall America. See Ryan Aff. ¶ 2.

> been discussed with Seaton representatives on a number of occasions since [2006], it was not until 15 months later, when Seaton apparently decided that the disputes between the companies could not be resolved and switched from settlement—mode to litigation attack—mode, that Seaton chose to assert a conflict.

Defendant's Mem. at 2.

> Even if Seaton's motion is taken at face value (and not as the litigation tactic that it is) ....

Id.

> In fact, [C&M] did not hear anything more about conflict issues until November 2007, nearly 15 months later, when Mr. Bendig raised the issue in a letter to [C&M]'s William O'Neill who is representing the ACE USA Companies in the reinsurance dispute with Seaton.

Id. at 10.

> Seaton knew of [C&M]'s representation of the ACE USA Companies adverse to Seaton as of August 2006, but waited 15 months before asserting its conflict argument.

Id. at 26.

> Seaton waited nearly 15 months before asserting its conflict arguments.

Defendant Illinois Union Insurance Company's Surreply in Opposition to Plaintiff's Motion to Disqualify Counsel ("Defendant's Surreply") at 3.

> In October 2006, Seaton's Mr. Follis was provided with a copy of the June 2003 Waiver Letter, with Mr. Hendler explaining to Mr. Follis the agreements that had been reached with Mr. Burns.[8] It was not until November 2007 that Seaton raised a conflict issue and then only because the reinsurance disputes between Seaton and the ACE USA Companies had not been resolved to Seaton's liking.

---

[8] Robert Burns, a senior claims official at Randall America, retained C&M on behalf of the Randall America administered carriers. See Hendler Decl. ¶ 11.

Id.

The impression conveyed by these statements is that Seaton did not voice objection to the conflict which C&M has in representing Illinois Union until November 2007 and that C&M was surprised when Seaton opposed C&M's attempt to enter as counsel for Illinois Union in this action. The facts, however, dispel this impression and demonstrate that C&M's problem relative to the instant Pro Hac Vice Motions is of its own making.

When Seaton's Vice President, Joseph P. Follis, became aware in the fall of 2006 that C&M was representing parties adverse to Seaton, he contacted C&M and objected to C&M representing anyone in an action against Seaton. See Follis Supp. Aff. ¶ 8; see also id. Ex. A (Email from Follis to Hendler of 10/3/06). In an October 3, 2006, email to C&M's Hendler, Follis wrote:

> Cliff, this development[9] remains a significant concern to Seaton. Please provide me with a copy of the conflicts waiver that you refer to below. If such waivers are not in writing, then Seaton would like to know the specifics of such waivers, including who provided the waivers; when; and what, specifically, was provided for.
>
> I don't know what might have occurred prior to my arrival, but **today (and going forward), Seaton is not expecting to be sued by firms that represent us**.... I trust that you can understand as much.

Follis Supp. Aff., Ex. A (Email from Follis to Hendler of 10/3/06)(bold added).

Illinois Union argues that after receiving the above email

---

[9] Based on the content of the email to which Mr. Follis was responding, "the development" was Hendler's assertion that Seaton had agreed, perhaps as far back as 2001, that if the ACE USA Companies needed C&M to pursue claims against Seaton, Seaton would not object on conflict grounds. See Hendler Decl., Ex. B (Email from Hendler to Follis of 10/2/06) at 1.

Hendler forwarded the waiver Letter and reiterated that the ability to represent the ACE USA Companies — even in matters adverse to Seaton — had been a critical agreement upon which C&M and the ACE Companies had relied from the very beginning as a necessary precondition to C&M's ability to represent Seaton. Defendant's Mem. at 10. Illinois Union further argues that Hendler explained that the historical conflicts understandings, as negotiated with Burns, did not give Seaton the right to veto the ACE Companies having C&M act adversely to Seaton. See id. Illinois Union then states that: "Upon receiving this information, Mr. Follis did not argue that the waiver was ineffective and Mr. Hendler understood Mr. Follis to have accepted the fact that the advance conflict waiver was the cornerstone of [C&M]'s representation of Seaton." Id. (citing Hendler Decl. ¶ 25).

Thus, Illinois Union appears to contend that because Hendler sent Follis a copy of the Letter and an email (referring to some historical background that gave rise to the purported waiver), it was reasonable for Hendler and C&M to assume that Follis' explicit statement (that from October 6, 2006, forward Seaton did not expect to be sued by C&M) could be disregarded. See id. (citing Hendler Decl. ¶¶ 24-25, id., Ex. D). For this contention, Illinois Union relies upon the Hendler Decl. which states in part:

> 25. Upon receiving my e-mail and waiver letter, Mr. Follis did not then respond that the waiver was ineffective.
>
> 26. Accordingly, there was no basis for me to believe that Mr. Follis was attempting to revoke the agreed to advance conflict waiver. To the contrary, I understood him to have accepted the fact that the advance conflict waiver was the cornerstone of [C&M]'s representation of Seaton, even if it was also clear that Mr. Follis probably wished that the waiver had not been

given.

Hendler Decl. ¶¶ 25-26.

The Court cannot agree that there was no basis for Hendler to believe that Follis was attempting to revoke the waiver or that it was reasonable for Hendler to think that Seaton now was agreeable to being sued by its own attorneys. Follis' statement that from "today (and going forward), Seaton is not expecting to be sued by firms that represent us...," Follis Supp. Aff., Ex. A, was a clear and unequivocal revocation of any past waiver which might have permitted C&M to represent parties suing Seaton. For Hendler to have assumed that Follis had accepted C&M's position merely because "Follis did not ... respond that the waiver was ineffective," Hendler Decl. ¶ 25, was unreasonable on at least two grounds. First, Hendler stated in his email that he "hear[d]," id., Ex. D (Email from Hendler to Follis of 10/3/06), Follis' concerns and that he would give Follis "a call to follow up ...," id. Given these statements, Follis would have no reason to think that he had to initiate a call to Hendler and repeat what he had already communicated. Second, given the substantial problems with the purported waiver on which C&M was relying, the Court finds it perplexing that Hendler did not seek to obtain another waiver from Seaton in October of 2006. Cf. Blecher & Collins, P.C. v. Northwest Airlines, Inc., 858 F.Supp. 1442, 1455 (C.D. Cal. 1994)("Because obtaining a written waiver requires little effort, informs and protects clients, and avoids costly evidentiary and credibility disputes, the rule [requiring attorneys to obtain an informed written waiver of conflicts] is inflexible."). After being asked by Follis to provide copies of the conflict waivers, presumably C&M realized that the only written waiver it had was the June 30, 2003, Letter which was not even signed by Seaton and which did not clearly address the instant action. This knowledge should have at the very least

induced some uneasiness at C&M regarding the situation into which they had gotten themselves.

Illinois Union argues that Seaton did not object to C&M representing companies adverse to Seaton in settlement discussions until November 2007. See Defendant's Mem. at 11. However, Seaton was free to make this choice, and Seaton may have concluded that it could tolerate C&M engaging in such representation so long as C&M did not cross the line established by Follis, namely that C&M not sue Seaton. Accordingly, the Court does not agree that Seaton forfeited or waived its right to object to C&M's representation in the instant action merely because Seaton did not press its objection regarding C&M's representation of adverse parties during pre-litigation settlement discussions.

## Conclusion

**Pro Hac Vice Motions**

Pro hac vice admission is generally considered a privilege and not a right. Obert v. Republic Western Ins. Co., 190 F.Supp.2d 279, 298 (D.R.I. 2002). "In the motion for admission, a pro hac vice applicant must certify that the attorney agrees to observe and to be bound by the local rules and orders of this Court and the Rhode Island Rules of Professional Conduct." Id. at 297 (internal quotation marks omitted). C&M has a conflict of interest in its attempt to represent Illinois Union in this action, and Seaton has not waived that conflict under the Rhode Island Rules of Professional Conduct. Accordingly, the Pro Hac Vice Motions are DENIED.

**Motion to Disqualify**

Having denied the Pro Hac Vice Motions, the Motion to Disqualify is moot. Seaton's request for attorneys' fees in connection with that motion is DENIED.

**Motions Re Surreply**

The Motion to File Surreply is ruled moot, and the Amended Motion to File Surreply is GRANTED.

So ordered.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
June 18, 2008