# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SEATON INSURANCE COMPANY, f/k/a UNIGARD MUTUAL INSURANCE COMPANY, Plaintiff, | : | |
| v. | : | C.A. No. 07-332-S |
| ILLINOIS UNION INSURANCE COMPANY, f/k/a GATX INSURANCE COMPANY, Defendant. | : | |

**NOTICE OF APPEAL FROM**
**MAGISTRATE JUDGE'S MEMORANDUM AND ORDER**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a) and Local Rule Civ. 72(c), Illinois Union Insurance Company, f/k/a GATX Insurance Company appeals from the Memorandum and Order Addressing *Pro Hac Vice* and Related Motions, issued by United States Magistrate Judge David L. Martin on June 18, 2008. In particular, this appeal is taken from those aspects of the Memorandum and Order denying the motions for *pro hac vice* admission (and addressing related issues of disqualification).

As set forth more fully in the accompanying Memorandum of Law in Support of Defendant Illinois Union Insurance Company's Appeal From the Magistrate Judge's Memorandum and Order, and supported by the materials in the attached Appendix, the Memorandum and Order is clearly erroneous and not in accordance with law because:

(i) the Magistrate Judge held that Crowell & Moring attempted to obtain a "new" conflicts waiver in 2003, when Defendant submitted undisputed evidence of a pre-existing oral

waiver agreement preserving Crowell & Moring's ability to represent its primary client, the ACE Companies, in matters adverse to Seaton;

(ii) the Magistrate Judge held that the "new" 2003 conflicts waiver was ineffective because a specific written waiver agreement was required; but in 2003, neither the District of Columbia (where the waiver was obtained) nor Rhode Island required a written waiver. Rhode Island only adopted a rule requiring a written conflicts waiver in 2007, well after Crowell & Moring accepted the cases from Seaton allegedly giving rise to the conflict;

(iii) the Magistrate Judge misconstrued in several respects the basic contractual obligation created by a prospective waiver, and thus the way in which a prospective waiver works, including the necessary temporal scope of such a waiver and way that it can be revoked;

(iv) the Magistrate Judge failed to follow this Court's well-established precedent (1) imposing a heavy burden on the proponent of a disqualification motion to show the remedy is justified and (2) requiring the court to weigh the competing interests of both parties before applying the disfavored remedy of disqualification.

Respectfully submitted,

ILLINOIS UNION INSURANCE COMPANY, f/k/a GATX INSURANCE COMPANY

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

/s/ Robert K. Tayulor

Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8200 FAX
rkt@psh.com

DATED: July 10, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing NOTICE OF APPEAL FROM MAGISTRATE JUDGE'S MEMORANDUM AND ORDER was filed with the Clerk of the United States District Court for the District of Rhode Island this 10th day of July, 2008 and is available for viewing and downloading to the following ECF registered counsel of record:

John T. Harding / Morrison Mahoney LLP
jharding@morrisonmahoney.com

Thomas M. Robinson / Morrison Mahoney LLP
trobinson@morrisonmahoney.com

/s/ Robert K. Taylor

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| SEATON INSURANCE COMPANY, f/k/a<br>UNIGARD MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ILLINOIS UNION INSURANCE COMPANY,<br>f/k/a GATX INSURANCE COMPANY,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CA 07-332-S |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ILLINOIS UNION INSURANCE COMPANY'S APPEAL FROM MAGISTRATE JUDGE DAVID L. MARTIN'S MEMORANDUM AND ORDER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

STATEMENT OF FACTS AND PRIOR PROCEEDINGS .......... 2

A. Crowell & Moring's Client Relationship with the ACE USA Companies .......... 2

B. Crowell & Moring's Negotiation of an Advance Conflict Waiver with Seaton's Agent .......... 3

C. The Terms of the Advance Conflicts Waiver are Reiterated in the June 2003 Letter .......... 4

D. Crowell & Moring's Engagements for Seaton .......... 5

E. The ACE USA Companies Retain Crowell & Moring with Regard to Reinsurance Disputes Involving Seaton .......... 6

1. Crowell & Moring Begins Work for the ACE USA Companies on the Seaton Reinsurance Issues .......... 6

2. Subsequent Communications Between Crowell & Moring and Seaton Concerning the Conflict Waiver .......... 7

F. This Case .......... 8

SUMMARY OF ARGUMENT .......... 10

STANDARD OF REVIEW .......... 12

ARGUMENT .......... 12

I. The Magistrate Judge Erred by Rejecting the Oral Agreement To Waive Conflicts .......... 14

A. The Magistrate Judge Wrongly Rejected the Valid Oral Agreement to Waive Conflicts By Applying the Recently Amended Rule 1.7 .......... 14

B. Even if it Were Ineffective, the Oral Agreement Between Mr. Hendler and Mr. Burns Evidences the Parties' Intent .......... 16

C. The Magistrate Should Have Held an Evidentiary Hearing Before Rejecting Evidence of the Oral Agreement .......... 18

II. The Magistrate Judge Erred by Misconstruing the Terminability and Revocability of the Conflict Waiver ....................20

III. The Magistrate Judge Erred by Evaluating the Facts Bearing on the Conflict Without Regard to the Perspective of the ACE USA Companies ....................21

IV. The Remedy of Disqualification Does Not Fit These Facts ....................24

A. The Magistrate Judge Failed to Perform the Required Analysis in Determining Whether Disqualification was Appropriate ....................24

B. Disqualification Is Not A Proper Remedy Here ....................25

CONCLUSION ....................28

APPENDIX ....................I

# TABLE OF AUTHORITIES

## CASES

*Casey v. Lifespan Corp.*, 62 F. Supp. 2d 471 (D.R.I. 1999) ....................17

*Combustion Engineering Caribe, Inc. v. Geo P. Reintjes Co.*, 298 F. Supp. 2d 215 (D.P.R. 2003)....................21

*Connetta v. Nat'l Care Ctrs, Inc.*, 236 F.3d 67 (1st Cir. 2001) ....................2

*Elonex I.P. Holdings, Ltd. v. Apple*, 142 F. Supp. 2d 579 (D. Del. 2001)....................12, 17, 25

*Fregeau v. Deo*, No. C.A. PC03-4179, 2005 WL 1837011 (R.I. Super. Aug. 2, 2005)..........20, 24

*Gray v. Rhode Island Dept. of Children, Youth & Families*, 937 F. Supp. 153 (D.R.I. 1996).................... *passim*

*Haffenreffer v. Coleman*, No. 06-299T, 2007 WL 2972575 (D.R.I. Oct. 10, 2007) .........12, 18, 24

*Hartford Cas. Ins. Co. v. A&M Assoc., Ltd.*, 200 F. Supp. 2d 84 (D.R.I. 2002) ....................14

*Interstate Proper v. Pyramid Co. of Utica*, 547 F. Supp. 178 (S.D.N.Y. 1982)....................23

*Jacobs v. Eastern Wire Prods. Co.*, No. Civ.A. PB-03-1402, 2003 WL 21297120 (R.I. Super. May 7, 2003) ....................12

*Ungar ex rel. Strachman v. Palestinian Auth.*, 325 F. Supp. 2d 15 (D.R.I. 2004) ....................12

*Unified Sewerage Agency of Wash. County, Ore. v. Jelco Inc.*, 646 F.2d 1339 (9th Cir. 1981)...23

*United States v. United States Gypsum Co.*, 333 U.S. 364 (1948) ....................12

*VISA U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100 (N.D. Cal. 2003)....................17, 22

## STATUTES

28 U.S.C. § 636(b)(1)(A) (2006) ....................12

## RULES

D.C. R. Prof'l Conduct 1.7(c), cmt. 28....................16

Fed. R. Civ. P. 72(a) ....................12

## ORDERS

Order In re R.I. R. Prof'l Conduct (R.I. Sup. Ct. Feb. 16, 2007)....................15

Defendant Illinois Union Insurance Company,[1] the movant, appeals from Magistrate Judge David L. Martin's June 18, 2008 Memorandum and Order (the "Memorandum and Order") addressing the motions to disqualify Illinois Union's counsel and deny them *pro hac vice* admission on the basis of an ostensibly unwaived conflict of interest. For the reasons that follow, and as supported in the attached Appendix, that decision should be reversed.

## INTRODUCTION

In finding that Plaintiff Seaton was entitled to disqualify Defendant Illinois Union's counsel (and thus deny them *pro hac vice* admission on that basis), the Magistrate Judge erred in determining (a) there was an unwaived conflict of interest and (b) that the proper remedy for that perceived conflict was disqualification. Specifically, in finding an unwaived conflict of interest, the Magistrate Judge rejected as a matter of law the uncontradicted evidence of an *oral* agreement to waive the conflicts at issue and held that only a written waiver could be effective. However, a written conflicts waiver has never been required in the District of Columbia, where the waiver was obtained, and no written waiver was required in Rhode Island until 2007, long after Crowell & Moring obtained the waiver on which it relies. At a minimum, the Magistrate Judge should have considered the oral waiver agreement, and Defendant's reliance interest, as he construed the scope of a later written confirmation and the subsequent actions of the parties.

Even assuming that there had been no valid waiver, the Magistrate Judge further erred in failing to balance the competing interests of the parties in determining the remedy. Seaton, for its part, bases its claim of a current conflict of interest solely on outstanding Crowell & Moring engagements for Seaton that may fairly be described as vestigial (one involving a case that has,

---

[1] Illinois Union Insurance Company is one of a larger group of corporately related insurance companies of ACE USA, for which Crowell & Moring has long been one of its regular counsel. We refer below to that group of companies as the ACE USA Companies.

except for paperwork, been settled, and the other, a case that has been stayed for more than a year). The firm has no confidential information of Seaton related to the instant case, and thus there is no basis for a claim that Seaton will be prejudiced. On the other hand, Illinois Union, whose counsel alerted Seaton to the issue of conflict beginning in 2001 and who obtained and relied on the waiver, would be deprived of its chosen counsel. Under these circumstances, disqualification is not the proper remedy.

## STATEMENT OF FACTS AND PRIOR PROCEEDINGS

### A. Crowell & Moring's Client Relationship with the ACE USA Companies.

1. Crowell & Moring's insurance group has represented the ACE USA Companies (and its predecessor companies) – among them Illinois Union, defendant here – for almost 20 years in coverage litigation. (Declaration of Clifford B. Hendler ("Hendler Decl.") at ¶ 5.)[2] Indeed, before 2001, Crowell & Moring's insurance group worked almost exclusively for the ACE USA Companies. The ACE USA Companies provided Crowell & Morning with a large volume of business. (*Id.* at ¶ 6.) In return for that business, the ACE USA Companies insisted that Crowell & Moring work almost exclusively for them in the insurance area. (*Id.*) In particular, the ACE USA Companies were concerned that if Crowell & Moring accepted engagements from other insurance carriers, that would jeopardize Crowell & Moring's ability to assert claims on behalf of ACE USA Companies against those carriers. (*Id.*)

[2] The materials included in Exhibits A, B and D-H of the accompanying Appendix were part of the record before the Magistrate Judge at the time of his March 6, 2008 motion hearing addressing the motion for admission to this Court *pro hac vice* and Plaintiff's motion for disqualification. Exhibit I, a supplementary declaration from Clifford B. Hendler addressing the present status of Crowell & Moring's representations of Seaton, is attached hereto as additional evidence for the Court's consideration on an issue raised by Defendant's counsel at the March 6, 2008 motion hearing. Because "[t]he case itself belongs to the district judge throughout," a District Court that reviews a magistrate judge's order on a pretrial, nondispositive matter pursuant to 28 U.S.C. § 636(b)(1)(A) may receive and consider new evidence if the district court judge "reasonably concludes that further investigation is necessary." *Conetta v. Nat'l Hair Care Ctrs., Inc.*, 236 F.3d 67, 74 (1st Cir. 2001).

**B. <u>Crowell & Moring's Negotiation of an Advance Conflict Waiver with Seaton's Agent</u>.**

2. Randall/Cavell is a third-party claims administrator retained to handle the claims of insurers in run-off business. Seaton was among the insurers that retained Randall/Cavell to administer their claims. In 2001, Randall/Cavell sought to retain Crowell & Moring to represent Seaton and other Randall/Cavell carriers on coverage matters. (*Id*. at ¶ 8.) At that time, Seaton itself was in run-off and had ceded the management of its claims business to Randall/Cavell. As summarized at the motion hearing, "Seaton had no staff [and] had virtually no employees at the time that it retained Randall America to administer its runout of affairs…." (Transcript of March 6, 2008 Motion Hearing Before Magistrate Judge David L. Martin ("Transcript") at 35.) Seaton's arrangement with Randall/Cavell continued until March 2006.

3. Clifford Hendler, a Crowell & Moring attorney, discussed the potential representation of Randall/Cavell with the ACE USA Companies. The ACE USA Companies were amenable to allowing Crowell & Moring to take on such work for Randall/Cavell *provided* that such work was undertaken upon the clear understanding that it would not inhibit the ACE USA Companies' ability to rely on Crowell & Moring for its work. (Hendler Decl. at ¶ 9.)

4. Mr. Hendler made ACE USA Companies' conditions for allowing Crowell & Moring to take on cases for Randall/Cavell known to Mr. Robert Burns, who led negotiations for Randall/Cavell on the terms of Crowell & Moring's engagement by that firm. (Hendler Decl. at ¶ 11.) Through Mr. Burns, Randall/Cavell accepted that Crowell & Moring was taking on cases for Randall/Cavell subject to the condition that Randall/Cavell agree that Crowell & Moring would remain as free to take on new matters for the ACE USA Companies as it had been before Crowell & Moring started representing Randall/Cavell-administered carriers. (*Id*.) This agreement specifically reflected the understanding that the firm would have to be free to

represent ACE USA Companies in circumstances adverse to Randall/Cavell-administered carriers (unless Randall/Cavell had already retained Crowell & Moring for the matter). (*Id*.)

5. There appears to be no dispute that Randall/Cavell, consenting to the waiver, was extremely sophisticated and aware of conflicts of interest and their implications. Randall/Cavell was in the business of retaining counsel for litigation and Mr. Burns in particular was well aware of the nature of conflicts and what a waiver would mean.[3]

### C. <u>The Terms of the Advance Conflicts Waiver are Reiterated in the June 2003 Letter</u>.

6. The 2001 waiver agreed to by Mr. Burns, which provided the foundation for Crowell & Moring's subsequent representations of Randall/Cavell administered companies, was cited in a June 30, 2003 letter from Mr. Hendler to Thomas D. Ryan, Esq. of Randall America, with a copy to Robert A. Whitney, Esq., also of Randall America (the "June 2003 Letter"). (*Id*. at ¶ 14; Exh. A.) The June 2003 Letter sets forth changes in rate structure negotiated by the parties and confirms at length that the parties had been operating under certain understandings concerning conflicts and waivers. It provides that "the same conflicts understandings and waivers that have enabled our firm both to represent Randall America carriers and other firm insurance clients will remain in effect." (*Id*. at Exh. A.):

> Lastly, as we formally renew our business relationship with you for 2003, our Professional Responsibility Committee requests that <u>we reiterate that the same conflicts understandings and waivers that have enabled our firm both to represent Randall America carriers and other firm insurance clients will remain in effect</u>. Thus, you will recall that Crowell & Moring also represents other carriers such as <u>ACE Companies</u>, RiverStone-administered entities, United Educators, St. Paul, and Liberty in numerous multi-carrier insurance matters, including matters in which

[3] In point of fact, Mr. Burns was aware of the relationship between Crowell & Moring and the ACE USA Companies because before his employment with Randall/Cavell, he had run a coverage litigation management unit for an ACE USA Company predecessor that made extensive use of Crowell & Moring. (*Id.*)

> Randall-administered companies may have an adverse interest, and that it is understood that Crowell & Moring can continue to do such present and future cases for other carriers as a matter of course where Crowell & Moring is not in such cases representing Randall-administered carriers. Also, with respect to the ACE Companies, Randall has agreed (1) that Crowell & Moring would not itself bring cross-claims or bad faith/extracontractual claims against ACE-related companies, (2) to case by case approval from ACE for new Randall representations (with ACE reserving a right of first refusal and/or to propose a counsel sharing arrangement, but also pledging to act reasonably and expeditiously); and (3) that C&M itself would not take positions for Randall on substantive matters that would create positional conflicts with ACE. As you and I discussed last fall in connection with Thorpe, such conditions do not preclude Randall from advocating position opposite to ACE's (or bring cross-claims or bad faith claims against ACE), so long a Randall uses one of its other law firms to do so.
> (*Id*. (emphasis added).)

### D. Crowell & Moring's Engagements for Seaton.

7. Crowell & Moring has continued to take on numerous cases for the ACE USA Companies and remains one of its principal counsel.

8. In reliance on the waiver discussed above, beginning in 2001, Crowell & Moring has also, from time to time, taken on specific matters for Randall/Cavell-administered entities, including matters for Seaton. (Hendler Decl. at ¶¶ 12-13, 16-17.) In 2006, Randall/Cavell confirmed that it had given Crowell & Moring a "broad waiver."[4]

[4] In 2006, Crowell & Moring undertook the representation of Maryland Casualty Company in connection with *In re Lloyd E. Mitchell*, No. 06-13250-NVA (Bankr. D. Md.). (Declaration of Mark D. Plevin ("Plevin Decl.") at ¶ 1.) Mr. Brian Bendig of Randall/Cavell claimed a conflict. (*Id*. at ¶¶ 5-6. ) In response, Crowell & Moring showed Mr. Bendig the June 2003 Letter, and explained that Randall/Cavell had executed a "blanket conflicts waiver agreement" on behalf of the Randall/Cavell-managed companies (of which CU was one) that permitted Crowell & Moring to represent Maryland Casualty in the *Lloyd E. Mitchell* case even if there was a conflict with a Randall/Cavell managed entity. (Plevin Decl. at ¶¶ 7-8.) By return email, Mr. Bendig acknowledged that Crowell & Moring had been granted a "broad waiver," (*id*. at ¶¶ 9-10), and the conflict claim was dropped. Later, in *Cleaver-Brooks, Inc. v. AIU Ins. Co., et al.*, Case No. 04-CV-002852 (Cir. Ct. of Wis., Milwaukee County), a Randall/Cavell entity filed cross-claims against another ACE USA company. Crowell & Moring, on behalf the ACE USA Company entity, moved to dismiss those cross-claims. (Declaration of Lori T. Hildebrand ("Hildebrand Decl.") Exh. 1 (1/30/07 letter to court).) In light of the broad waiver, there was no motion to disqualify.

(continued…)

9. When this case was filed by Seaton, Crowell & Moring had two open, unrelated engagements for Seaton. (Supplemental Declaration of Clifford B. Hendler ("Supp. Hendler Decl.") at ¶ 3.) For both of these engagements, Crowell & Moring had been retained for Seaton by Randall/Cavell. By the time of the hearing before the Magistrate Judge, one case had been settled and the other case had long been stayed, such that Crowell & Moring personnel had not billed any time on that matter in over twelve months. (*Id.* at ¶¶ 4-5.; Transcript at 18-19.)

10. At some point in 2006, Randall/Cavell ceased representing Seaton. As noted below, Joseph Follis, Vice President of Seaton, has since disavowed knowledge of any prior oral waiver. Both of the Crowell & Moring representations of Seaton cited above were accepted by Crowell & Moring *before* the ACE USA Companies (and Crowell & Moring) were aware that Seaton would regard any ongoing Crowell & Moring representation of Seaton as barring an adverse suit by Crowell & Moring on behalf of ACE USA. (*Id.*)

**E. <u>The ACE USA Companies Retain Crowell & Moring with Regard to Reinsurance Disputes Involving Seaton.</u>**

**1. <u>Crowell & Moring Begins Work for the ACE USA Companies on the Seaton Reinsurance Issues</u>.**

11. In 2006, the ACE USA Companies retained Crowell & Moring to represent them in a series of related reinsurance matters adverse to Seaton. Crowell & Moring does not and did not represent Seaton in connection with any of those matters. Nonetheless, upon taking on the representation for the ACE USA Companies, Crowell & Moring established an ethics wall between Crowell & Moring attorneys working on matters for Seaton, on the one hand, and those

(continued)

Seaton has argued that Randall/Cavell's reaffirmations of the broad waiver took place after Seaton had terminated its relationship with Randall/Cavell. But they surely reflect Randall/Cavell's view of the broad waiver, upon which Crowell & Moring and Illinois Union could further rely.

working for the ACE USA Companies in the matters adverse to Seaton, on the other hand. (Hendler Decl. at ¶ 20.)

### 2. <u>Subsequent Communications Between Crowell & Moring and Seaton Concerning the Conflict Waiver</u>.

12. In the August and September 2006 time period, around the time when the ACE USA Companies initiated arbitrations against Seaton arising from the reinsurance disputes, Mr. Ryan called Mr. Hendler to discuss Crowell & Moring's initiation of the arbitrations on behalf of the ACE USA Companies. (*Id*. at ¶ 21.) Mr. Ryan expressed a concern that Crowell & Moring's representation of the ACE USA Companies in these reinsurance disputes would place him in an awkward position with Seaton. (*Id*.)

14. Several weeks later, Mr. Hendler learned from Mr. Burns (who had negotiated the conflict waiver while at Randall/Cavell, but by that time had gone to work in the same office in Rhode Island where Seaton employees worked) that Mr. Follis was troubled by Crowell & Moring's initiation of the arbitrations. (*Id.* at ¶ 22.) In response, Mr. Hendler emailed Mr. Follis, with a copy to Mr. Burns, explaining the history and circumstances of the waiver. (*Id*. at Exh. B (10/2/06 email from Mr. Hendler to Mr. Follis).)

15. Mr. Follis asked for further explanation of the waiver and copies of relevant waiver letters. (*Id*. at ¶ 23 and Exh. C (10/3/06 email from Mr. Follis to Mr. Hendler).) Although Mr. Follis asked for more background, his response also included the statement (cited by the Magistrate Judge) that "today (and going forward), Seaton is not expecting to be sued by firms that represent us . . . ." (Memorandum and Order at 11.) Since that date, Seaton has exercised its right not to retain Crowell & Moring for any additional cases.

16. Mr. Hendler then sent Mr. Follis the June 2003 Letter, reiterating that the ability to represent ACE USA Companies – even in matters adverse to Seaton – had been a critical and

necessary precondition to ACE USA Companies' willingness to allow Crowell & Moring to take on representations for any other insurers, and Crowell & Moring's willingness to do so. (Hendler Decl. at ¶ 24 and Exh. D (10/3/06 email from Mr. Hendler to Mr. Follis).)

17. After sending him the June 2003 letter and further explanation, Mr. Hendler heard nothing further from Mr. Follis. From Mr. Follis's silence, Mr. Hendler understood that he had acquiesced in Mr. Hendler's assertion and documentation of the advance conflict waiver. (Hendler Decl. ¶ 25). Thus, Crowell & Moring continued to work on the matters on behalf of the ACE USA Companies. There were no formal proceedings in the arbitration, but negotiations on possible settlement proceeded. Crowell & Moring both assisted in those negotiations and further brought itself up to speed in connection with the representation of ACE USA Companies in connection with the arbitration.

18. In November 2007, nearly 15 months later, Mr. Brian Bendig revived the issue. (Hildebrand Decl. at Exh. 2 (11/13/07 letter from Mr. Bendig to Mr. O'Neill).) Although he was aware that Crowell & Moring had been representing the ACE USA Companies in the reinsurance disputes for 15 months as discussions proceeded, he now asked Crowell & Morning to withdraw:

> Please note Seaton takes the position that Crowell & Moring ("the firm") is precluded from representing Century against Seaton. <u>Now that settlement discussions have broken down and the matter will proceed to active arbitration</u>, Seaton asserts that the firm has a conflict due to its representations of Seaton on numerous other matters, historically and currently. Seaton accordingly requests that the firm withdraw.

(*Id.* (emphasis added).)

**F. <u>This Case</u>.**

19. At about the same time, on September 21, 2007, Seaton filed this case against Illinois Union, formerly known as GATX Insurance Company. Like the earlier arbitrations, this case concerns the reinsurance issues arising between Seaton and the ACE USA Companies.

20. On December 28, 2007, Illinois Union moved in this case for the admission *pro hac vice* of Mr. Paul Kalish and Ms. Jennifer Devery of Crowell & Moring, and the bars of Maryland and D.C.

21. Seaton opposed the motion, urging a conflict of interest that had not been waived. In its initial submission, it argued that Randall/Cavell did not have the authority to waive the conflict of interest on behalf of Seaton, or that it was not bound by that waiver. Seaton did not assert that the waiver was not broad enough to cover this case.

22. Illinois Union filed an extensive opposition demonstrating, among other things, that given that Randall/Cavell was managing Seaton, Randall/Cavell necessarily had the authority, real and apparent, to waive conflicts of interests in persuading Crowell & Morning to take on cases for Seaton. In addition, Illinois Union pointed out that if the Magistrate Judge did not find the record sufficiently clear, discovery, and potentially a hearing, would be appropriate. (Memorandum of Law in Support of Defendant's Opposition to Plaintiff's Motion to Disqualify Counsel ("Defendant's Opposition") at 29, n. 15.)

23. In reply, Seaton asserted for the first time, based in part on an affidavit from Mr. Ryan, that the waiver reflected in the 2003 Letter was not broad enough to cover this case because (1) the waiver he confirmed was only for 2003 and would not apply beyond that time; and (2) the waiver did not apply to cases in which there actually was a conflict of interest. (Plaintiff's Memorandum of Law in Reply to Defendant's Opposition to Motion to Disqualify Counsel ("Plaintiff's Reply") at 11-14 (citing Ryan Decl. at ¶¶ 7-11.).)

24. The Magistrate Judge did not conduct an evidentiary hearing. He rejected the oral waiver as a matter of law and found that the only writing on the subject was not clear and broad enough to waive the conflict. He then found that Crowell & Moring had a conflict and denied

*pro hac vice* admission without balancing (or indeed considering) either the competing interests of Illinois Union in maintaining the services of its chosen counsel or the extremely limited scope of Crowell & Moring's current engagement for Seaton.

## SUMMARY OF ARGUMENT

As described more fully below, the Magistrate Judge's decision reflects a series of fundamental errors of law, fact and perspective in finding that the oral conflict waiver was not enforceable and that the situation required disqualification.

1. The Magistrate Judge erred in rejecting the oral waiver agreement as a matter of law by citing a 2007 amendment to the Rhode Island Rules of Professional Conduct requiring such waivers to be in writing or confirmed in writing. No such rule was in effect when the oral waiver at issue was given, when the law firm took on the cases for Seaton upon which Seaton now bases its request for disqualification, or even when the attorneys began their work on these matters and Seaton first raised its objection. Moreover, even if the oral agreement was itself unenforceable, its existence (upon which Illinois Union and its attorneys relied) should have been vital to the Magistrate Judge's factual analysis because it is important to understanding the parties' subsequent actions, their reliance interests and the proper remedy.

2. The Magistrate Judge also mistakenly interpreted the claimed waiver as an agreement that extends "into perpetuity and which would be irrevocable." (Memorandum and Order at 6.) In fact, the parties voluntarily agreed upon conditions to govern their relationship on an ongoing basis – subject to change by either party upon agreement. The parties simply could not change the agreement in midstream: Crowell & Morning agreed to take on cases for Seaton, subject to the condition that taking on such cases would not allow Seaton to use the cases as a basis for claiming that the ACE USA Companies were barred from using Crowell & Moring in some other case adverse to Seaton. Where Crowell & Moring had relied on the waiver in

accepting a case from Seaton, Seaton could not then turn around and cite that case as a basis for a conflict claim. Beyond that agreement, there is nothing "perpetual" or "irrevocable" about the waiver.

3. The Magistrate Judge evaluated Seaton's claim of conflict without considering the competing perspectives and interests of the Defendant here, Illinois Union. Here, Crowell & Moring's representation of Seaton took place against the background of Crowell & Moring's ongoing representation of the ACE USA Companies, Seaton's awareness that conflicts could arise from that representation, and ACE USA Companies' request for assurance that Crowell & Moring's representation of other insurers, like Seaton, would not limit Crowell & Moring's availability to take on cases for the ACE USA Companies.

4. Finally, the Magistrate Judge erred as a matter of law in automatically finding a *disqualifying* conflict. The disfavored remedy of disqualification requires (a) consideration of the competing interests of the parties, including the important interests of the party who would lose access to its preferred counsel if disqualification were to be imposed, and (2) a determination whether the considerations underlying the conflict rules would truly be served by applying that remedy. Here, the "current representations" for Seaton that form the sole basis for disqualifying Crowell & Moring from appearing *pro hac vice* are nominal at best, involving one settled case and one stayed case. Further, Crowell & Moring is not in possession of any Seaton confidential information bearing on the issues. In contrast to Seaton's limited interest, Illinois Union actively sought to avoid the "unwaived conflict" situation, reasonably relied on the oral conflict waiver, and would lose access to counsel of its choice on this matter after expending substantial time and sums in bringing Crowell & Moring up to speed. When these factors are considered, they show that Crowell & Moring should be permitted to appear in this case.

**STANDARD OF REVIEW**

A motion to disqualify counsel is a non-dispositive motion, *Gray v. Rhode Island Dept. of Children, Youth & Families*, 937 F. Supp. 153, 156 (D.R.I. 1996), as is a motion for admission of counsel *pro hac vice*. A district court reviews a magistrate judge's order on a pretrial, nondispositive matter to determine whether it is clearly erroneous or contrary to law. 28 U.S. C. § 636(b)(1)(A) (2006); Fed. R. Civ. P. 72(a); *see Gray*, 937 F. Supp. at 156 (court "shall consider any objections to [the] magistrate judge's order…and shall modify or set aside any portion of the order found to be clearly erroneous or contrary to law"). A finding is "clearly erroneous" when "although there is evidence to support it, the court, after reviewing all the evidence is left with the definite and firm conviction that the magistrate judge made a mistake." *Ungar ex rel. Strachman v. Palestinian Auth.*, 325 F. Supp. 2d 15, 26 (D.R.I. 2004) (citations omitted); *see also United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). Legal error is, of course, subject to the district court's *de novo* review and reversal.

**ARGUMENT**

A party seeking disqualification of an opposing party's counsel "bears a heavy burden of proving facts required for disqualification." *Haffenreffer v. Coleman*, No. 06-299T, 2007 WL 2972575 at *2 (D.R.I. Oct. 10, 2007) (citation omitted); *see also Jacobs v. Eastern Wire Prods. Co.*, No. Civ.A. PB-03-1402, 2003 WL 21297120, at *2 (R.I. Super. May 7, 2003) ("party seeking to disqualify . . . must satisfy a high standard of proof."); *Elonex I.P. Holdings, Ltd. v. Apple*, 142 F. Supp. 2d 579, 581 (D. Del. 2001) ("the court wants to emphasize that motions to disqualify are generally disfavored").

The specific principles that control the determination (1) whether a conflict of interest exists, and (2) if it does, whether it should give rise to the strong medicine of disqualification, are well set forth in *Gray v. Rhode Island Dept. of Children, Youth & Families*. 937 F. Supp. 153

(D.R.I. 1996). In *Gray*, this Court reviewed a magistrate judge's report and recommendation disqualifying an attorney based upon his alleged violation of Rule 1.7 of the Rhode Island Rules of Professional Conduct in representing a client directly adverse to another client, without the second client's consent. *Id*. at 154. In conducting that review, this Court explained the considerations, policies and standards guiding the resolution of a disqualification motion.

As explained in *Gray*, a court reviewing a motion to disqualify an opposing party's chosen counsel must recognize the competing interests at stake. Those interests are "(i) the client's right of choosing an attorney and (ii) the protection of the integrity of the judicial process." *Id*. at 156 (citation omitted). Disqualification deprives a party of its right – a generally untrammeled and important right – to be represented by the attorney of its choice. Thus, on the one hand, "[d]isqualification motions serve to protect the legal profession from ethical violations that shake the public's confidence in the legal profession, and also serve to preserve the dignity of the judicial process." *Id*. On the other hand, motions for disqualification must not be allowed unnecessarily to impair a person or a company's right to retain its chosen attorney. *Id*.

Because of these conflicting interests, the analysis cannot be conducted in "broad strokes." *Id*. at 158. Determinations must be based on "a painstaking analysis of the facts and precise application of the precedent." *Id*. (citation omitted). Every disqualification motion requires an analysis "tailored to the specific ethical dilemma presented" and a "careful examination" of the allegedly conflicting representations. *Id*. (citation omitted). As a result, it would be inappropriate to "rigidly or automatically" disqualify attorneys if doing so would not meaningfully further the purposes underlying the applicable rule of professional conduct. *Id.* at 160 (citation omitted). Unless "the underlying judicial process will be tainted by an attorney's

conduct, courts should be reluctant to grant disqualification motions." *Id*. at 156 (citing *Board of Educ. of New York v. Nyquist*, 590 F.2d 1241, 1246 (2nd Cir. 1979)).

Here, the Magistrate Judge made a plain mistake of law in not enforcing the oral waiver by Randall/Cavell that was designed to protect the ACE USA Companies' right to employ the counsel of its choice in matters involving Randall/Cavell administered companies such as Seaton. Neither did the Magistrate Judge consider the interests of the ACE USA Companies on the apparent waiver, or the very limited relationship between Crowell & Morning and Seaton when the issues here arose – and thus whether disqualification was warranted by the "specific ethical dilemma presented" and actually served to preserve the "dignity of the judicial process."

## I. <u>The Magistrate Judge Erred by Rejecting the Oral Agreement to Waive Conflicts</u>.

Illinois Union submitted evidence of the oral agreement reached with Mr. Burns on the terms of Crowell & Moring's engagement by Randall/Cavell to represent the Randall/Cavell administered companies, including Seaton. Seaton offered no contrary evidence. Nevertheless, the Magistrate Judge rejected the efficacy (and evidence) of an oral waiver. He pointedly designated the June 2003 Letter, with its explicit reference to the continuation of a prior oral agreement, as a "request for a <u>new</u>" waiver. (Memorandum and Order at 4.) The existing oral waiver was, in his view of the law, a nullity. (*Id*. at n. 4 ("there is no evidence that those 'understandings and waivers,' which were applicable to Seaton, were in writing").)

### A. <u>The Magistrate Judge Wrongly Rejected the Valid Oral Agreement to Waive Conflicts By Applying the Recently Amended Rule 1.7</u>.

The Magistrate Judge erred in ruling that only a written conflict waiver by Seaton could be effective. As Illinois Union's counsel stated at the motions hearing, "until Rhode Island amended its Rules of Professional Conduct last year, conflict waivers didn't need to be in writing[.]" (Transcript at 23.); *see also Hartford Cas. Ins. Co. v. A&M Assoc., Ltd.*, 200 F. Supp.

2d 84, 92, n. 1 (D.R.I. 2002) (reciting previous Rule 1.7(b)). The current version of Rule 1.7(b) requiring "informed consent, confirmed in writing," (Memorandum and Order at 4, n. 4), was not adopted by the Rhode Island Supreme Court until February 16, 2007, and not effective until April 15, 2007.[5] Thus, the Magistrate Judge should have accepted Illinois Union's uncontradicted evidence of an existing oral agreement.

Moreover, even if Rhode Island law applies (and Crowell & Moring could have anticipated future litigation in Rhode Island at the time of the waiver agreement), and no matter whether the court focuses on (i) 2001 (when the parties made the agreement), or (ii) 2003 (the year of the June 2003 Letter), or (iii) when Crowell & Moring accepted any of the particular engagements from Randall/Cavell upon which Seaton now bases its conflict claim, or even (iv) at the time when Crowell & Moring first began work on these reinsurance matters and Seaton raised its initial objection, the applicable rule allowed oral waivers of conflicts of interests – and assuredly oral waivers of conflicts of interests by sophisticated parties such as Randall/Cavell and Seaton.

Each of these possible dates reflects and reinforces Illinois Union's reliance interest in the law in effect at the time the decisive conduct took place. For example, (i) is the date of the original oral agreement and governed the parties' behavior when they made the arrangement; (ii) was the time at which the parties confirmed the existence of a prior understanding. The reliance interests are especially great with respect to (iii) because that is the date at which Crowell &

[5] The 2007 Order from the Rhode Island Supreme Court adopting the amended Rules of Professional Conduct states that it applies to "conduct" from the effective date forward. It further states that it for acts or omissions prior to April 15, 2007, the previous Rules – which did not require a writing for a valid conflict waiver, merely consent by the client after consultation – will apply. *See* Order In re R.I. Rules of Prof'l Conduct (R.I. Sup. Ct. Feb. 16, 2007).

Moring, in reliance on the waiver, took on the specific engagements for Seaton that now form the basis of Seaton's conflict of interest claim.[6]

The new Rhode Island Rule *might* be applied to any Rhode Island engagements that Crowell & Moring took on for Seaton after the date of the rule change. After that date, it might be argued that notwithstanding the prior agreement, any further engagement would be taken on subject to the new rule. But that, of course, did not happen. Crowell & Moring took on the last of the cases for Seaton while the rule permitting oral waivers was still in effect. (Supp. Hendler Decl. at ¶¶ 4-5.)

This, of course, assumes that the Rhode Island rules apply. Crowell & Moring has its principal practice and place of business in Washington, D.C.[7] The waiver agreement was obtained there. At the time the waiver was negotiated, at the time cases were taken on for Seaton, and to the present day, the District of Columbia rules permit oral waivers. *See* D.C. R. Prof'l Conduct 1.7(c), cmt. 28.

### B. <u>Even if it Were Ineffective, the Oral Agreement Between Mr. Hendler and Mr. Burns Evidences the Parties' Intent</u>.

Even if the oral agreement between Mr. Hendler and Mr. Burns were unenforceable, their understanding remained relevant to understanding any written document and the parties' subsequent actions. Thus, as part of the "painstaking analysis" of the facts required by the precedents, the Magistrate Judge should have considered the discussions between Mr. Hendler and Mr. Burns as providing the context for subsequent actions, as course of dealing, and as

---

[6] Indeed, even in the fourth scenario – (iv) – there is an important reliance interest. When Crowell & Moring embarked on these representations, and Seaton raised its objection, Illinois Union and Crowell & Moring reasonably believed that the rules would give effect to the oral waiver.

[7] Despite the Defendant's raising of the issue, the Magistrate Judge did not undertake a choice-of-law analysis to determine whether Rhode Island or District of Columbia Rules of Professional Conduct applied to the question of whether Mr. Burns' oral waiver was sufficient to waive the conflict. (*See* Defendant's Opposition at 12, n. 5; Transcript at 23.)

evidencing the meaning of the June 2003 Letter's language "the same conflicts understandings and waivers" that allowed Randall/Cavell to engage Crowell & Moring on behalf of Seaton in the first place. *See Casey v. Lifespan Corp.*, 62 F. Supp. 2d 471, 480 (D.R.I. 1999) ("If, on its face, the contract appears ambiguous, the court *must* then consider extrinsic or parol evidence to determine the intent of the parties.") (emphasis added).[8] The fact that Randall/Cavell was fully aware of the ACE USA Companies' relationship with Crowell & Morning, as well as the ACE USA Companies' unwillingness to allow Crowell & Moring to take on additional representations except on condition, is assuredly relevant to the issues presented here.

Instead, the Magistrate Judge simply disregarded these discussions – which, by the admission of both parties, actually occurred – and was dismissive of the 2003 Letter's retrospective reiteration of "the same conflicts and understandings and waivers" as being "perfunctory" and "almost 'by the way'."[9] (Memorandum and Order at 3.) Given this Court's guidance that "[a]mbiguity exists where the language can support a reasonable difference of opinion as to the . . . obligations undertaken," *Casey* 62 F. Supp. 2d at 480, the Magistrate Judge's failure to consider the most relevant parol evidence – *i.e.*, the terms of the oral agreement that gave rise to the written letter – was a plain legal error.

---

8 The evidence of such oral agreements and explanations is frequently considered in this context as, at the very least, providing evidence of informed consent. *See VISA U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1106 (N.D. Cal. 2003); *Elonex I.P. Holdings, Ltd.*, 142 F. Supp. 2d at 583.

9 The Magistrate Judge also faulted the fact that that the waiver discussion appeared in a letter addressing fees for the upcoming year. But he is incorrect that this is an unusual place to address a waiver. Just as a new engagement letter addresses who would be performing legal work, rates, billing arrangements and any waiver of conflicts, the June 2003 Letter covered the same type of subject matter. Moreover, this was merely a reiteration of a pre-existing agreement that had been part of the parties' relationship for two years.

### C. **<u>The Magistrate Should Have Held an Evidentiary Hearing Before Rejecting Evidence of the Oral Agreement</u>.**

The evidence of the broad oral waiver was unrefuted. Accordingly, if the Magistrate Judge was inclined to reject all of the evidence of the oral agreement as a matter of law, and view the June 2003 Letter as the only reflection of Seaton's waiver, then, at a minimum, he should have allowed discovery and conducted an evidentiary hearing to resolve disputed issues.[10] A disqualification motion requires "careful examination" of the conflicting representations. *Gray*, 937 F. Supp. at 158. But in granting Seaton's motion, the Magistrate Judge seems to have credited the statements of Seaton's affiants alone, notwithstanding that the affidavit of Mr. Ryan, for example, reflects post-hoc statements of his own asserted beliefs. (*See, e.g.*, Memorandum and Order at 6.) Given the "heavy burden" on a party seeking disqualification, *Haffenreffer*, 2007 WL 2972575 at *2 (citation omitted), the Magistrate Judge should not have credited the views of a single affiant, especially an affiant that had no direct role in the initial negotiations of the conflict waiver.

Indeed, the Magistrate Judge accepted Seaton's interpretation of the 2003 Letter, as to both its temporal and substantive scope, notwithstanding its facial implausibility. Specifically, Seaton's view of the scope as applying only for 2003 was inconsistent with the letter, which refers to an arrangement that has been ongoing and "will remain in effect." (Hendler Decl. at Exh. A.) Moreover, Seaton's assertion that – at most – Seaton was agreeing that Crowell & Moring could take on conflicting cases only in 2003 is illogical. (Plaintiff's Reply at 11 (stating "If the alleged 'waiver' is effective at all . . . it should be read . . . as only applying to claims or

---

[10] There were other sources of parol evidence on the scope and understanding of the waiver. For example, the written statement of Mr. Bendig, a Randall/Cavell employee, who upon being asked to review the 2003 Letter, immediately recognized that it was a "broad waiver." (Plevin Decl. at ¶ 9-10 and Exh. D. (6/16/06 email from Mr. Bendig to Mr. Plevin).)

cases that arose in 2003") (citing Ryan Decl. at ¶ 7).) Lawsuits last for several years. In its proffered scenario, Seaton could induce Crowell & Moring to take on a case in 2003 by promising that it would not use that case as a basis for asserting a conflict of interest, but then change its mind in 2004 and cite that case as a bar to Crowell & Moring taking on a conflicting representation.

Additionally, Mr. Ryan's assertions about the substantive scope – that he "never had any understanding" that the waiver extended to cases where the ACE USA Companies and Seaton "were actually adverse" (Ryan Decl. at ¶ 11) – are inconsistent with the actual words of the June 2003 Letter. The Letter plainly contemplates that Crowell & Moring can represent the ACE USA Companies in cases "in which Randall-administered companies [such as Seaton] may have an adverse interest . . . where Crowell & Moring is not in such cases representing Randall-administered entities." (Hendler Decl. at Exh. A.) Moreover, common sense dictates that the ACE USA Companies insisted that Seaton and the other Randall/Cavell carriers agree to an advance waiver *in anticipation* of cases where the ACE USA Companies were "actually adverse." If there is no adversity, there is no need for a waiver.

Finally, Mr. Ryan's effort to confine the waiver to cases in which *a policyholder* has brought suit against several insurers, and the insurers' interests are entirely aligned, is equally inapt. The 2003 Letter points to multi-insurer disputes generally as giving rise to conflicts, not just cases involving policyholders. Indeed, the notion Mr. Ryan sponsors, that multi-insurer cases involving defense of policyholder asbestos claims would not give rise to adversity among insurers, is the exception, not the rule. (Ryan Decl. at ¶ 9.) There is always adversity in determining which among several insurers will pay.

"The Court must ensure that any sworn statements in an affidavit submitted in support of a motion to disqualify can be tested by the very counsel whose integrity and ethics are being challenged in connection with the motion; otherwise, such an affidavit could be used improperly as a method to gain a tactical advantage in litigation." *Fregeau v. Deo*, No. C.A. PC03-4179, 2005 WL 1837011 at *4 (R.I. Super. Aug. 2, 2005). That admonition should be applied here.

## II. **The Magistrate Judge Erred by Misconstruing the Terminability and Revocability of the Conflict Waiver.**

The Magistrate Judge derided the claimed waiver as implausible because it would be "a broad advance conflicts waiver extending . . . into perpetuity and which would be irrevocable." Memorandum and Order at 6. These references to "perpetuity" and "irrevocability" and "any time in the future" reflect a misunderstanding of the way in which a prospective waiver works.

The waiver posits the following: by taking on a particular representation for the waiving client, the law firm will not be disqualified from taking on future conflicting representations for some other client. Given its prior relationship with the ACE USA Companies, Seaton was asked to agree that if Crowell & Moring agreed to take on a case for, *inter alia*, Seaton, Seaton would not use that case to argue that Crowell & Moring was disqualified from taking on cases from, *inter alia*, the ACE USA Companies adverse to Seaton. Crowell & Moring then took on representations for Seaton in reliance on the waiver. Therefore, Seaton could not simply retract its waiver and assert a conflict of interest based on the matters Crowell & Moring was conducting for Seaton.

But that did not make the waiver perpetual or irrevocable. It is binding only with respect to the matters that Seaton agreed would not provide the basis of a claim of conflict of interest. Seaton was free at any time to say, in words or substance, "I will not assign you this new case unless you agree that you will not accept any conflicting representations," providing the ACE

USA Companies and Crowell & Moring with the choice whether they would accept an additional case from Seaton without a waiver. But Seaton simply could not retroactively change the deal with respect to cases Crowell & Moring had already been induced to accept.

Moreover, if it ceased to be content with the waiver, Seaton remained free to withdraw its business, including existing Crowell & Moring representations. Rather than give new cases to Crowell & Moring, it could elect not to provide any further cases unless Crowell & Moring and the ACE USA Companies agreed that Seaton could, in fact, use such new cases to claim a conflict of interest. Or Seaton could also choose not to hire the Crowell & Moring for any further cases for any reason at all. And, of course, Seaton could terminate its relationship with Crowell & Moring at any time and retain replacement counsel to complete any open cases. In any of these instances, the "waiver" would end.

**III. The Magistrate Judge Erred by Evaluating the Facts Bearing on the Conflict Without Regard to the Perspective of the ACE USA Companies.**

As this Court has emphasized, "[w]hen dealing with ethical principles, . . . we cannot paint with broad strokes," but instead must carefully consider the competing interests at stake through "painstaking analysis of the facts and precise application of precedent." *Gray*, at 158 (citation omitted). Of course, this requires detailed consideration of the factual concerns on both sides of the equation. *Id*. Nevertheless, the decision of the Magistrate Judge *does not once* acknowledge the interests of the ACE USA Companies in the disqualification motion. Consequently, the Magistrate Judge analyzed the facts solely from the perspective of Seaton, without considering the interests of the Defendant here, Illinois Union.

Illinois Union has significant rights and interests at stake, the most important of which is its "right to retain the attorney of [its] choosing," a right which "a court must respect." *Id*. at 156; *see Combustion Engineering Caribe, Inc. v. Geo P. Reintjes Co.*, 298 F. Supp. 2d 215, 219-

20 (D.P.R. 2003) ("A disqualification motion implicates a wide range of interests, including a client's right to counsel of his choice, the hardship suffered by a party whose lawyer is disqualified, the financial burden of a client to replace disqualified counsel . . . [and] the preservation of the attorney-client relationship[.]").

Here, the ACE USA Companies took steps to ensure that its right to employ Crowell & Moring was untrammeled and would be protected. The ACE USA Companies ensured that Seaton was alerted to the preexisting relationship between the ACE USA Companies and Crowell & Moring and the ACE USA Companies' requirement that Crowell & Moring not take on any representations for Randall/Cavell that would limit Crowell & Moring's ability to later represent the ACE USA Companies, even in matters adverse to Randall/Cavell carriers. Despite the fact that the June 2003 Letter referred to continuing oral "conflicts understandings and waivers," there is no suggestion that Mr. Ryan made any effort to clarify the scope of the prior understandings when he received Mr. Hendler's letter in 2003.

Moreover, the existence of the oral agreement (or the reasonable belief in the existence of the agreement), and acknowledgement of the breadth of the waiver,[11] created reasonable expectations on the part of the ACE USA Companies that the conflicts waiver would continue to be in force for the duration of those matters for which Randall/Cavell engaged Crowell & Moring.[12]

---

[11] *See supra*, note 4 (discussing Randall/Cavell's confirmation of a "broad waiver").

[12] Seaton asserted that Crowell & Moring should have re-sought its waiver after the July 2003 Letter. *See* Plaintiff's Reply at 18. The Magistrate Judge apparently agreed. *See* Memorandum and Order at 11 ("the Court finds it perplexing that Hendler did not seek to obtain another waiver from Seaton in October of 2006"). But Crowell & Moring and the ACE Companies had no reason to reconfirm a valid waiver. A second waiver is not required for an advance waiver to be enforceable. *See, e.g.*, *VISA U.S.A., Inc.*, 241 F. Supp. 2d at 1105 ("There is no case law requiring a second disclosure . . . for an advance waiver to be valid").

The Magistrate Judge's failure to consider the perspectives of the ACE USA Companies affected the Magistrate Judge's factual analysis in other ways as well. For example, after Mr. Hendler provided background information to Seaton about the waiver, Seaton sat silent for 15 months, during which time Seaton was aware that Crowell & Moring was continuing to work on these matters for the ACE USA Companies.[13] It renewed the issue only after settlement discussions had broken down.

The Magistrate Judge ruled that Seaton "was free to make this choice," *i.e.*, to "tolerate" the conflict, until settlement discussions broke down. (Memorandum and Order at 12.) But in reaching that view, the Magistrate Judge failed to consider the effect of Seaton's silence on the ACE USA Companies. Seaton did not tell the ACE USA Companies that it would tolerate Crowell & Morning's adverse representation only until suit was filed. As a result, the ACE USA Companies, believing that Seaton had acquiesced, continued to invest in Crowell & Moring's accumulation of knowledge about these issues. The Magistrate Judge ignored these facts, but reliance interests should be front and center in connection with motions for disqualification. *See Unified Sewerage Agency of Wash. County, Ore. v. Jelco Inc.*, 646 F.2d 1339, 1346, n.6 (9th Cir. 1981) (assuming that waiving client's motion to disqualify acted as a revocation of consent, that client "would be estopped from revoking its consent by everyone's reliance on its longstanding position"); *Interstate Proper v. Pyramid Co. of Utica*, 547 F. Supp. 178, 182 (S.D.N.Y. 1982) (given unambiguous waiver, delay of two years for objection to representation could "only be interpreted as a litigation ploy and not as a genuine complaint").

---

[13] As discussed in Section IV(B) below, during that period of silence, Crowell & Moring's limited work for Seaton virtually evaporated, with Seaton declining to assign Crowell & Moring any new cases and the remaining existing cases settling or being indefinitely suspended.

## IV. <u>The Remedy of Disqualification Does Not Fit These Facts</u>.

In Sections I-III above, Illinois Union showed that the Magistrate Judge erred in finding an unwaived conflict of interest. But even if the Magistrate Judge had been correct in rejecting the waiver, he failed to apply the proper analysis in determining whether disqualification was the appropriate remedy.

### A. <u>The Magistrate Judge Failed to Perform the Required Analysis in Determining Whether Disqualification was Appropriate</u>.

Unless some vital interest is served by disqualification, courts are reluctant to grant that remedy. *See, e.g.*, *Gray*, 937 F. Supp. at 156 ("unless the underlying judicial process will be tainted by an attorney's conduct, courts should be reluctant to grant disqualification motions."); *Haffenreffer*, 2007 WL 2972575 at * 2 ("Disqualification is not a step to be taken lightly…."). Motions "to disqualify are generally disfavored" precisely "because they separate a client from a chosen attorney." *Fregeau*, 2005 WL 1837011 at *3; *see also Haffenreffer*, 2007 WL 2972575 at *2 (disqualification has "a significant adverse effect on the client."). Yet here, upon finding a conflict, the Magistrate Judge proceeded as if disqualification (or here, denial of *pro hac vice* admission on the basis of a disqualifying conflict) was the proper remedy, to be applied as a matter of course. (Memorandum and Order at 12 (concluding only that "C&M has a conflict of interest . . . and Seaton has not waived that conflict").)

Under the precedents of this Court, a reviewing court must determine whether disqualification is warranted on the particular facts by considering, and then balancing, the competing interests, including the vital interest that the opposing party has in being allowed to proceed with its chosen counsel. *See Gray*, 930 F. Supp. at 156; *see also Haffenreffer*, 2007 WL 2972575 at *2 ("In deciding whether a party's counsel should be disqualified, a Court must balance the party's right to choose its counsel against the need to protect the integrity of the

judicial process."). Even if there were a technical breach of Rule 1.7, this Court has refused to "rigidly or automatically disqualify attorneys" where the balance of interests weighs against such remedy and does not further the purposes which underlie the Rule. *Gray*, 937 F. Supp. at 160. But the Magistrate Judge here did not consider the impact of the disqualification of Crowell & Moring on the ACE USA Companies, or whether, given Crowell & Moring's very limited current relationship with Seaton, and Seaton's inability to identify any confidential information in Crowell & Moring's possession, disqualification would protect, or disserve, the integrity of the judicial process. The failure to conduct the required analysis requires reversal.

**B. <u>Disqualification Is Not A Proper Remedy Here</u>.**

Had he performed the required balancing and consideration of the parties' competing interests, the Magistrate Judge would have rejected disqualification because the balance here clearly weighed against disqualification.

On the facts of this case, Illinois Union's right to employ the counsel of its choosing was particularly strong. As Seaton (or its agent, Randall/Cavell) was well aware, Crowell & Moring has served as one of the ACE USA Companies' primary insurance counsel for nearly twenty years. (Hendler Decl. at ¶ 5.) Such a longstanding relationship between a firm and client allows the firm to develop useful knowledge of the client that makes its representation both more efficient and more effective. It is this expertise that the ACE USA Companies sought to develop by ensuring that Crowell & Moring did not take on other insurance clients if those clients were not prepared to waive conflicts. *See Elonex I.P. Holdings, Ltd.*, 142 F. Supp. 2d at 585 (rejecting disqualification because "court-ordered severance of Elonex's long-standing relationship" with its counsel would not serve "the interests of justice and fairness" or harm "the integrity of the legal profession in the eyes of the public").

Moreover, the ACE USA Companies actively took steps to protect their interests and try to ensure that the very assertions that Seaton is making here could never properly be asserted. Randall/Cavell was on notice of the longstanding relationship between Crowell & Moring and the ACE USA Companies as well as the conflict of interest concerns raised by the ACE USA Companies. The representation of Seaton, as negotiated by Mr. Hendler and Mr. Burns in 2001, was based on the understanding that Crowell & Moring would be able to continue to represent the ACE USA Companies. (Hendler Decl. at ¶ 9 and Exh. A.) The ACE USA Companies expectably relied on that understanding. Moreover, even after Seaton raised these issues in October 2006, it also allowed Crowell & Moring to represent the ACE USA Companies in connection with the settlement discussions of this matter for an additional fifteen months – building up the ACE USA Companies' reliance on Crowell & Moring's experience and involvement with this case still further. Thus, the interests weighing against disqualification are manifest.

On the other side of the scale, Seaton has never suggested that it has *any* prejudice or genuine interest to protect through disqualification. It has relied on the bare fact that Crowell & Moring remained nominally engaged for Seaton on two matters, without describing the status of those matters. But, in point of fact, at the time Seaton filed this case against Illinois Union and Crowell & Moring sought *pro hac vice* admission, Crowell & Moring's representation of Seaton was (as noted above) vestigial only, down to the nub of just two matters: (1) the Federal Mogul litigation, and (2) the Quigley bankruptcy. (Supp. Hendler Decl. at ¶ 3.)

With respect to the Federal Mogul litigation, Crowell & Moring had been retained by Randall/Cavell in 2003 to represent Seaton, which it did along with numerous other insurance companies, including the ACE USA Companies. (*Id*. at ¶ 4.) As of the March 6th hearing in the

instant case, Federal Mogul's claims against Seaton in that bankruptcy had already been dismissed. All that remained was the language in a settlement agreed to in principle. (*Id*.) In the second "live" matter, the Quigley bankruptcy, Crowell & Moring had been asked by Randall/Cavell in 2006 to represent Seaton in a single adversary proceeding brought by CNA against Seaton and numerous other carriers. (*Id*. at ¶ 5.) But the matter went nowhere: Since February 22, 2007, that adversary proceeding has been stayed pending completion of an arbitration involving other parties. (*Id*.) Thus, at the time of the March 6 hearing, Crowell & Moring had not worked on or billed any time to the Quigley case in over a year. (*Id*.; Transcript at 19.) Therefore, while it is technically correct that there were still-open representations, there was no materially active matter for Seaton at issue at the time of decision.

Neither could Seaton show any prejudice in any other way. The classic form of real prejudice associated with a conflict situation is the possession by the attorneys of relevant confidential information belonging to the moving party that might bear on the case. *Gray*, 937 F. Supp. at 160. On this issue, Seaton was unable to offer any confidential information in the possession of Crowell & Moring concerning the matters in this dispute; nor could it, as the matters on which Crowell & Moring worked are entirely unrelated.[14] On these facts, Seaton has not met its "heavy burden" of demonstrating that the "disfavored" remedy of disqualification was appropriate. The Magistrate Judge's failure to weigh and balance all of the competing interests at stake, including the ACE USA Companies' "right to retain the attorney of [its] choosing," *Gray*, 937 F. Supp. at 156, is plainly a mistake of law and in itself requires reversal.

---

[14] Although Crowell & Moring does not possess any relevant confidential information, Crowell & Moring has had an ethics wall between those attorneys working on the Seaton matters and those attorneys working on the reinsurance dispute on behalf of the ACE USA Companies to guarantee that there could be no transfer of confidential information.

## CONCLUSION

The decision of the Magistrate Judge should be reversed.

Respectfully submitted,

ILLINOIS UNION INSURANCE COMPANY, f/k/a GATX INSURANCE COMPANY

By Its Attorneys,
PARTRIDGE SNOW & HAHN LLP

/s/ Robert K. Taylor
Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8200 FAX
rkt@psh.com

DATED: July 10, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT ILLINOIS UNION INSURANCE COMPANY'S APPEAL FROM MAGISTRATE JUDGE DAVID L. MARTIN'S MEMORANDUM AND ORDER was filed with the Clerk of the United States District Court for the District of Rhode Island this 10th day of July, 2008 and is available for viewing and downloading to the following ECF registered counsel of record:

John T. Harding / Morrison Mahoney LLP
jharding@morrisonmahoney.com
Thomas M. Robinson / Morrison Mahoney LLP
trobinson@morrisonmahoney.com

/s/ Robert K. Taylor

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

SEATON INSURANCE COMPANY,
f/k/a UNIGARD MUTUAL INSURANCE COMPANY,

Plaintiff,

v.

ILLINOIS UNION INSURANCE COMPANY, f/k/a GATX INSURANCE COMPANY,

Defendant.

C.A. No. 07-332-S-DLM

**APPENDIX OF MATERIALS IN SUPPORT OF DEFENDANT ILLINOIS UNION INSURANCE COMPANY'S APPEAL FROM MAGISTRATE JUDGE DAVID L. MARTIN'S MEMORANDUM AND ORDER**

The following documents are Exhibits referred to in Defendant's Memorandum of Law.[1]

A. Memorandum and Order Addressing Pro Hac Vice and Related Motions, Magistrate Judge David L. Martin, June 18, 2008;

B. Declaration of Clifford B. Hendler In Support of Defendant Illinois Union's Opposition to Plaintiff's Motion to Disqualify Counsel (and accompanying exhibits), February 1, 2008;

C. Transcript of March 6, 2008 Motion Hearing Before Magistrate Judge David L. Martin;

D. Declaration of Mark D. Plevin In Support of Defendant Illinois Union's Opposition to Plaintiff's Motion to Disqualify Counsel (and accompanying exhibits), January 25, 2008;

E. Declaration of Lori T. Hildebrand In Support of Defendant Illinois Union's Opposition to Plaintiff's Motion to Disqualify Counsel (and accompanying exhibits), February 1, 2008;

F. Memorandum of Law In Support of Defendant Illinois Union Insurance Company's Opposition to Plaintiff's Motion to Disqualify Counsel, February 4, 2008;

G. Plaintiff's Memorandum of Law in Reply to Defendant Illinois Union Insurance Company's Opposition to Motion to Disqualify Counsel, February 19, 2008;

H. Affidavit of Thomas M. Ryan in Support of Plaintiff's Motion to Disqualify Counsel, February 15, 2008;

I. Supplemental Declaration of Clifford B. Hendler In Support of Defendant Illinois Union Insurance Company's Appeal From Magistrate Judge David L. Martin's Memorandum and Order, July 10, 2008.

[1] The materials included in Exhibits A, B and D-H of this Appendix were part of the record before the Magistrate Judge at the time of his March 6, 2008 motion hearing addressing Mr. Kalish's and Ms. Devery's motion for admission to this Court *pro hac vice* and Plaintiff's motion for disqualification. Exhibit I, a supplementary declaration from Clifford B. Hendler addressing the present status of Crowell & Moring's representations of Seaton, is provided as additional evidence for the Court's consideration on an issue raised by Defendant's counsel at the March 6, 2008 motion hearing. Because "[t]he case itself belongs to the district judge throughout," a District Court that reviews a magistrate judge's order on a pretrial, nondispositive matter pursuant to 28 U.S.C. § 636(b)(1)(A) may receive and consider new evidence if the district court judge "reasonably concludes that further investigation is necessary." *Conetta v. Nat'l Hair Care Centers, Inc.*, 236 F.3d 67, 74 (1st Cir. 2001). For the Court's benefit, Exhibit E only includes Exhibits 1 and 2 from Ms. Hildebrand's declaration, which are referenced in Defendant's Memorandum of Law, and does not include exhibits 3-9, which are not referenced in Defendant's Memorandum of Law.

995817_1/8031-2