# EXHIBIT H

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SEATON INSURANCE COMPANY, f/k/a UNIGARD MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ILLINOIS UNION INSURANCE COMPANY, f/k/a GATX INSURANCE COMPANY,<br><br>Defendant. | Civil Action No.: 07-332-S |

**AFFIDAVIT OF THOMAS M. RYAN IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL**

I, Thomas M. Ryan, make the following affidavit under oath in support of Plaintiff's Motion to Disqualify Counsel. As set forth below, and contrary to the assertions made by Defendant Illinois Union Insurance Company f/k/a GATX Insurance Company ("Illinois Union"), I ***did not*** agree to waive all conflicts of interest on behalf of Seaton Insurance Company f/k/a Unigard Mutual Insurance Company ("Seaton") with respect to all matters involving one or more of the ACE Companies, such as Illinois Union. Specifically, I never agreed to a general waiver of conflicts involving the ACE Companies, nor did I ever agree to a waiver that would be effective for all time in all claims situations.

Instead, my understanding at the time I received the June 30, 2003 letter from Mr. Hendler regarding rates and related issues that is now relied upon by Illinois Union was that (1) any agreement regarding conflicts would be limited in time, and (2) any such agreement would be limited to waiving conflicts in cases involving multiple insurer defendants who are sued together in the same case, a situation totally unlike the one that is present here. I never had any

discussions with Mr. Hendler, Mr. Plevin or anyone else at Crowell & Moring regarding the subject of agreeing to a broader or more general waiver of conflicts. I most certainly never agreed to a waiver that would extend indefinitely into the future. I further state as follows:

1. I am currently the President of Resolute Management, Inc., New England Division and an employee of National Liability & Fire Insurance Company. I am generally familiar with the matters that are the subject of the motion that is presently before the Court relating to the issue of whether Crowell & Moring should be permitted to appear in this action on behalf of Illinois Union even though Crowell & Moring currently represents Seaton in another matter.

2. I have never been an employee of Randall America, f/k/a Eastgate, Inc., nor have I ever held any title with Randall America. At the time of the June 30, 2003 letter that is the subject of the present dispute, I was an employee of National Indemnity Company. In that capacity, I had certain responsibilities for claims that were being administered by Randall America.

3. I never agreed to a general or "blanket" waiver of future conflicts of interest on behalf of Seaton (or any other company for which Randall America was acting as claims manager) with respect to matters involving the ACE Companies.

4. I was never asked by Mr. Hendler, Mr. Plevin or any other partner at Crowell & Moring to enter into a general or "blanket" waiver of future conflicts of interest on behalf of Seaton (or any other company for which Randall America was acting as claims manager) with respect to matters involving the ACE Companies.

5. I never agreed to any waiver of future conflicts of interest on behalf of Seaton with respect to matters involving the ACE Companies that would be effective for all time.

6. I was never asked by Mr. Hendler, Mr. Plevin or any other partner at Crowell & Moring to agree to enter into an agreement to waive future conflicts of interest on behalf of Seaton with respect to matters involving the ACE Companies that would be effective for all time.

7. Instead, as I believe Mr. Hendler's June 30, 2003 letter makes clear, at the time the letter was sent to me the central issue under discussion was the rates that would be effective for matters in which Crowell & Moring was retained to represent the interests of insurers for which Randall America had been retained as claims manager. Mr. Hendler's letter sets forth the agreements that were reached at that time for the year 2003 (only) with respect to issues of the staffing of cases and the rates that would apply to attorneys handling particular categories of cases. As Mr. Hendler's letter also makes clear, the practice at the time was to reconsider these issues on an annual basis. The June 30, 2003 letter was never intended to be any type of binding agreement between Crowell & Moring and Randall America with respect to the handling of cases that extended beyond 2003.

8. Moreover, any discussion regarding a waiver of conflicts was purely incidental to the discussion of rates and staffing that is the focus of the June 30, 2003 letter. I never understood that I was being asked to enter into any sort of general waiver of conflicts on behalf of the companies whose claims were being handled by Randall America, nor did I ever agree to enter into any such general waiver. I never signed any such waiver on behalf of Randall America or any of the companies for which it then served as claims administrator.

9. Instead, the issue that was presented to me by Crowell & Moring was very different than the circumstance presented here. Mr. Hendler explained to me (and I knew from my own experience) that in complex insurance coverage cases such as those for which Randall America retained Crowell & Moring to serve as counsel, it was common for a large number of

insurers to be named as defendants in the case. For example, if a major manufacturer or distributor of asbestos brought a case seeking a declaration that its insurers were obligated to defend or indemnify it for asbestos claims, it would be typical for the policyholder to name as defendants all of the insurers who ever issued policies to the company. In the usual case, the interests of the insurers would generally be aligned. However, Crowell & Moring advised me that because of the firm's long-standing relationship with the ACE Companies, ACE was concerned that it not be precluded from retaining Crowell & Moring to represent the ACE Companies in such cases because of the possibility that the interests of the ACE Companies could be adverse in some respect to the interests of companies for which Randall America was acting as claims administrator. In other words, the ACE Companies did not want the fact that Crowell & Moring was representing companies for which Randall America was acting as claims administrator to interfere with their ability to retain Crowell & Moring for such cases.

10. What I have described above is the only scenario relating to potential conflicts between the ACE Companies and companies for which Randall America was serving as claims administrator that I ever discussed with Mr. Hendler. When I received his letter dated June 30, 2003, I understood the statements on pages 3 and 4 of the letter to be limited to this type of circumstance involving cases brought by a policyholder against multiple insurers.

11. I never had any understanding that Crowell & Moring (on behalf of the ACE Companies) ever requested that I agree to a blanket waiver of future conflicts in cases where the interests of the ACE Companies and companies for which Randall America was acting as claims administrator were ***actually adverse***, such as the situation presented in this case. When I received Mr. Hendler's letter of June 30, 2003, I never understood his statement regarding conflicts as extending to situations such as the one presented here.

Signed under the pains and penalties of perjury this 15 day of February 2008.

Thomas M. Ryan