**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

SEATON INSURANCE COMPANY, f/k/a UNIGARD MUTUAL INSURANCE COMPANY,

Plaintiff,

v.

ILLINOIS UNION INSURANCE COMPANY, f/k/a GATX INSURANCE COMPANY,

Defendant.

Civil Action No.: 07-332-S

**PLAINTIFF SEATON INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ILLINOIS UNION INSURANCE COMPANY'S APPEAL FROM MAGISTRATE JUDGE'S MEMORANDUM AND ORDER**

Pursuant to Fed.R.Civ.P. 72(a) and LR Cv 72(c), Plaintiff Seaton Insurance Company, f/k/a Unigard Mutual Insurance Company ("Seaton"), submits this Memorandum of Law in opposition to the "Notice of Appeal from Magistrate Judge's Memorandum and Order" filed by Defendant Illinois Union Insurance Company, f/k/a GATX Insurance Company ("Illinois Union"), on July 10, 2008 [PACER No. 50]. As set forth below, and as originally demonstrated in Seaton's Objections to Illinois Union's Motions for Entry of Appearance *Pro Hac Vice* [PACER Nos. 15, 16]; Seaton's Memorandum of Law in Support of its Motion to Disqualify [PACER No. 26]; and Seaton's Memorandum of Law in Reply to Illinois Union's Opposition to Motion to Disqualify [PACER No. 33], Magistrate Judge David L. Martin correctly held that the Crowell & Moring law firm ("C&M") is precluded from representing Illinois Union in this case because there is a current conflict of interest that has not been waived by Seaton.

In a thorough and well-reasoned opinion which demonstrates that he considered all of the facts and legal arguments presented, Magistrate Judge Martin concluded that C&M should not be

permitted to appear in the action on a *pro hac vice* basis because to do so would fail to recognize the conflict of interest created by C&M's ***current representation of Seaton in other cases with its proposed representation of Illinois Union here***. [Order at 7]. There is no legal basis for Illinois Union to challenge the Magistrate Judge's Order. Indeed, Illinois Union fundamentally misperceives the nature of the Order that is the subject of its appeal. The Order is ***not*** one disqualifying counsel who has properly filed an appearance in the case from further representation. Instead, in his Memorandum and Order dated June 19, 2008 [PACER No. 45; "Exhibit A" to Notice of Appeal], Magistrate Judge Martin denied Illinois Union's motions to admit Attorneys Devery and Kalish *pro hac vice*, and ruled that the Motion to Disqualify was therefore moot. By denying Illinois Union's motions to admit Attorneys Devery and Kalish *pro hac vice* [PACER Nos. 13, 14], which was well within the Magistrate Judge's discretion, the issue of "disqualification" based upon C&M's conflict of interest was resolved as well. Since the C&M attorneys were never "qualified" to represent Illinois Union in this Court, there was no need to enter an order "disqualifying" them.

On appeal, Illinois Union argues that "the Magistrate Judge erred in determining that (a) there was an unwaived conflict of interest and (b) that the proper remedy for that perceived conflict was disqualification." As noted, Illinois Union basically disregards the actual ruling made by the Magistrate Judge, which was to deny *pro hac vice* admission. However, the fact remains that C&M ***currently represents*** Seaton in other cases and ***Seaton has not waived the conflict of interest.*** The Magistrate Judge specifically found that there is an unwaived conflict of interest that would require disqualification if C&M were allowed to appear in the case. [Order at 7]. The Magistrate Judge's Order is not clearly erroneous or contrary to law and should be

affirmed. There is no reason to permit Seaton's attorneys to be adverse to its interests in this action.

## INTRODUCTION

Illinois Union's appeal asks the Court to adopt two rather astonishing propositions.

***First***, Illinois Union suggests that the Magistrate Judge was bound to accept C&M's own self-serving characterizations regarding the nature and scope of a claimed oral "waiver" allegedly provided to it in 2001 by Robert Burns, an employee of a third-party administrator that acted on behalf of Seaton and dozens of other companies, as "uncontested." Illinois Union did not provide the Magistrate Judge with any affidavit, e-mail, or other contemporaneous statement ***from Mr. Burns*** regarding the alleged waiver or its terms. No employee of ACE[1] provided an affidavit regarding the alleged "negotiations" with Mr. Burns. Not even a self-serving letter from C&M confirming any such alleged oral waiver was produced.

Given the claimed importance of the issue to C&M's client ACE, the complete absence of any writing to confirm the terms of such an allegedly all-encompassing waiver covering dozens of insurers and hundreds (if not thousands) of potential future claims is at least astonishing, if not entirely incredible. Indeed, Illinois Union conceded at the argument that it never reduced the alleged "waiver" to writing at the time it was allegedly provided. [Tr. at p. 26]. Whether a "writing" is technically required or not by the ethics rules, in light of the magnitude of the waiver that Illinois Union claims was given (all future claims for all time), the absence of any such writing, e-mail, or other document which would establish the terms and conditions of the alleged waiver created an entirely sufficient reason for the Magistrate Judge to conclude that a

[1] Illinois Union is part of the ACE Group of Insurance Companies.

claimed blanket "waiver" that extends years into the future with respect to cases that were not even contemplated at the time was not proven by Illinois Union. [Order at 6].

***Second,*** Illinois Union's appeal also suggests that the Magistrate Judge was somehow obligated to ***ignore*** the sworn statement of Mr. Ryan ["Exhibit H" to Notice of Appeal] in which he directly contradicted the nature and scope of the alleged agreement with ACE now claimed by C&M on ACE's behalf. Mr. Ryan's affidavit demonstrated that Illinois Union erroneously characterized a June 30, 2003, letter[2] from C&M addressed to Mr. Ryan at Randall America, a third-party administrator for Seaton and numerous other companies, as a purported "blanket" waiver by Seaton of all conflicts of interest in every context and for all time. As the Magistrate Judge recognized, the specific issue addressed in the letter is the setting of rates for calendar year 2003. [Order at 3]. Buried at the end of the letter is an isolated paragraph relating to conflict issues. The letter does not describe with any precision what alleged "agreement" was supposedly in place.

Whatever the unilateral intent of the author of the letter, the Magistrate Judge correctly determined that C&M's June 30, 2003, letter could ***not*** be construed as a waiver of conflicts of interest that could be effective for all time in all claims situations. To the extent that the letter can be regarded as reflecting any type of mutual "understanding" at all, Mr. Ryan makes it clear in his affidavit ["Exhibit H" to Notice of Appeal] that the purported agreement did not apply to the situation at hand. When Mr. Ryan received the letter from Mr. Hendler of C&M, it was Mr. Ryan's understanding that any agreement regarding "conflicts" would be limited in time and only apply to cases involving multiple insurer defendants that are sued together in the same case and who are not known to have adverse interests. [*Id.*]. ***Mr. Ryan never had any understanding***

[2] A copy of the June 30, 2003 letter is attached to Clifford B. Hendler's February 1, 2008 Declaration, which is attached as "Exhibit A" to Illinois Union's Notice of Appeal.

***that any such "waiver" involving the ACE Companies (of which Illinois Union is only one) would extend to situations of a direct conflict of interest (such as is present here), much less extend to all future claims for all time.*** [*Id.*].

There is nothing in the language of the June 30, 2003, letter which can now be read as a binding agreement by Seaton to waive all conflicts for all time in all cases without regard to the facts and circumstances of any particular claim. Indeed, such a construction of the letter would be directly contrary to the Rhode Island Rules of Professional Conduct[3] and the leading ABA Opinion on the issue of advance waivers. *See infra* at III.C. It is impossible for Randall America to have even understood what it was purportedly "waiving" on behalf of Seaton and all of the other companies for which it handled claims if the letter is read as broadly as C&M now argues. Moreover, the June 30, 2003, letter cannot be irrevocable and binding upon Seaton for all claims until the end of time. Any purported waiver that existed was revoked by Seaton long before this case was filed. Without Seaton's informed consent to the proposed representation by C&M ***in this case***, there is no basis under the applicable Rhode Island Rules of Professional Conduct for the Court to permit C&M to appear for Illinois Union. The Magistrate Judge correctly ruled that the representation should not be permitted.

The Rhode Island Rules of Professional Conduct do not allow simultaneous representation by C&M of Seaton and a party who is adverse to Seaton's interests when Seaton has not consented, and in fact repeatedly objected to, the dual representation. Even if the June 30,

[3] It is unnecessary for the Court to engage in an elaborate multi-state analysis of the ethical rules. The simple fact is that attorneys who are not members of the Rhode Island bar sought the permission of the Court to practice here and must therefore abide by this state's rules of professional conduct. *See* LR Gen 208. In any event, as the ABA's Opinion on this very subject makes clear ["Exhibit A" to Seaton's Reply Memorandum of Law in Support of Motion to Disqualify (PACER No. 34); for the Court's convenience, a copy is also attached hereto as "Exhibit A"], the notion that any purported waiver of conflicts must be clearly spelled out and based upon informed consent is a cornerstone of the ethics rules in every state.

2003, letter relied upon by Illinois Union and C&M is construed as a valid waiver of certain conflicts of interest, it can not be read as a blanket waiver of all future conflicts involving the ACE Companies for all cases and for all time. In October 2006, when Seaton was first advised of the alleged waiver, Seaton expressly revoked any purported consent to dual representation (which the Magistrate Judge found did not exist in the first place). After being put on notice of Seaton's objections, C&M did absolutely nothing to attempt to negotiate a conflicts waiver with Seaton. No such waiver is in effect today; the interests of Seaton and ACE are adverse; and C&M's current representation of Seaton dictates that the C&M firm not be allowed to appear in this case.

## STATEMENT OF FACTS

This action was commenced by Seaton on August 31, 2007 to recover amounts owed to Seaton by Illinois Union under certain facultative reinsurance certificates. [Complaint, ¶1]. Seaton has paid ***more than $4 million*** in defense and settlement costs for underlying asbestos claims asserted against its policyholder, Borg-Warner Corporation ("Borg-Warner"), under a policy that was issued by Seaton's predecessor to Borg-Warner for the period from September 1, 1974 to September 1, 1975. Illinois Union issued facultative reinsurance certificates pursuant to which it agreed to reimburse Seaton for any losses paid by Seaton under the Borg-Warner policy [Complaint, ¶¶7-20]. Although these losses have been presented in a timely manner to Illinois Union, the claims have not been paid in whole or in part, nor has Illinois Union advised Seaton of any specific claims or amounts that Illinois Union contests. Instead, Illinois Union has simply engaged in a strategy of delay and stone-walling, which ultimately forced Seaton to commence this action to recover the sums that are currently due under the reinsurance contracts and the

additional losses that will be paid in the future. The amounts paid by Seaton, together with the interest that Seaton is owed under Rhode Island law, totals more than $5 million.

### A. Illinois Union Engages National Reinsurance Counsel, *Not* C&M

Illinois Union's Appeal conveniently disregards the history of its engagement of counsel in this matter. In particular, the appeal does not mention the fact that Illinois Union originally engaged nationally recognized reinsurance counsel ***other than C&M,*** who it abruptly dropped from the case with no explanation in order to substitute a firm with a prohibited conflict of interest.

Illinois Union retained the Rhode Island law firm of Partridge, Snow & Hahn to represent its interests and, pursuant to an assented to extension, filed its Answer on November 13, 2007. [PACER No. 6]. In connection with responding to the Complaint, Illinois Union also retained the New York law firm of Mound, Cotton, Wollan & Greengrass ("Mound, Cotton") to represent its interests along with Partridge, Snow & Hahn. Seaton assented to the motions for attorneys from Mound, Cotton to appear in the case *pro hac vice*. [PACER Nos. 7, 8] and the Court granted the Mound, Cotton attorneys' request for leave to appear on November 26, 2007. [See Text Order 11/26/07]. The Mound, Cotton attorneys were listed as counsel on the Answer filed by Illinois Union on November 13, 2007.[4]

Thereafter, for reasons that have never been explained, Illinois Union apparently decided to switch counsel to appear in this case along with Partridge, Snow & Hahn. Having been granted leave to appear *pro hac vice*, the attorneys from Mound, Cotton abruptly filed a Notice of Withdrawal of Appearance on December 28, 2007 [PACER Nos. 11, 12]. At the same time, Illinois Union moved for the admission *pro hac vice* of Jennifer R. Devery, Esq. and Paul W.

[4] The Mound Cotton firm is nationally known for its expertise in reinsurance matters. *See* www.moundcotton.com.

Kalish, Esq. of C&M. [PACER Nos. 13, 14]. Illinois Union was well aware at the time that it sought permission for the attorneys at C&M to appear in the case that there was a conflict of interest.

Seaton timely objected to Illinois Union's motions to admit Attorneys Devery and Kalish *pro hac vice* as the law firm of C&M ***currently represents*** Seaton in matters in other jurisdictions. [PACER Nos. 15, 16]. In connection with these other cases, Seaton has provided C&M with privileged and confidential information relating to its business operations. [Follis Aff., ¶2 ("Exhibit B" hereto)[5]]. Seaton had every reason to expect that C&M would maintain the privileged and confidential nature of such information and never be in a position to potentially use the information to harm Seaton's interests. [Follis Aff., ¶2]. Illinois Union disregards the fact that Seaton has paid ***hundreds of thousands of dollars of fees*** to C&M in connection with its representation of Seaton, including on the matters which C&M now seeks to characterize as involving a "vestigial" attorney-client relationship.[6]

Illinois Union was fully aware at the time it dismissed the Mound, Cotton firm and filed the motions for the attorneys at C&M to appear that Seaton objected to any involvement of C&M in this case or any other matter in which the interests of Seaton and any of the ACE Companies

[5] Seaton relies upon affidavits previously submitted to the Magistrate Judge (which Illinois Union failed to include in the record submitted to the Court in support of its appeal). In particular, Seaton relies upon the Affidavit of Joseph P. Follis dated January 17, 2007 [PACER No. 25 (attached hereto as "Exhibit B")] submitted with Seaton's Memorandum of Law in Support of its Motion to Disqualify (the "Follis Aff."), the Supplemental Affidavit of Joseph P. Follis dated February 19, 2008 [PACER No. 34 (attached hereto as "Exhibit C")] submitted with Seaton's Reply Memorandum in Support of its Motion to Disqualify (the "Supp. Follis Aff.") and the Affidavit of Thomas M. Ryan dated February 15, 2008 [PACER No. 35 (attached hereto as "Exhibit D")] submitted with Seaton's Reply Memorandum in Support of its Motion to Disqualify (the "Ryan Aff.").

[6] While Seaton respectfully suggests that Illinois Union's argument that the attorney-client relationship should be measured by the fees charged to a file during a particular period is irrelevant and inconsistent with the ethics rules, Seaton would be happy to submit an affidavit concerning the fees that it has paid to C&M if requested by the Court.

are directly adverse. [Follis Aff., ¶3]. Illinois Union subsequently filed a Reply Brief in response to Seaton's Objection on January 10, 2008 [PACER No. 20], admitting that "a purported conflict of interest may be grounds for a properly supported motion to disqualify," but arguing that determining any issue of disqualification before the attorneys are admitted *pro hac vice* was premature. Therefore, Seaton moved to disqualify the C&M attorneys based on the existing conflict of interest. [PACER No. 24].

The Court referred the Motions for Admission *Pro Hac Vice* and related Motions to Disqualify to Magistrate Judge David L. Martin for determination. [PACER Docket Entries 1/10/2008, 1/17/2008, 1/18/2008, 2/5/2008, 2/13/2008, 2/26/2008, 2/28/2008, 2/29/2008]. The Magistrate conducted a lengthy hearing on the motions on March 6, 2008. [Tr. 3/6/08; "Exhibit C" to Notice of Appeal]. Magistrate Judge Martin issued a Memorandum and Order denying Illinois Union's Motions for Admission *Pro Hac Vice* and ruling that the Motion to Disqualify was moot. [PACER No. 45; "Exhibit A" to Notice of Appeal]. In so deciding, Magistrate Judge Martin ***specifically found*** that "C&M has a conflict of interest in its attempt to represent Illinois Union in this action, and Seaton has not waived that conflict under the Rhode Island Rules of Professional Conduct." [Order at 12]. This appeal followed.

### B. <u>The Alleged Agreement with Robert Burns</u>

Although in its original arguments Illinois Union focused upon the June 30, 2003, letter from C&M to Thomas Ryan (discussed below) as the basis for its claim that a proper waiver of all future conflicts was obtained in writing, in its appeal, Illinois Union reverts back to an alleged "oral" waiver provided by Mr. Burns in 2001.[7] The fundamental problem with Illinois Union's

---

[7] Illinois Union's attempt to predicate a claim of legal error on the fact that the Rhode Island rules were only amended in 2007 to expressly require that advance conflict waivers be in writing is of no moment. Apart from the fact that the rule was in effect when this case was filed, the

position, however, is that it failed to provide the Court with any evidence from Mr. Burns indicating that he knowingly and intentionally entered into the vast waiver of all conflicts for all time on behalf of dozens of separate insurance companies that Illinois Union now seeks to concoct.

The only evidence of any oral advance conflict waiver by Mr. Burns on behalf of Randall America clients, including Seaton, is Mr. Hendler's Declaration. ["Exhibit B" to Notice of Appeal]. There is no contemporaneous writing memorializing the breadth of the purported waiver. Illinois Union has not submitted an affidavit from Mr. Burns outlining the scope of any waiver, much less confirming that Mr. Burns ever granted an oral waiver. There is no evidence, other than C&M's self-serving statements, of when the purported waiver was first given, by whom, for how long and for what types of situations. It is not even clear what information C&M provided to Mr. Burns, if any, to decide whether a broad advance conflict waiver should (or could) be given based upon informed consent.

In essence, Illinois Union asked the Court to accept a series of absurd hypotheses, none of which were supported by any evidence:

- That, in 2001, Mr. Burns elected to hire C&M to represent one of the companies (not specifically Seaton) for which Randall America was acting as a third-party administrator.

- That in order to secure the representation of C&M, Mr. Burns agreed to forever waive all potential conflicts of interest involving C&M and any of the ACE Companies on behalf of the dozens of separate insurance companies for which he was acting as a third-party administrator.

- That the "waiver" applied to any number of insurance companies.

---

central finding made by the Magistrate Judge was that there was no evidence that Seaton ever agreed in any form (whether oral or written) to the type of all-encompassing waiver claimed by Illinois Union.

- That the "waiver" applied to potentially hundreds or thousands of unknown claims.

- That such a "waiver" was in place even though there is no evidence that Seaton (of any of the other affected companies) was ever advised that he had entered into this "blanket" waiver on Seaton's behalf.

- That the "waiver" would be good for all time.

- That the "waiver" extending to dozens of companies and hundreds of claims was never reduced to writing (whether e-mail confirmation, letter, or formal agreement) signed by all parties.

- That the "waiver" could never be revoked in situations of direct conflict.

- That Mr. Burns was authorized to enter into such a blanket waiver without the knowledge or consent of any of the companies for which his firm was acting as a claims administrator.

- That C&M has no record of what specifics were actually discussed with Mr. Burns concerning the proposed "waiver" so that he could provide "informed consent" as required by the applicable rules of professional conduct.

The absurdity of C&M's position (and the complete lack of evidence to support it) is demonstrated by C&M's own actions. In response to the conflict of interest concerns raised by Mr. Bendig in 2006 on behalf of Commercial Union (an insurer with no connection to Seaton), Mr. Plevin refers only to the June 30, 2003 letter "which sets forth the terms of Cavell's [Randall America's] broad advance waiver." ["Exhibit C" to Plevin Decl.; "Exhibit D" to Notice of Appeal]. Mr. Plevin made no mention of Mr. Burns or a waiver dating back to 2001. Moreover, the June 30, 2003 letter, itself, does not refer to Mr. Burns or to a waiver given in 2001.

For reasons that have never been explained, in 2003, Mr. Hendler decided that the conflict waiver supposedly given in 2001 should be put in writing. [Tr. at p. 26]. It is unclear why such a broad waiver, which C&M claims applies to all types of cases for all Randall

America clients, would only be confirmed in writing two years after it was given and as part of C&M's billing arrangements for 2003. No waiver was confirmed in writing, whether by e-mail, fax or letter, between 2001 (when it was supposedly granted) and 2003, nor was any such waiver separately reiterated after 2003. There is no evidence in the record that Seaton was ever directly advised of this alleged waiver until 2006.

There is no evidence supporting C&M's contentions that Mr. Burns agreed in 2001 to waive all conflicts of interest for all Randall America clients for all time, without regard to the facts and circumstances of a particular representation. Illinois Union has failed to establish that Mr. Burns gave informed consent to all future conflicts of interest in 2001. The Magistrate Judge found that this absence of proof was fatal to Illinois Union's claim of waiver. [Order at 3, n.3]. There is no basis for the Court to set aside this finding.

**C. The June 2003 Letter**

The record presented to the Magistrate Judge is devoid of any evidence that Seaton knowingly and intentionally agreed to waive the clear conflict that would be created by allowing its current attorneys to defend Illinois Union with respect to the claims at issue here. [Follis Aff., ¶3; Supp. Follis Aff., ¶¶12, 14; Ryan Aff., ¶3]. In fact, Seaton's objections to the dual representation were made known to C&M ***in October 2006***, long before this action was filed. [Supp. Follis Aff., ¶8]. The crux of Illinois Union's argument is that a June 30, 2003, letter from C&M to Thomas M. Ryan of Randall America[8] should be read as a blanket waiver of all conflicts of interest for all Randall America clients, including Seaton, for all time. [Appeal Br. at 5]. At the time of the June 30, 2003, letter, Mr. Ryan was an employee of National Indemnity Company and had certain responsibilities for claims that were administered by Randall America.

[8] Mr. Ryan is not and never has been a direct employee of Randall America [Ryan Aff., ¶¶1, 2], nor has Mr. Ryan ever been an employee of Seaton. [Follis Aff., ¶9].

[Ryan Aff., ¶2]. At the same time, Randall America had been acting as a third-party administrator for Seaton pursuant to an Agreement Relating to Administration of Run-Off Business (the "Run-Off Agreement")[Follis Aff., ¶3; Supp. Follis Aff., ¶4]. Seaton terminated the Run-Off Agreement and its relationship with Randall America as of March 31, 2006. [Follis Aff., ¶8; Supp. Follis Aff., ¶6].

Illinois Union argues that the June 30, 2003, letter reiterated and memorialized the advance conflict waiver given by Randall America on behalf of Seaton (and other companies for which Randall America administered claims). [Appeal Br. at 4]. There is no evidence of Seaton's having given "informed consent" to future conflicts of interest as early as 2001. There is no evidence that the June 30, 2003, letter was ever sent to Seaton. Only in 2006, when Seaton first objected to the concurrent representation, did Seaton become aware of any purported conflicts waiver dating back to 2001. [*See* "Exhibit B" to Hendler Decl.; "Exhibit B" to Notice of Appeal]. The only evidence C&M has ever provided with respect to the purported 2001 waiver is the June 30, 2003, letter.

Mr. Ryan's Affidavit makes it clear that there is no factual basis for the "spin" that C&M and ACE now attempt to put on the agreement under which C&M could continue to represent ACE in certain matters notwithstanding the fact that C&M was handling matters for Seaton. As his affidavit makes clear, Mr. Ryan ***never agreed*** to a general or "blanket" waiver of future conflicts of interest on behalf of Seaton (or any other company for which Randall America was acting as claims manager) with respect to matters involving the ACE Companies. [Ryan Aff., ¶3]. In fact, Mr. Ryan was never even asked by Mr. Hendler, Mr. Plevin, or any other partner at C&M to enter into such a general or "blanket" waiver of future conflicts of interest on behalf of Seaton (or any other company for which Randall America was acting as claims manager) with

respect to matters involving the ACE Companies. In addition to ***not*** being a general or "blanket" waiver, the June 30, 2003, letter was also not a waiver for future conflicts that would be effective for all time. [Ryan Aff., ¶5]. Mr. Ryan was never asked by Mr. Hendler, Mr. Plevin, or any other partner at C&M to enter into an agreement to waive future conflicts that would be effective indefinitely. [Ryan Aff., ¶6].

Mr. Ryan's Affidavit also makes it clear that the June 30, 2003, letter was very limited in scope. The letter is not a blanket waiver of conflicts in all matters where the interests of the ACE Companies and the interests of Seaton (or other companies for which Randall America was acting as claims manager) were ***actually adverse***. [Ryan Aff., ¶¶3, 11]. Instead, the only arrangement contemplated by the letter involved the common situation where the ACE Companies and insurers for which Randall America was acting as claims administrator were named as defendants in a complex insurance coverage case and ***where the interests of the insurers in defeating or limiting coverage would generally be aligned***. [Ryan Aff., ¶¶9, 10]. In the context of such suits, Mr. Ryan understood that the mere "possibility" that the ACE Companies and one or more of the companies represented by Randall America could be adverse on some coverage issue would not be used by the companies for which Randall America was handling claims as a means to automatically preclude C&M from undertaking the representation of the ACE Companies. [Ryan Aff., ¶9]. Any attempt by C&M to expand the scope of the understanding reflected in the letter is totally at odds with both the specific language contained in the letter and Mr. Ryan's contemporaneous understanding.[9]

[9] To bolster its position, Illinois Union has filed a Supplemental Declaration of Clifford Hendler without leave of Court. ["Exhibit I" to Notice of Appeal]. Seaton has moved to strike the Supplemental Declaration since it was not before the Magistrate Judge and its filing was not authorized. The affidavit is incomplete since it fails to provide the complete history of the

**D. <u>Seaton's Timely Objections to C&M's Adverse Representation</u>**

Illinois Union also errs in suggesting that Seaton did not raise its objections to the simultaneous representation of Seaton and interests adverse to Seaton's in a timely manner. In August and September 2006, C&M, on behalf of certain ACE Companies, issued arbitration demands for two separate claims against Seaton, both of which are unrelated to the claims in this litigation. [Supp. Follis Aff., ¶7]. No arbitration panel was selected in either matter as the parties attempted to reach a settlement, and both arbitrations were stayed until November 2007. [*Id.*]. Upon learning of C&M's representation of parties adverse to Seaton in the 2006 arbitrations, Joseph P. Follis, Vice President of Seaton, contacted C&M and ***explicitly objected*** to the representation. [Supp. Follis Aff., ¶8]. On October 3, 2006, Mr. Follis sent an e-mail message to Clifford B. Hendler of C&M stating that "***today (and going forward), Seaton is not expecting to be sued by firms that represent us.***" [*Id.*; "Exhibit C" to Hendler Decl. (emphasis added)]. Thus, C&M was clearly on notice as of October 2006, that Seaton did not consent to C&M being adverse to Seaton on behalf of the ACE Companies. [Supp. Follis Aff., ¶8]. In response to Seaton's objection to C&M's representation, Mr. Hendler forwarded to Mr. Follis by e-mail a copy of the June 30, 2003, letter. [Supp. Follis Aff., ¶9; "Exhibit C" and "Exhibit A" to Hendler Decl.].

***Thus, Seaton did not even receive a copy of the June 30, 2003 letter until October 3, 2006, well after Seaton had terminated its relationship with Randall America.*** [Supp. Follis Aff., ¶10]. Seaton did not sign the June 30, 2003, letter, nor did Seaton agree to waive all conflicts of interest presented by C&M's representation of the ACE Companies in perpetuity. [Supp. Follis Add., ¶11]. Seaton did not receive any consideration from C&M for the purported

---

relationship between Seaton and C&M and the hundreds of thousands of dollars of fees that have been paid to C&M by Seaton.

"blanket" waiver of all conflicts of interest for all time and without regard to the facts and circumstances of any particular claim. [*Id.*].

C&M never attempted to obtain an agreement from Seaton with respect to any future waiver of conflicts of interest involving the ACE Companies, nor did C&M challenge Mr. Follis's clear statement that Seaton did not consent to any such adverse representation. [Supp. Follis Aff., ¶12]. Mr. Follis did not retract his position regarding this issue after receiving a copy of the June 2003 letter, nor did C&M ever take any steps to reach an agreement that would clarify the matter of conflicts. Instead, in clear contravention of the ethics rules, C&M continued to engage in an elaborate game of creating a self-fulfilling prophecy by suggesting (as it does here) that the 2003 letter (which was never signed by Seaton) represents an irrevocable blanket waiver of all known and unknown conflicts that might arise in cases where the ACE Companies wanted to retain C&M to be adverse to Seaton.

After Seaton clearly objected to C&M's representation of adverse parties in the 2006 arbitrations, C&M did not seek a waiver from Seaton for the conflict of interest. [Follis Aff., ¶11; Supp. Follis Aff., ¶12]. Instead, C&M, on behalf of certain ACE Companies, issued demands for arbitration to Seaton for seven new matters in November 2007. [Supp. Follis Aff., ¶12]. Also in November 2007, the stays on the 2006 arbitrations were lifted as the parties were unable to reach a settlement. [*Id.*]. Then, in December 2007, Illinois Union sought to replace its counsel in this case with C&M. [Follis Aff. ¶11; Supp. Follis Aff., ¶13].[10] Again, C&M never requested Seaton's consent to the proposed representation of Illinois Union in this matter. [Follis Aff. ¶11; Supp. Follis Aff., ¶12]. Seaton does not agree to waive the conflict of interest

[10] As noted above, whatever the reason, Illinois Union made a considered judgment to replace its counsel who did not have an ethics conflict with one who did. There is no reason for the Court to indulge such a strategy.

presented by C&M's current and prior representation of Seaton and its proposed representation of Illinois Union in this case. [Follis Aff., ¶3; Supp. Follis Aff., ¶14].

Illinois Union inappropriately asserts that an alleged waiver that is unbounded with respect to time, case, or subject matter is in place and should be enforced here so that its counsel can represent Illinois Union against Seaton, a current client of C&M. The purported "waiver" of conflicts of interest contained in the letter dated June 30, 2003, to Randall America (whose authority to act for Seaton has been terminated) predates this suit by several years and is ***not*** binding upon Seaton until the end of time. Certainly, there is no basis for the Court to find that this letter, which was not even signed by Seaton, nor sent to Seaton, constitutes a wholesale "blanket" waiver of all conflicts for all time—which is precisely the position being taken by Illinois Union here.[11] Seaton was not even aware of the existence of the letter until Mr. Follis expressly objected to C&M's representation of the ACE Companies adverse to Seaton in October 2006. [Supp. Follis Aff., ¶10].

The context of the June 30, 2003, letter relied upon by Illinois Union makes it clear that Seaton did not waive any present or future conflicts of interest stemming from C&M's dual representation, much less agree to any type of "blanket" waiver that would tie its hands forever with respect to new cases that were not even known to exist in 2003 (much less 2001). [*See* Ryan Aff.]. The letter is not a conflict of interest waiver at all, but instead relates to "business

[11] Indeed, under C&M's reading of the June 2003 letter, Randall America was purportedly waiving all conflicts in all cases for all time as to any company whose claims it was handling at the time, not just Seaton. This is borne out by the fact that its oft-repeated quotation from an e-mail sent by Mr. Bendig of Resolute New England, a third-party claims administrator, in June 2006 (after Seaton terminated its contract with Randall America) concerned his involvement in handling claims for OneBeacon (formerly Commercial Union), an insurance company that is entirely unrelated to Seaton.

matters" which are "the last 'piece of the puzzle'" to confirm the relationship between C&M and Randall America for the year 2003. The letter details C&M's rates and staffing plans for cases to be administered by Randall America in 2003—some five years ago. [Ryan Aff., ¶¶7, 8]. At the time, rates and staffing plans were reconsidered on an annual basis, and any agreement by Mr. Ryan to rates and staffing plans in 2003 was never intended to be a binding agreement between C&M and Randall America with respect to the handling of cases that extended beyond 2003. [Ryan Aff., ¶7]. Mr. Ryan did not agree, nor was he ever asked to agree, to waive future conflicts of interest on behalf of Seaton with respect to matters involving the ACE Companies that would be effective for all time. [Ryan Aff., ¶¶5, 6]. To the extent that the letter reflects any type of understanding, it was strictly limited to situations involving large, multi-insurer cases where there could be (at most) a theoretical possibility that the interests of insurers whose claims were being handled by Randall America might diverge from the interests of the ACE Companies. [Ryan Aff., ¶9].

As the Magistrate Judge correctly found, the letter relied upon by Illinois Union is not an irrevocable conflict waiver by Seaton that applies to this case, and there is no language in the letter which provides the Court with a basis to give it such effect.

**ARGUMENT**

The Magistrate Judge specifically found that C&M has a conflict of interest which prohibits C&M from representing Illinois Union here. [Order at 12]. The Magistrate Judge found that Seaton never waived the conflict. [Order at 7]. The Order enforced the Rhode Island Rules of Professional Conduct, which do not allow concurrent representation of parties with adverse interests unless there is informed consent to the dual representation, which was not given by Seaton. Rule 1.7 of the Rhode Island Rules of Professional Conduct states, in relevant part,

that "a lawyer ***shall not*** represent a client if the representation involves a concurrent conflict of interest." Rules of Prof'l Conduct, R.1.7(a) (emphasis added). A lawyer with a concurrent conflict of interest may represent a client ***only*** if "each affected client gives informed consent, confirmed in writing." Rules of Prof'l Conduct, R.1.7(b). Informed consent expressly requires that each affected client have a reasonable opportunity to consider the risks and alternatives to the proposed concurrent representation. Rules of Prof'l Conduct R.1.7, cmt. 17, 19. Even if informed consent is given by a client to dual representation, the client is not forever bound by that consent and may revoke it at any time. Based on the existing unwaived conflict of interest, C&M cannot be permitted to represent the ACE Companies in this action.

Contrary to Illinois Union's suggestion that the District of Columbia's Professional Rules of Conduct apply in this case, pursuant to Local District Court Rule 208, the Rules of Professional Conduct as adopted by the Rhode Island Supreme Court shall be the Standards of Professional Conduct for attorneys appearing and/or practicing before this Court, including those seeking admission *pro hac vice*. *See also Obert v. Republic Western Ins. Co.*, 190 F. Supp. 2d 279, 297-98 (D.R.I. 2002); *Haffenreffer v. Coleman*, Civ. No. 06-299T, 2007 U.S. Dist. LEXIS 75432, at *5-6, n.1 (D.R.I. Oct. 10, 2007). Therefore, it is entirely unnecessary for the Court to engage in an elaborate multi-state analysis of the ethical rules.[12] The simple fact is that attorneys who are not members of the Rhode Island bar are seeking the permission of the Court to practice here and must therefore abide by this state's rules of professional conduct. In any event, as the

[12] Although the Rules of Professional Conduct of Rhode Island and not the District of Columbia apply, the District of Columbia's Rules of Professional Conduct similarly prohibit conflicts of interest that have not been waived. *See* D.C. Rules Prof'l Conduct, R.1.7(b)(1). Moreover, Illinois Union does not state why the D.C. Rules of Professional Conduct should control when there is nothing to indicate that either Mr. Burns or Mr. Ryan was located in D.C. at the time they allegedly entered into a waiver agreement. Further, C&M has not suggested that any of the courts or arbitrations in which the alleged agreement operated took place in the District of Columbia.

ABA's Opinion on this very subject makes clear ["Exhibit A" to Seaton's Reply to Illinois Union's Opposition to Motion to Disqualify; a copy is also attached hereto as "Exhibit A" for the convenience of the Court], the notion that any purported waiver of conflicts must be clearly spelled out and based upon informed consent is a cornerstone of the ethics rules in every state and the District of Columbia.

The Magistrate Judge did not rely upon some mere "technicality." The core finding made by the Magistrate Judge is that C&M has a current conflict of interest that has never been waived by Seaton, thereby clearly disqualifying them from appearing in the case. [Order at 12].

## I. THE DISTRICT COURT ONLY REVIEWS THE MAGISTRATE JUDGE'S ORDER FOR CLEAR ERROR.

The Court referred the motions for admission *pro hac vice* and related motions to disqualify to Magistrate Judge Martin for determination. [PACER Docket Entries 1/10/2008, 1/17/2008, 1/18/2008, 2/5/2008, 2/13/2008, 2/26/2008, 2/28/2008, 2/29/2008]. The motions for admission *pro hac vice* and the motions to disqualify are non-dispositive because they do not resolve the litigation or any claim in the litigation. *Gray v. R.I. Dept. of Children, Youth & Families*, 937 F. Supp. 153, 156 and n.1 (D.R.I. 1996). The District Court is only authorized to consider timely objections to a Magistrate Judge's order on non-dispositive matters and modify or set aside any part of the order that is clearly erroneous or contrary to law. 28 U.S.C. §636(b)(1)(A); Fed.R.Civ.P. 72(a); *Gray*, 937 F. Supp. at 156; *Phinney v. Wentworth Douglas Hospital*, 199 F.3d 1, 5 (1st Cir. 1999). The Magistrate Judge's findings of fact and the conclusions drawn therefrom must be accepted by the district court unless, after scrutinizing the entire record, the court "form[s] a strong, unyielding belief that a mistake has been made." *Phinney*, 199 F.3d at 4, quoting *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 152 (1st Cir. 1990); *see also Gray*, 937 F. Supp. at 156. There is no clear error, however, where the factfinder



1136129v1

simply makes a choice between two plausible views of the evidence. *Tsoulas v. Liberty Life Assurance Co. of Boston*, 454 F.3d 69, 76 (1st Cir. 2006), *quoting Anderson v. City of Besemer City, N.C.*, 470 U.S. 564, 573-74; *see also Leal Santos v. Mukasey*, 516 F.3d 1, 4-5 (1st Cir. 2008).

Here, no mistake has been made by Magistrate Judge Martin in finding an unwaived conflict of interest in C&M's proposed representation of Illinois Union in this action. The Magistrate Judge's denial of admission *pro hac vice* to the C&M attorneys is supported by evidence of a conflict of interest. The findings equally support disqualification. [Order at 7, 12]. Therefore, Magistrate Judge Martin's Order is not clearly erroneous nor contrary to law and should be affirmed.[13]

## II. IT WAS WITHIN THE MAGISTRATE JUDGE'S DISCRETION TO DENY ADMISSION *PRO HAC VICE* BASED UPON A CONFLICT OF INTEREST

Illinois Union fails to show how it could ever carry its burden to establish "clear error" in connection with a discretionary ruling that was based upon a finding that C&M had a conflict of interest. Illinois Union's appeal proceeds from the misguided premise that a client is always entitled to retain a particular attorney to represent it in a case even if the attorney is not authorized to practice law in the jurisdiction and has a direct conflict of interest that precludes the representation. *Pro hac vice* admission is a privilege and not a right. *Obert v. Republic Western Ins. Co.*, 190 F. Supp. 2d 279, 298 (D.R.I. 2002). Counsel admitted *pro hac vice* appear by permission of the Court and are allowed to practice only on a case-by-case basis. *Id.* at 297.

[13] Illinois Union also suggests that the Magistrate Judge should have ordered extensive discovery and held an evidentiary hearing on the issues raised by the motions. The Magistrate Judge received all of the evidence that Illinois Union and Seaton submitted and Illinois Union did not press this issue at the hearing. There is no requirement that the Court conduct a "trial" on a motion for *pro hac vice* admission since any ruling is entirely discretionary. *See* LR Gen 204(f).

In deciding whether to admit counsel *pro hac vice*, "the client's interest should be paramount, not counsel's interests." *Id.* A court is entitled to disqualify *pro hac vice* counsel without a hearing upon knowledge of counsel's conflict of interest. *Id.* at 299; *see also* LR Gen 204(f)(1)(the Court "shall have the discretion to grant or deny motions for admission *pro hac vice* based upon … any other factors that bear on the applicant's fitness to practice in this Court"). Here, the Court allowed attorneys who did not have a conflict of interest (the Mound, Cotton firm) to appear in the case; there is no reason for the Court to tolerate Illinois Union's abuse of the privilege by seeking to substitute out-of-state counsel known to have a direct conflict of interest based upon concurrent representation.

A decision by the Court on counsel's admission *pro hac vice* early in the litigation "preserve[s] the integrity of the proceeding" (*Obert*, 190 F. Supp. 2d at 299) and provides for the efficient administration of justice. *Haaffenreffer v. Coleman*, Civ. No. 06-299T, 2007 U.S. Dist. LEXIS 75432, at *5-6, n.1 (D.R.I. Oct. 10, 2007). The Magistrate's Order was entered before any substantive proceedings had taken place. Moreover, as the Court has noted, any doubt about precluding an appearance because of a conflict of interest in a situation of concurrent representation should be ***resolved in favor of disqualification***. *Falvey v. A.P.C. Sales Corp.*, 185 F.R.D. 120, 126 (D.R.I. 1999).

Illinois Union will not be materially prejudiced in any way by affirming the Magistrate's Order. Denial of admission *pro hac vice* (or disqualification) in this case does not separate Illinois Union from its counsel of choice. Illinois Union chose (and continues) to be represented in this matter by attorneys from the law firm of Partridge, Snow & Hahn, who are members in good standing of the bar of Rhode Island and do not have a conflict of interest. Early in this litigation, Illinois Union also retained the New York law firm of Mound, Cotton to represent its

interests in the case along with Partridge, Snow & Hahn. Seaton assented to the motions for attorneys from Mound, Cotton to appear in the case *pro hac vice* [PACER Nos. 7, 8], and the Court granted the Mound, Cotton attorneys' request for leave to appear in this case. [See Text Order 11/26/07].

Thereafter, for reasons which have never been explained, Illinois Union decided to switch counsel to appear in this case along with Partridge, Snow & Hahn. Having been granted leave to appear *pro hac vice*, the attorneys from Mound, Cotton abruptly filed a Notice of Withdrawal of Appearance on December 28, 2007. [PACER Nos. 11, 12]. At the same time, Illinois Union moved for the admission *pro hac vice* of Attorneys Devery and Kalish. Illinois Union made the choice to have experienced New York reinsurance counsel from Mound, Cotton who had been admitted in the case withdraw with absolutely no assurance that the Court would permit a substitution. Illinois Union engaged in this maneuver with full knowledge that its newly chosen counsel had a conflict of interest and that Seaton had objected to C&M's representation more than one year earlier.

As a current client of C&M, Seaton has the right not to be adverse to another C&M client in the same action. To be clear, Seaton is not trying to take away cases from C&M where there is no conflict of interest; Seaton is merely invoking its right to limit C&M's ability to accept conflicting representation. Seaton recognizes that C&M has a longstanding attorney-client relationship with the ACE Companies, but C&M also has a long-standing attorney-client relationship with Seaton involving C&M's handling of very substantial insurance cases on its behalf.

The only argument offered by Illinois Union in its Brief (at pp. 6, 26-27) and at argument (Tr. at pp. 21-22) is that the ethics rules governing concurrent representation do not really apply

here because the two remaining matters that C&M is handling for Seaton are not very active at this time. In its Brief, C&M refers to its attorney-client relationship with Seaton as "vestigial" [Br. at 1, 26]. At the hearing, C&M dismissed its relationship with Seaton as meaningless based upon the number of hours billed to these files recently. [Tr. at pp. 21-22]. C&M ignores the fact that it has received hundreds of thousands of dollars of fees from Seaton in connection with these representations. The fact is that applying the Rules of Professional Conduct does not turn on whether there is a soupcon of billing or a smorgasbord. Seaton is a current client of C&M; Seaton did not waive the conflict; and the Magistrate Judge correctly determined that C&M should be foreclosed from representing Illinois Union here.

## III. ILLINOIS UNION FAILED TO ESTABLISH AN ENFORCEABLE WAIVER OF CONFLICTS

There was no dispute in the proceedings before the Magistrate Judge that there is an "actual" conflict of interest since C&M currently represents Seaton's interests in other matters and was requesting authorization to appear adverse to Seaton here. As the party seeking such authorization over the objection of Seaton, it was Illinois Union's burden to establish that a knowing, intentional, and binding advance conflicts waiver was given by Seaton that would apply to this case. Put simply, the Magistrate Judge found that Illinois Union failed to do so. [Order at 7]. There is no basis to disturb this determination.

Illinois Union ignores the fundamental rule that courts are critical of "blanket" future conflict waivers and loathe to give them effect. *Univ. of Rochester v. G.D. Searle & Co., Inc.*, Civ. No. 00-6161, 2000 U.S. Dist. LEXIS 19030, at *32 (W.D.N.Y. Dec. 11, 2000); *see also Fla. Ins. Guaranty Ass'n, Inc. v. Carey Canada, Inc.*, 749 F. Supp. 255 (S.D. Fla. 1990) (striking down an advance waiver for insufficient consultation or full disclosure); *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 227-29 (7th Cir. 1978)(a document intended to grant

standing consent must identify the possibility of future conflicts and the circumstances under which adverse representation would be undertaken); Restatement (Third) of Law Governing Lawyers §202, cmt. d (1990)(courts have refused to infer from a general, prior consent that a client was consenting to later, conflicted representation). Even with advance consent, if circumstances develop that change the nature of the concurrent representation so that a conflict of interest arises, the consent may be ineffective. *See* Rules of Prof'l Conduct R.1.7, cmt. 21; *see also In re Friedman's Inc.*, 385 B.R. 381, 460 (S.D. Ga. 2008), *vacated on other grounds*, Civ. No. 07-041, 2008 U.S. Dist. LEXIS 31262 (S.D. Ga. Apr. 16, 2008). And, of course, consent may always be revoked. Here, the self-serving statements offered by the attorneys from C&M failed to establish that any such enforceable waiver was ever given.

### A. The Magistrate Judge Was Not "Bound" to Accept C&M's <u>Characterization of the Alleged 2001 Communications</u>

Illinois Union and C&M mischaracterize nondescript communications with Mr. Burns in 2001 as an alleged oral waiver of all conflicts of interest for all time. [Br. at 14, 17]. However, there was no evidence of the breadth of any waiver purportedly given by Mr. Burns on behalf of all Randall America clients in 2001. Illinois Union produced no statement from Mr. Burns indicating that he ever agreed to any such waiver. There is no contemporaneous writing in any form that memorializes the alleged "agreement." Further, there was no evidence presented by Illinois Union as to what information C&M allegedly provided to Mr. Burns in seeking a broad advance waiver that could satisfy the requirement of "informed consent". The only evidence presented by Illinois Union and C&M that Mr. Burns waived any conflicts of interest in 2001 was Mr. Hendler's Declaration, drafted seven years after the fact. ["Exhibit B" to Notice of Appeal]. ***The Declaration contains no specifics that would demonstrate a knowing and intentional waiver of the scope now claimed***. The Hendler Declaration failed to provide the



1136129v1

Court with any specifics of the time, place and details of the alleged conversations with Mr. Burns or how the alleged conversations satisfied the requirements of a broad advance conflicts waiver. The record shows that Illinois Union failed to establish that Mr. Burns gave an all-encompassing, irrevocable conflict waiver in 2001. There was no evidence that Mr. Burns ever advised Seaton of any such alleged waiver or obtained its consent. Given the utter lack of evidence submitted by Illinois Union to establish a binding, advance conflicts waiver that would apply to dozens of insurers in hundreds of cases years into the future, there is no basis for the Court to set aside the Magistrate Judge's Order. *Tsoulas v. Liberty Life Assurance Co. of Boston*, 454 F.3d 69, 76 (1st Cir. 2006), *quoting Anderson v. City of Besemer City, N.C.*, 470 U.S. 564, 573-74; *see also Leal Santos v. Mukasey*, 516 F.3d 1, 4-5 (1st Cir. 2008).

### B. Illinois Union's Interpretation of the June 30, 2003, Letter is Far Too Broad

The Magistrate Judge correctly ruled that the June 30, 2003, letter cannot and should not be read as an irrevocable waiver by all of Randall America's clients of all possible conflicts of interest for all time, without regard to the facts and circumstances of a particular claim. The waiver language that Illinois Union relied upon was buried at the end of a letter from C&M about its billing rates and staffing arrangements for cases administered by Randall America for the year 2003. [Ryan Aff., ¶¶7, 8]. No clear waiver on the part of Seaton (or any other Randall America client) of all conflicts of interest until the end of time was memorialized. The letter was merely intended to "formally renew [C&M's] relationship with Randall America for 2003," and it sets forth the agreements that were reached with respect to rates and staffing issues. [Ryan Aff., ¶¶7, 8; Order at 4].

C&M never sought the consent of Seaton to waive any conflicts after the June 30, 2003, letter, even after C&M became aware of Seaton's explicit objection to C&M's dual

representation in October 2006. [Supp. Follis Aff., ¶12]. Instead, Illinois Union argues that the consent supposedly embodied in the June 30, 2003, letter has been consistently "relied upon" by C&M, even in the face of Seaton's clear objection to the dual representation and revocation of any previously given consent. C&M's self-fulfilling "reliance" is hardly reasonable, much less consistent with the ethics rules.

Illinois Union attempts to treat the June 30, 2003, letter as a binding contract with Seaton that can never be terminated or cancelled. The letter is signed only by one of C&M's own partners and ***not*** by any officer or employee of Seaton (or Randall America). There was no exchange of consideration between Seaton and C&M to support the purported "waiver." [Supp. Follis Aff., ¶11]. There is no evidence that Randall America was represented by counsel in connection with the letter or that C&M made a disclosure of facts that would be sufficient to support a claim of "informed consent." Upon learning of the existence of the letter and C&M's contention that it was a binding, blanket waiver for all time, Seaton ***expressly objected*** to C&M's concurrent representation of an adverse party in other proceedings. [Supp. Follis Aff., ¶8]. Thus, C&M was on notice long before this suit was filed that it would be inappropriate for C&M to appear in the case. Any consent by or on behalf of Seaton to C&M's representation of parties with adverse interests has been withdrawn; permitting the representation of Illinois Union by C&M here would be a clear-cut violation of the Rhode Island Rules of Professional Conduct.

C&M failed to present any evidence to the Magistrate Judge suggesting that Seaton knowingly consented in 2003 to any waiver of a conflict, much less to a waiver that would be effective for all time as to all future cases in all jurisdictions and all circumstances. Any discussion between Mr. Ryan and partners at C&M regarding a waiver of conflicts of interest was purely incidental to the consideration of rates and staffing that is the focus of the June 30,

2003, letter. [Ryan Aff., ¶8]. Mr. Ryan never understood that he was being asked to enter into any sort of general waiver of conflicts on behalf of the companies whose claims were then being handled by Randall America, nor did Mr. Ryan ever agree to enter into any such general waiver. [*Id.*].

Instead, the issue that was presented to Mr. Ryan in 2003 by C&M was very different than the circumstance presented here. [Ryan Aff., ¶9; Order at 4-5]. Mr. Hendler explained to Mr. Ryan that in complex insurance coverage cases such as those for which Randall America retained C&M to serve as counsel, it was common for a large number of insurers to be named as defendants in the case. [*Id.*].[14] In such instances, the ACE Companies did not want the fact that C&M was representing companies for which Randall America was then serving as claims administrator to interfere with their ability to retain C&M as counsel. [*Id.*]. This is the only scenario relating to potential "conflicts" between the ACE Companies and companies for which Randall America was serving as claims administrator that Mr. Ryan ever discussed with Mr. Hendler. [Ryan Aff., ¶10]. When Mr. Ryan received the letter from Mr. Hendler dated June 30, 2003, Mr. Ryan understood the statements on pages 3 and 4 of the letter relating to potential conflicts to be limited to precisely this type of circumstance involving cases brought by a policyholder against multiple insurers. [*Id.*].

[14] For example, if a major manufacturer or distributor of asbestos brought a case seeking a declaration that its insurers were obligated to defend or indemnify it for asbestos claims, it would be typical for the policyholder to name as defendants all of the insurers that ever issued policies to the company. [Ryan Aff., ¶9]. In the usual case, the interests of the insurers would generally be aligned. [*Id.*]. However, C&M advised Mr. Ryan that because of the firm's long-standing relationship with the ACE Companies, ACE was concerned that it not be precluded from retaining C&M to represent the ACE Companies in such cases because of the "possibility" that the interests of the ACE Companies could be adverse in some respect to the interests of companies for which Randall America was acting as claims administrator. [*Id.*]. The *Emhart v. Home Indemnity* matter, with which the Court is very familiar (and which involved another ACE company, Century Indemnity Company), is a good example of what Mr. Ryan contemplated.

Mr. Ryan never had any understanding that C&M (on behalf of the ACE Companies) ever requested that he agree to a blanket waiver of future conflicts in cases where the interests of the ACE Companies and companies for which Randall America was acting as claims administrator were ***actually adverse***, such as this case. [Ryan Aff., ¶11]. When Mr. Ryan received Mr. Hendler's letter of June 30, 2003, he never understood C&M's statement regarding conflicts as extending to situations such as the one presented here. [*Id.*]. The Magistrate Judge found Mr. Ryan's explanation and interpretation "credible". [Order at 5-6]. Insofar as Mr. Ryan's Affidavit directly conflicts with the "interpretation" of the letter offered by C&M, the Magistrate Judge correctly ruled that there was no basis to conclude that Illinois Union had clearly established that Seaton (or its agent) gave "informed consent" to a broad waiver of conflicts in all cases and for all time. [Order at 6].

C&M did not present any facts suggesting that there were any explicit discussions with Randall America regarding the scope of any such waiver or that C&M was intending to take the position that an alleged "waiver" entered into in connection with the setting of rates in 2003 was a blanket waiver of all conflicts for all time. Indeed, there is no way that Randall America (even if it had the bare authority) could have had sufficient facts regarding all claims that might arise in the future from which any purported "consent" could be considered to be "informed," as expressly required by the applicable ethics rules.

In its brief, Illinois Union waxes on about the history of the relationship between C&M and the ACE Companies. C&M ignores the ethical duties that it owes to its other client, Seaton. Illinois Union also mistakenly relies on e-mail exchange with Brian Bendig in June 2006 on behalf of another Randall America client (Commercial Union Insurance Company) pertaining to an entirely unrelated matter not involving Seaton. [*See* Opposition Br. at p. 7; Plevin Decl. at

¶¶5-10 and "Exhibit D"]. Mr. Bendig's statements on behalf of other Randall America clients regarding his understanding of an alleged agreement which he did not negotiate are not binding upon Seaton. Moreover, Seaton had ***terminated*** its relationship with Randall America in ***March 2006***, several months prior to the e-mail exchange cited by Illinois Union.

**C. Concurrent Representation Requires Informed Consent, Which Seaton Has Not Given**

Pursuant to the Rhode Island Rules of Professional Conduct, a conflict of interest based upon concurrent representation may be waived only with the informed consent of each affected client. Rules of Prof'l Conduct R.1.7(b)(4). The rules mandate that any such agreement be in writing. *Id.* The duties of loyalty and confidentiality owed by attorneys to their clients require informed consent to the concurrent representation of parties with adverse interests. *See* Rules of Prof'l Conduct R.1.7, cmt. 6; Rules of Prof'l Conduct R.1.6.

There are certain indicia of informed consent even though a determination requires a case-by-case analysis. *In re Gabapentin Patent Litigation*, 407 F. Supp. 2d 607, 612 (D.N.J. 2005). A client must have a reasonable opportunity to consider the risks and alternatives to the proposed concurrent representation before it can give informed consent. Rules of Prof'l Conduct R.1.7, cmt. 17, 19. A client cannot give informed consent unless the lawyer ensures that the client has enough information to make an informed decision. *See Iowa Sup. Ct. Attorney Disciplinary Bd. v. Clauss*, 711 N.W.2d 1, 3 (Iowa 2006); *Image Technical Svcs., Inc. v. Eastman Kodak Co.*, 82 F. Supp. 1212, 1216-17 (N.D. Cal. 1993). As stated in Rules of Prof'l Conduct R.1.0, cmt. 6:

> Ordinarily, this will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the

> proposed course of conduct and a discussion of the client's or other person's options and alternatives.

*Id.* Indeed, in a telling oversight, Illinois Union fails to quote the official comments to the professional rules regarding the restrictions on blanket waivers:

> The effectiveness of such [future] waivers is generally determined by the extent to which the client reasonably understands the material risks that the waiver entails. The more comprehensive the explanation of the types of future representations that might arise and the actual and reasonable foreseeable adverse consequences of those representations, the greater the likelihood that the client will have the requisite understanding. Thus, if the client agrees to consent to a particular type of conflict with which the client is already familiar, then the consent ordinarily will be effective with regard to that type of conflict. ***If the consent is general and open-ended, then the consent ordinarily will be ineffective because it is not reasonably likely that the client will have understood the material risks involved.***

ABA Opinion 05-436 at 2 (emphasis added) ["Exhibit A" hereto].

There are simply no facts presented from which the Magistrate Judge could find that these standards were satisfied and that the "discussion" in 2003 (or earlier in 2001) included a comprehensive consideration of all possible claims scenarios and the material risks involved such that "informed consent" by Randall America (on behalf of all of its clients at the time) could be found to have been given. Illinois Union and C&M failed to demonstrate that Mr. Hendler made Mr. Burns, Mr. Ryan, or any other representative of Seaton "aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on [Seaton's] interest" or that Mr. Burns, Mr. Ryan, or any other representative of Seaton "agreed to a proposed course of conduct after the [C&M] lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." *See Bd. of Regents of the Univ. of Neb. v. BASF Corp.*, Civ. No. 04-3356, 2006 U.S. Dist. LEXIS 58255, at *27 (D. Neb. Aug. 17, 2006).

As the United States District Court for the District of Maine has stated, "[a] prospective waiver is valid if it identifies the potential opposing party and the nature of the likely subject matter in dispute and permits the client to appreciate the potential effect of the waiver." *Glenwood Farms, Inc. v. Ivey*, Civ. No. 03-217, 2005 U.S. Dist. LEXIS 24403, at *96, n.46 (D. Me. Oct. 20, 2005)(citing *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 583 (D. Del. 2001)). The lawyer who fails to provide the client with adequate information to make an informed decision assumes the risk that the purported consent is invalid. *Id.* (citing Restatement (Third) of the Law Governing Lawyers §122(1), cmt. c(i) (2000)). The American Bar Association recognizes that "open-ended" informed consent may be valid, ***but such consent must be clearly articulated so that the client understands the material risks involved***. ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 05-436 (2005)["Exhibit A" hereto]. There is nothing erroneous about the Magistrate Judge's determination that Illinois Union failed to establish that any such knowing and informed consent was ever given.

Based on the foregoing requirements for a valid prospective waiver, the June 30, 2003, letter falls woefully short. The June 30, 2003 letter hardly gives any information at all about the proposed dual representation. The letter does not list Seaton by name, nor does it specify the nature or types of claims that may be at issue. The letter does not identify the duration of the waiver or its scope. In contrast, C&M clearly explained in the letter that Randall America (on its own behalf) agreed that C&M could not bring cross-claims or bad faith/extra-contractual claims against the ACE Companies, and that C&M could not take positions for Randall America that would create conflicts of interest for the ACE Companies. [*See* Plevin Decl., "Exhibit A"]. In short, the type of claims scenario at issue here was never even contemplated at the time that C&M unilaterally sent the June 30, 2003, letter to Randall America.

As previously discussed, Mr. Ryan had no intention of waiving all potential conflicts of interest for all time. Mr. Ryan did not agree to enter into a permanent general or "blanket" waiver on behalf of Seaton with respect to matters involving the ACE Companies. [Ryan Aff., ¶¶3, 5]. No C&M partner, including Mr. Hendler or Mr. Plevin, ever asked Mr. Ryan to waive future conflicts of interest on behalf of Seaton for all time. [Ryan Aff., ¶¶4, 6]. In 2003, Mr. Ryan understood that any agreement with C&M regarding conflicts of interest would be limited to cases involving multiple insurers where there might be (at most) a theoretical possibility that a divergence of interests could arise, a situation totally unlike the one of actual adversity that is present here.

Though the courts of Rhode Island have not addressed the issue of informed consent, other federal courts have found the informed consent requirement to be substantive and inflexible. *See, e.g., Worldspan, L.P. v. Sabre Grp. Holdings, Inc.*, 5 F. Supp. 2d 1356, 1362 (N.D. Ga. 1998)(absence of informed consent is more than a technical violation of the Rules of Professional Conduct where there is the real possibility of substantial and meaningful conflict); *Blecher v. Northwest Airlines, Inc.*, 585 F. Supp. 1442, 1454 (C.D. Cal. 1994)(the requirement of informed consent is inflexible "because obtaining a written waiver requires little effort, informs and protects clients, and avoids costly evidentiary and credibility issues"). There are no facts from which the Court could find that Seaton consented to the adverse representation by C&M of the ACE Companies ***in this case.*** The Magistrate Judge properly rejected Illinois Union's contentions that the June 30, 2003 letter requested "that Ryan, on behalf of Randall America and all other companies for whom Randall America was acting, waive any and all conflict of interests that might arise at any time in the future regarding any insurance related matter regardless of the circumstances and to do so irrevocably." [Order at 6-7]. Indeed, "there is no



1136129v1

way that the [June 30, 2003] Letter could constitute informed consent of a broad, advance conflict waiver encompassing the instant action." [Order at p. 7]. There is no basis for the Court to disturb the Magistrate Judge's ruling.

### D. Seaton Revoked Any Consent Given by the June 30, 2003 Letter.

Under any logical reading, the June 30, 2003, letter cannot be deemed an ***irrevocable*** waiver for all cases to be effective for all time. However, it is axiomatic that a client who has consented to a conflict of interest may revoke its consent at any time. Rules of Prof'l Conduct R.1.7, cmt. 20. It is equally fundamental that a client has the right to select its counsel. Under Rule 1.16 of the Rules of Professional Conduct, a client can discharge its attorney at any time, with or without cause. The Restatement of the Law Governing Lawyers accords the client the same rights for the revocation of waivers. Restatement of the Law Governing Lawyers §122, cmt. f (1958). Similarly, the view of the authors of the Model Rules is that consent waivers are always revocable. Model Rules of Prof'l Conduct, cmt. 21.

A client that consents in advance to potential future conflicts of interest cannot be bound by that consent when actual conflicts arise. *Griva v. Davison*, 637 A.2d 830, 846 (D.C. 1994). An actual conflict of interest alters the facts and circumstances upon which the client gave its initial consent, and the earlier consent no longer constitutes "informed" consent. With changed circumstances, the validity of the prior consent comes into question. When an actual conflict of interest arises, the client must be afforded the opportunity to affirm or revoke its consent. *See Wellman v. Willis*, 400 Mass. 494, 499-500 (1987); *In re Friedman's Inc.*, 385 B.R. 381 (S.D. Ga. 2008), *vacated on other grounds*, Civ. No. 07-041, 2008 U.S. Dist. LEXIS 31262 (S.D. Ga. Apr. 16, 2008). Here, Seaton advised C&M in clear terms long before the present claim arose that it would not consent to any such dual representation in future cases such as this one. [Supp.

Follis Aff. ¶8]. Seaton's revocation of any alleged "consent" is dispositive of the issue before the Court.

C&M never sought the informed consent of Seaton after the June 30, 2003, letter was sent. In fact, Seaton, in no uncertain terms, objected to C&M's representation of companies with interests adverse to Seaton. [Supp. Follis Aff. ¶¶12, 13]. Despite Seaton's explicit objection to C&M's dual representation, C&M, on behalf of certain ACE Companies, demanded arbitration against Seaton in seven new cases, and C&M now seeks to represent Illinois Union in this lawsuit. [*Id.*]. If "informed consent" ever existed (which Seaton disputes), it no longer exists. Seaton's October 2006 notice to C&M that Seaton did not agree to be sued by its own law firm "was a clear and unequivocal revocation of any past waiver which might have permitted C&M to represent parties suing Seaton." [Order at 11]. The Magistrate Judge had no choice other than to honor Seaton's revocation of the alleged waiver and correctly denied admission *pro hac vice* of the C&M attorneys.[15]

It would be manifestly inappropriate for the Court to rule that Seaton is forever bound by the purported "waiver" given by a third-party administrator whose contract has been terminated as to all cases for all time, especially after Seaton explicitly objected to C&M's dual representation before this case arose. In August 2006, Seaton became aware of C&M's representation of another ACE company with adverse interests in a proceeding unrelated to this lawsuit. [Supp. Follis Aff., ¶7]. Upon learning of the concurrent representation and conflict of interest, Seaton promptly objected to C&M's representation of the adverse party. [Supp. Follis Aff., ¶8]. Seaton's timely objection to C&M's representation of the adverse party provided

[15] Illinois Union's assertion that the June 30, 2003, letter constitutes some form of *carte blanche* upon which C&M supposedly "relied" is far-fetched at best, particularly in light of the clear statements made by Mr. Follis that Seaton does not so consent. There is nothing in the ethics rules that permits the law firm's self-created "reliance" to trump the rights of the client.

notice to C&M that Seaton objected to any attempts by C&M to engage in concurrent representation in the future. [Follis Aff., ¶12].

Illinois Union obscures this issue in its voluminous briefs, multiple declarations and hundreds of pages of exhibits. The plain fact is that Seaton explicitly and in no uncertain terms objected to C&M's representation of the ACE Companies, including Illinois Union, in ***October 2006***, long before this case was filed. Since the time of Seaton's objection, C&M has not sought Seaton's informed consent to C&M's conflict of interest. Illinois Union and C&M are simply ignoring the fact that Seaton does not, and has not since October 2006, waived the conflict of interest that arises from C&M's representation of Seaton and parties with adverse interests.

Where there is a conflict of interest and an attorney desires to undertake dual representation, the Rules of Professional Conduct ***require*** the informed consent by both clients. Illinois Union argues that Seaton does not have the right to veto the ACE companies from having C&M act adversely to Seaton. This is contrary to the Rules of Professional Conduct, which require that ***both*** affected clients consent to an adverse representation. The ACE Companies cannot unilaterally dictate that C&M is permitted to act adversely to Seaton. Seaton is entitled to make its own informed decision about whether C&M may represent both Seaton and the ACE Companies where their interests are adverse. Seaton made an informed decision about C&M's dual representation in October 2006 – Seaton did not and still does not want dual representation by C&M. Seaton explicitly objected to C&M representing parties with interests adverse to Seaton and continues to reject C&M's attempts to represent Illinois Union in this case while representing Seaton in other matters. Therefore, it was well within the Magistrate Judge's discretion and legal authority to deny Illinois Union's Motions for Admission *Pro Hac Vice*

based on the existing conflict of interest that Seaton does not, and has not, waived. There is no basis for the Court to overturn the Order as constituting "clear error."

## CONCLUSION

For the foregoing reasons, Seaton respectfully requests that the Court deny Illinois Union's appeal from that Magistrate Judge's Memorandum and Order and affirm the Magistrate Judge's denial of admission *pro hac vice* of Attorneys Devery and Kalish in this matter based upon a conflict of interest.

Respectfully submitted,
**SEATON INSURANCE COMPANY, f/k/a**
**UNIGARD MUTUAL INSURANCE COMPANY**
By its attorneys,

*/s/ John T. Harding*

John T. Harding, *pro hac vice*
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
(617) 439-7500

Thomas M. Robinson, RI Bar # 6193
MORRISON MAHONEY LLP
10 Weybosset Street, Suite 900
Providence, RI 02903-7141
(401) 331-4660

Dated: July 31, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the Electronic Case Filing (ECF) system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 31, 2008.

*/s/ John T. Harding*

John T. Harding