# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SEATON INSURANCE COMPANY, f/k/a UNIGARD MUTUAL INSURANCE COMPANY,<br>Plaintiff,<br><br>v:<br><br>ILLINOIS UNION INSURANCE COMPANY, f/k/a GATX INSURANCE COMPANY,<br><br>Defendant. | C.A. No. 07-332-S |

**DEFENDANT ILLINOIS UNION INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF ITS APPEAL FROM THE MAGISTRATE JUDGE'S MEMORANDUM AND ORDER**

Pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a) and Local Rule Civ. 72(c), Defendant Illinois Union Insurance Company files this reply brief in support of its appeal from the Memorandum and Order Addressing *Pro Hac Vice* and Related Motions, issued by United States Magistrate Judge David L. Martin on June 18, 2008. For the reasons that follow, and as supported in the attached Appendix, the decision of the Magistrate Judge should be reversed.

## ARGUMENT

In its Memorandum of Law in Support of Its Appeal from Magistrate Judge David L. Martin's Memorandum and Order (the "Appeal"), Defendant/Appellant Illinois Union

Insurance Company[1] ("Illinois Union") established that the Magistrate Judge made a series of errors of law and fact in finding that Seaton Insurance Company ("Seaton") had not waived the conflict of interest and that, as a result, Crowell & Moring LLP, was disqualified from representing Illinois Union in this matter. Seaton's Memorandum of Law in Opposition to Illinois Union's Appeal From Magistrate Judge's Memorandum and Order (the "Opposition") reflects more of an effort to avoid addressing the errors than explaining in any way why Illinois Union is wrong.

## I. THE MAGISTRATE JUDGE RULED ON THE BASIS OF DISQUALIFICATION STANDARDS AND DID NOT SUGGEST ANY SPECIAL DISCRETION ON ACCOUNT OF THE *PRO HAC VICE* APPLICATION.

Although Seaton tries to portray the Magistrate Judge's Memorandum and Order (the "Memorandum and Order") disqualifying Crowell & Moring as one of simple "discretion" (Opposition at 21), the issue was plainly one of disqualification. As stated by the Magistrate Judge at the March 6, 2008 motions hearing, "[T]he substantive issue is … whether or not Ms. Devery and Mr. Kalish should be disqualified from representing Illinois Union." (Transcript of March 6, 2008 Motions Hearing before Magistrate Judge David L. Martin ("Transcript") at 11.) The Magistrate Judge's determination to rule on the *pro hac vice* motions was merely procedural; he applied the disqualification standards in the procedural posture of the issue before him. (*See id*. at 7 (describing the "procedural question" of which motion to address first and stating that "obviously, the reason the Court [would not] grant the motion for admission would ... be on this conflict of interest issue").)

[1] Illinois Union Insurance Company is one of a larger group of corporately related insurance companies of ACE USA, for which Crowell & Moring has long been one of its regular counsel. Where necessary, we refer below to that group of companies as the ACE USA Companies.

Accordingly, Seaton was required to bear the "heavy burden of proving facts required for disqualification." *Haffenreffer v. Coleman*, No. 06-299T, 2007 WL 2972575 at *2 (D.R.I. Oct. 10, 2007) (citation omitted); *see also Jacobs v. Eastern Wire Prods. Co.*, No. Civ.A. PB-03-1402, 2003 WL 21297120, at *2 (R.I. Super. May 7, 2003) ("party seeking to disqualify . . . must satisfy a high standard of proof."). And the reviewing court must make "a painstaking analysis of the facts" and "precise application of the precedent." *Gray v. R.I. Dept. of Children, Youth & Families*, 937 F. Supp. 153, 158 (D.R.I. 1996). Only after considering, and then balancing, the competing interests, can the reviewing judge determine whether disqualification is warranted. *See id*. at 156; *see also Haffenreffer*, 2007 WL 2972575 at *2 ("In deciding whether a party's counsel should be disqualified, a Court must balance the party's right to choose its counsel against the need to protect the integrity of the judicial process.").

## II. SEATON DOES NOT ADDRESS THE CONTROLLING ISSUES.

### A. Seaton Does Not Respond To The Magistrate Judge's Reliance On The Wrong Version of Recently Amended Rule 1.7

In its Appeal, Illinois Union showed that the current version of Rule 1.7(b), which requires "informed consent, confirmed in writing," was not adopted by the Rhode Island Supreme Court until February 16, 2007, and not effective until April 15, 2007. (*See* Appeal at 14-16.) Thus, "until Rhode Island amended its Rules of Professional Conduct last year, conflict waivers didn't need to be in writing[.]" (Transcript at 23); *see also Hartford Cas. Ins. Co. v. A&M Assoc., Ltd.*, 200 F. Supp. 2d 84, 92, n. 1 (D.R.I. 2002) (reciting previous Rule 1.7(b)).

In the key section of his Memorandum and Order, the Magistrate Judge pointedly disregarded the references to the prior oral waiver and understanding described by Mr. Hendler (and reiterated in the June 2003 letter from Mr. Hendler to Mr. Ryan (the "June 2003 Letter")) based on the theory that "there is no evidence that those 'understandings and waivers,' which

were applicable to Seaton, were in writing." (Memorandum and Order at 4, n. 4.) (*See* Declaration of Clifford B. Hendler ("Hendler Decl.") at ¶¶ 7-13, Exh. A.)

Seaton's Opposition only obliquely addresses the point. (*See* Opposition at 9, n. 7 (stating that the fact that the Rules were amended in 2007 to require a writing "is of no moment."); *see also* Opposition at 3 (stating "Whether a 'writing' is technically required or not by the ethics rules…[.]).) Instead, Seaton states only that the amended Rule 1.7 was "in effect" by the time it brought this case. (*Id*.) But the Rhode Island Supreme Court's Order adopting the amended Rules applied the previous version of the Rules – which did not require an advance waiver of conflicts to be in writing – to acts or omissions committed prior to the effective date. (*See* Appeal at 15, n.5 (citing to Order In re R.I. Rules of Prof'l Conduct (R.I. Sup. Ct. Feb. 16, 2007).) The reason for such prospective application is perfectly clear: the scope and efficacy of the waiver must be judged in light of the actions taken in reliance on it, which in turn requires reference to the rule in effect at this time. At the time Crowell & Moring embarked upon these representations and discussed them with Mr. Follis, an oral waiver was sufficient.

### B. Seaton Does Not Address The Magistrate Judge's Misunderstanding Of The "Revocability" Of The Waiver

The Appeal also demonstrated that the waiver was not a "waiver extending . . . into perpetuity and which would be irrevocable" (Memorandum and Order at 6), but a rather standard prospective waiver that only operated to waive conflicts with respect to Randall/Cavell's right to claim a conflict arising from cases assigned to Crowell & Moring by Randall/Cavell subject to the waiver, i.e., cases assigned before the waiver was revoked. (*See* Appeal at 20-21.) Seaton thus was free at any time to attempt to revoke the waiver prospectively, i.e., as to any new cases it assigned to Crowell & Moring, but not for cases that Crowell & Moring had already accepted in reliance on the waiver. (*See id*. at 21 (emphasis

added).) Of course, even with respect to those cases, Seaton was free to withdraw those cases from Crowell & Moring at any time.

Illinois Union's Appeal also demonstrated that Mr. Ryan's assertions about the June 2003 Letter's illustration of the substantive scope of the waiver – that it never extended to cases where the ACE USA Companies and Seaton "were actually adverse" – are inconsistent with the actual words of the June 2003 Letter, which stated that Crowell & Moring can represent the ACE USA Companies in cases "in which Randall-administered companies [such as Seaton] may have an adverse interest[.]" (Hendler Decl. at Exh. A.)

The Opposition fails to refute either of these simple propositions and instead relies upon blind repetition of its false description of the waiver as "effective for all time as to all future cases." (*See, e.g.*, Opposition at 27.) Seaton also continues its canard that when "adversity" actually develops it should have a chance to reconsider the waiver or that Illinois Union was required to re-request the waiver. (*See id.* at 24.) But, as Illinois Union stated in its Appeal, "There is no case law requiring a second disclosure . . . for an advance waiver to be valid." *VISA U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1105 (N.D. Cal. 2003).

**C. <u>Seaton Neither Addresses The Magistrate's Failure To Balance The Interests Or Suggests That It Would Prevail In That Balance</u>**

Perhaps most important, the Appeal also established that a court reviewing a motion to disqualify an opposing party's chosen counsel must determine whether disqualification is warranted on the particular facts by considering, and then balancing, the competing interests, including the vital interest that the opposing party has in being allowed to proceed with its chosen counsel. (*See* Appeal at 24); *see also Gray*, 937 F. Supp. at 156; *Haffenreffer*, 2007 WL 2972575 at *2 ("In deciding whether a party's counsel should be disqualified, a Court must balance the party's right to choose its counsel against the need to protect the integrity of the

judicial process."). This Court has refused to "rigidly or automatically disqualify attorneys" where the balance of interests weighs against such remedy and does not further the purposes which underlie the Rule. *Gray*, 937 F. Supp. at 160.

Although the Magistrate Judge plainly failed to consider these principles, (Memorandum and Order at 12 (concluding only that "C&M has a conflict of interest . . . and Seaton has not waived that conflict")), Seaton's Opposition ignores this basic error. Nor does Seaton even itself try to argue that disqualification is warranted upon a balancing of interests.

Instead, Seaton cites several cases from other jurisdictions and asserts that "courts are critical of 'blanket' future conflicts waivers." (Opposition at 24.) But Seaton's cases either support Illinois Union's position or address very different issues. *See Fla. Ins. Guaranty Ass'n v. Carey Canada, Inc.*, 749 F. Supp. 255, 260 (S.D. Fla. 1990) (not involving any oral waiver agreement, but only an assertion of implied consent "from failure of low-level claims adjusters to object to adverse representation"); *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 227-29 (7th Cir. 1978) (where confidential information could and likely would be used against a client, "consent to the mere representation of a client with adverse interests does not amount to . . . consent to breach of confidential disclosure").

## III. SEATON IMPERMISSIBLY BROADENS THE SCOPE OF THE MAGISTRATE JUDGE'S ORDER.

Seaton says "there was no evidence that Seaton ever agreed in any form (whether oral or written)" to the conflicts waiver asserted by Illinois Union. (Opposition at 10, n. 9.) But that ignores Mr. Hendler's own declaration before the Magistrate Judge. Seaton likewise asserts that "the absence of any . . . document which would establish the terms and conditions of the alleged waiver" was a sufficient reason for the Magistrate Judge to conclude that the waiver was not proven. (Opposition at 3; 25-26.) But that is not correct with respect to the oral waiver. The

plain fact of the matter is that Mr. Hendler's affidavit established an oral waiver and its scope; moreover, the additional extrinsic evidence demonstrated that it was indeed a broad waiver. (*See* Hendler Decl. at ¶¶ 7-13, Exh. A.)

## IV. THE ISSUE OF INFORMED CONSENT IS A FACTUAL ISSUE AND WAS NOT RESOLVED BY THE MAGISTRATE JUDGE.

Seaton argues that the Magistrate Judge has ruled that Seaton did not provide its "informed consent" to the conflicts waiver. (*See, e.g.*, Opposition at 25-26, 30-34.) But whether the oral waiver was "informed" was not addressed by the Magistrate Judge. Seaton does not, and nor has it ever, contradicted the sworn statements of Mr. Hendler's declaration, which indicate that he and Mr. Burns discussed the conflicts waiver at length with specific reference to the ACE Companies. (*See* Hendler Decl. at ¶¶ 7-13.)

### A. Informed Consent is a Factual Issue

"Informed consent" is an evidentiary, not legal, issue. It involves the factual question of whether in 2001 – when Crowell & Moring was engaged by Randall/Cavell for Seaton and Mr. Hendler and Mr. Burns discussed and agreed upon the conflict waiver – those discussions, in light of his knowledge and experience, were detailed enough for Mr. Burns to be "informed" when he consented to the waiver. These discussions were covered in detail by Mr. Hendler's affidavit (*id*.) and remain unchallenged by Seaton.

Seaton's Opposition fails to provide (or suggest) any evidence that contradicts the statements contained in Mr. Hendler's declaration regarding his conflicts discussion and waiver agreement with Mr. Burns in 2001. Thus, it remains undisputed that in 2001 Mr. Burns, for Randall/Cavell on behalf of the insurance companies for whom it served as third-party administrator, engaged Crowell & Moring to represent, among others, Seaton in various cases. (Hendler Decl. at ¶¶ 7-13.) It is equally undisputed that Mr. Burns, on behalf of Seaton,

negotiated for the engagement of Crowell & Moring and granted Crowell & Moring a broad waiver "to remain as free to take on new matters for the ACE USA Companies after [Crowell & Moring] started representing Randall/Cavell-administered carriers as [Crowell & Moring] had been before [Crowell & Moring] started representing Randall/Cavell-administered carriers, which meant [Crowell & Moring] had to be free to represent the ACE USA Companies adverse to Randall/Cavell-administered carriers." (*Id*. at ¶ 11.)

### B. <u>Illinois Union Can Provide the Court with a Declaration from Mr. Burns Confirming Mr. Hendler's Statements and Establishing the Waiver</u>

Seaton's theory is that Illinois Union made a "fatal" mistake in not presenting "evidence supporting C&M's contentions that Mr. Burns agreed in 2001" to waive conflicts or "that Mr. Burns gave informed consent" in granting such waiver. (*See, e.g.*, Opposition at 12.) As discussed above, Mr. Hendler's declaration addressed precisely that. Seaton does not and did not contradict that declaration. This evidence suffices. There was no mistake, fatal or otherwise.

But to the extent that Seaton's Opposition raises a factual issue, the issue is resolvable by this Court. A District Court reviewing a magistrate judge's order on a pretrial, nondispositive matter pursuant to 28 U.S.C. § 636(b)(1)(A) has the discretion to receive and consider new evidence if the circumstances warrant. *Conetta v. Nat'l Hair Care Ctrs., Inc.*, 236 F.3d 67, 74 (1st Cir. 2001). Indeed, Seaton's allusions to a "fatal mistake" are a bluff. In connection with an arbitration matter addressing parallel issues, Seaton likewise called for the statement of Mr. Burns to confirm the history of events at issue – and Mr. Burns' affidavit was provided. Illinois Union thus submits the declaration of Mr. Burns, included in the attached Appendix, confirming the existence and circumstances of the waiver. Illinois Union has also appended the written correspondence with Seaton confirming that the oral agreement was not in any way contemporaneously reflected, at the outset, in the written requests to Seaton or the

retention agreement entered into by the parties. The first *written* reference to the waiver is in the later letter discussed by the Magistrate Judge.

Thus, there is no question here about the existence of the oral waiver, only its impact, given both (a) the Magistrate Judge's failure to consider its impact at all, and (b) the Magistrate Judge's failure to balance the competing interests in deciding whether to disqualify Crowell & Moring from appearing against Seaton in this case.

## CONCLUSION

The decision of the Magistrate Judge should be reversed.

Respectfully submitted,

ILLINOIS UNION INSURANCE
COMPANY, f/k/a GATX INSURANCE
COMPANY

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

/s/ Robert K. Taylor
Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8200 FAX
rkt@psh.com

DATED: September 4, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing REPLY BRIEF IN SUPPORT OF DEFENDANT ILLINOIS UNION INSURANCE COMPANY'S APPEAL FROM MAGISTRATE JUDGE'S MEMORANDUM AND ORDER was filed with the Clerk of the United States District Court for the District of Rhode Island this 4th day of September, 2008 and is available for viewing and downloading to the following ECF registered counsel of record:

John T. Harding / Morrison Mahoney LLP
jharding@morrisonmahoney.com

Thomas M. Robinson / Morrison Mahoney LLP
trobinson@morrisonmahoney.com

/s/ Robert K. Taylor

1006187_1/8031-2