# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

SEATON INSURANCE COMPANY, f/k/a :
UNIGARD MUTUAL INSURANCE COMPANY, :
:
Plaintiff, :
:
v. : CA 07-332 A
:
ILLINOIS UNION INSURANCE COMPANY, :
f/k/a GATX INSURANCE COMPANY,
:
:
Defendant. :

**DECLARATION OF ROBERT B. BURNS**

I, ROBERT B. BURNS, declare as follows:

1. I am over the age of twenty-one years and am otherwise competent to give this declaration. I have personal knowledge of the matters stated herein and know them to be true and correct.

2. I am currently General Counsel at Strube, Inc. and have held this position since October, 2007. Prior to my employment at Strube, I was an assistant vice president and managed litigation for Stonewall Insurance Company and Castlewood (US) Inc. (now known as Enstar (US) Inc.) ("Castlewood") from April, 2006 to October, 2007. From November, 2005 until April, 2006, I was a consultant with Insurance Resolution, Inc. Before that, I was Vice President and Senior Counsel at Stonewall Insurance Company and Randall America, now known as Cavell America ("Randall/Cavell"). I held this position from approximately October, 1999 until November, 2005. (A copy of my CV is attached.)

3. In 2001, as part of my duties at Randall/Cavell, I was in charge of managing litigation involving certain insurance carriers whose claims were handled by Randall/Cavell, including Seaton Insurance Company. At this time, I was authorized to retain counsel on behalf of Randall/Cavell-administered carriers, which included negotiating rates and other terms of retention, including waiving current or potential conflicts of interest where I believed doing so was appropriate.

4. During the winter of 2000-2001, Randall/Cavell was seeking to engage law firms to serve as national counsel for Randall/Cavell-administered carriers. I was well-aware of Crowell & Moring's long-term relationship with the ACE USA Companies (and its predecessors) because I had previously run a coverage litigation management unit for an ACE USA Companies' predecessor and worked extensively with Crowell & Moring attorneys in their role as National Coordinating Counsel for the ACE USA Companies. I had been very impressed with Crowell & Moring's insurance coverage work. To this end, I initiated discussions and meetings with Cliff Hendler and Andy Marks about Crowell & Moring's ability to take on work for Randall/Cavell-administered carriers.

5. Conflicts of interest among and between insurance companies in connection with coverage work were frequent and common. During our very first discussions and meetings, Mr. Hendler was explicit that Crowell & Moring could only take on work for Randall/Cavell-administered carriers if the Randall/Cavell-administered carriers agreed to waive all conflicts of interest regarding the ACE USA Companies. Mr. Hendler stated to me, in substance, that he would have to be as free to take on matters for ACE USA Companies as he had always been. I readily understood this to mean that Crowell & Moring could, and likely would, represent the ACE USA Companies adverse to Randall/Cavell-administered carriers. I was not surprised by this request because I understood that Mr. Hendler would not wish to jeopardize his ability to take on

work for ACE USA Companies by taking on cases for Randall/Cavell. This understanding that Randall/Cavell was waiving all conflicts of interest claims as to the ACE USA Companies was the basis upon which all discussions about Crowell & Moring's taking on cases for Randall/Cavell, and ultimately their actual taking on cases for Randall/Cavell, were based.

6. Beyond that basic condition upon which our discussions were based, Mr. Hendler ultimately made clear that before Crowell & Moring could agree to take on any cases for Randall/Cavell, Randall/Cavell would have to agree to a number of additional conditions imposed by the ACE USA Companies. Among these additional conditions, I understood that (i) Crowell & Moring had to obtain the ACE USA Companies' consent on a case-by-case basis to take on any new representation for the Randall/Cavell-administered carriers, (ii) the ACE USA Companies had a right of first refusal to retain Crowell & Moring if a case were filed against both the ACE USA Companies and a Randall/Cavell-administered carrier, and (iii) Crowell & Moring could not file a cross-claim, bad faith claim, or any other extra-contractual claim against the ACE USA Companies on behalf of a Randall/Cavell-administered carrier.

7. I summarized the conflict rule as one in which the ACE USA Companies always take precedence over Randall/Cavell-administered carriers on the question of representation by Crowell & Moring, or more simply, in case of conflicts, "ACE always wins."

8. I agreed on behalf of the Randall/Cavell-administered carriers to these conflict waivers and further conditions. I then retained Crowell & Moring on a fixed-fee basis to handle a substantial book of cases involving Randall/Cavell-administered carriers. This fixed-fee arrangement was in place for approximately two years.

9. In 2003, Tom Ryan became the head of all litigation at Randall/Cavell. He sought to change the fixed-fee rate structure we had previously used with counsel to a more typical hourly rate structure, which was ultimately negotiated with Crowell & Moring. In connection with this

process, I specifically discussed with Mr. Ryan the blanket waiver – in conflict situations, "ACE always wins" – that Randall/Cavell had given to Crowell & Moring and the additional conditions imposed by the ACE USA Companies to which Randall/Cavell agreed.

10. In April, 2006, I went to work at Castlewood, which was then managing the claims of Seaton and Stonewall. At this time, I reported directly to Mr. Follis who was also employed by Castlewood; Mr. Follis was a senior vice president of the company and had primary responsibility for Seaton's book of business. I had similar responsibility for Stonewall's book of business.

11. In September, 2006, Mr. Follis told me that Crowell & Moring had demanded arbitration against Seaton on the ACE USA Companies' behalf in connection with several reinsurance contracts and he was displeased about that because Crowell & Moring was a counsel for Seaton. At this time, the relationship between Castlewood and Seaton on the one hand and Randall/Cavell on the other was hostile and openly confrontational. Given this, I called Mr. Hendler and suggested it might be a good idea from a political standpoint – in the sense that if he wanted to retain Seaton as a client – he should try to address Mr. Follis' concerns. Mr. Hendler subsequently copied me on an email he sent to Mr. Follis in which he accurately explained the history behind the conflicts waiver. I do recall telling Mr. Follis at some point, either before or after that letter, that Crowell & Moring was, in fact, permitted to take on such a representation pursuant to the conflicts waiver Randall/Cavell had given Crowell & Moring.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

State: PA
County: Lancaster

Executed on July 30, 2008
in Marietta, PA

Tina L Pennell

Robert B. Burns

Robert B. Burns

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Tina L. Pennell, Notary Public
Columbia Boro, Lancaster County
My Commission Expires Sept. 15, 2011
Member, Pennsylvania Association of Notaries