# EXHIBIT C

P. 1

* * * COMMUNICATION RESULT REPORT ( SEP. 4.2001 2:00PM ) * * *

TTI C & M

| FILE MODE | OPTION | ADDRESS (GROUP) | RESULT | PAGE |
|---|---|---|---|---|
| 224 MEMORY TX | | 667#99240011#16177251599# | OK | P. 5/5 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL
E-2) BUSY
E-3) NO ANSWER
E-4) NO FACSIMILE CONNECTION

crowell moring

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

**PRIVILEGED AND CONFIDENTIAL/
ATTORNEY-CLIENT COMMUNICATION/
ATTORNEY WORK PRODUCT**

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

FOR ASSISTANCE OR CONFIRMATION
(202) 624-2934
TELECOPY NUMBER
(202) 628-5116

**TELECOPY TRANSMISSION**

To: Robert B. Burns
Vice President, Randall America

September 4, 2001

From: Clifford B. Hendler

SENDER'S DIRECT NO.: (202) 624-2928

FACSIMILE NO.: (617) 725-1599

TELEPHONE NO.: (617) 725-1516

NO. OF PAGES INCLUDING THIS PAGE: 5

Re: Stonewall/Studebaker Worthington

Bob:

Per our conversation this morning attached is the executed Agreement to Provide Legal Services. Thank you very much for the opportunity to represent you.

crowell moring

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

**PRIVILEGED AND CONFIDENTIAL/
ATTORNEY-CLIENT COMMUNICATION/
ATTORNEY WORK PRODUCT**

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

FOR ASSISTANCE OR CONFIRMATION
(202) 624-2934
TELECOPY NUMBER
(202) 628-5116

**TELECOPY TRANSMISSION**

To: Robert B. Burns
Vice-President, Randall America

September 4, 2001

From: Clifford B. Hendler

SENDER'S DIRECT NO.: (202) 624-2928

FACSIMILE NO.: (617) 725-1599

TELEPHONE NO.: (617) 725-1516

NO.OF PAGES INCLUDING THIS PAGE: 5

---

Re: Stonewall/Studebaker Worthington

Bob:

Per our conversation this morning attached is the executed Agreement to Provide Legal Services. Thank you very much for the opportunity to represent you.

Cliff H.

---

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL TO WHOM, OR THE ENTITY TO WHICH, IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone (collect), and return the original message to us at the above address via the U.S. Postal Service. Thank You.

crowell & moring

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Clifford B. Hendler
(202) 624-2928
chendler@crowell.com

September 4, 2001

**PRIVILEGED AND CONFIDENTIAL/
ATTORNEY-CLIENT COMMUNICATION/
ATTORNEY WORK PRODUCT**

**By Telecopy and Overnight Mail**

Mr. Robert B. Burns
Vice President
Ken Randall America, Inc.
7 Bulfinch Place
P.O. Box 9510
Boston, MA 02114-9510

Re: Agreement to Provide Legal Services

Dear Bob:

Please find attached a signed copy of the Agreement to Provide Legal Services that you overnighted down to us last Thursday.

Andy and I and the rest of the Crowell & Moring insurance team greatly appreciate your having selected our firm to serve as one of your national counsel. We look forward to working with you and your colleagues and to trying our best to make this innovative alternate fee arrangement a success for all concerned.

Thank you again for looking to us to represent you.

Sincerely,

Clifford B. Hendler

Enclosure

1839856

# AGREEMENT TO PROVIDE LEGAL SERVICES

Crowell & Moring, ("The Firm") will provide legal services to Ken Randall America and/or Resolute Management on behalf of their managed companies ("The Companies") under this agreement for one year in accordance with the understandings set forth below.

The firm will handle from 1-10 cases for $1,000,000 per year, from 11-20 cases for $1,600,000 per year, from 21-30 case for $2,300,000 per year and from 31-40 cases for $2,800,000 per year.

I. The total fee proposed for the 12-month period includes The Firm attorneys' fees and expenses and the fees and expenses of local counsel retained in connection with the individual litigation matters. With regard to the latter, The Firm retains the authority to retain and discharge local counsel, including the authority to discharge local counsel currently serving in the matters that are the subject of the bid. The proposal does not include expert fees or expenses of experts retained on behalf of The Companies, Joint Defense Assessments (if any) or fees charged by Mediators/Arbitrators, which shall be borne directly by The Companies. The Firm also will not be responsible for any costs incurred by prior counsel even if not billed until The Firm has assumed the representation.

The Fixed-Fee Agreement Price shall include, but not be limited to:

A. Attorney fees, paralegal, file clerk and administrative fees generated by The Firm
B. Investigator fees of investigators retained by The Firm
C. Local counsel fees and expenses
D. Court Reporter charges
E. Travel, telephone, federal express, fax, copying, photographs, postage, messenger services and other similar expenses
F. Cost of exhibits, non-trial and trial use
G. Trial related fees and expenses
H. Appeals fees and expenses
I. Mediation and arbitration fees and expenses
J. The Firm's cost to depose plaintiffs technical experts
K. The Firm's cost to depose fact witnesses, damage witnesses, plaintiffs and other case-specific witnesses

The total fee proposed for the 12-month period shall be paid to The Firm in 12 equal installments by wire transfer on the 10th day of each month. The firm will submit monthly invoices for each of the matters in which it is representing The Companies consistent with The Companies standard billing practice guidelines (which identify with specificity time charges, associated fees, and disbursements).

The Firm's proposal contemplates (within the bid amount) the costs of attending an annual meeting for the claim and management personnel and The Firm attorneys with principal responsibility for the matters that are the subject of this bid, in order to discuss general status, strategy and objectives, new legal developments and claim trends.

The Firm's fee can be adjusted by the assignment or removal of cases from The Firm. In the event that The Firm has 10 matters and an eleventh is assigned, the fee amount for the 11-20 range will be applied for the remainder of the one year period or until the case load shifts. Conversely, if The Firm goes from 21 to 20, the fee range would drop for the remainder of the period or until the caseload shifts.

II. Staffing

A. The Companies' representative shall be permitted to approve the individual attorneys working on each "matter" assigned to this firm. The Firm will work with The Companies to ensure that The Companies' matters are staffed in an efficient and professional manner. The Companies recognizes that The Firm will have the authority under the terms of the Fixed Price Agreement to assign legal personnel to a matter when The Firm determines that the assignment will enhance its representation of The Companies' interest.

B. The Firm will provide full information with respect to the professional qualifications of all lawyers having a significant involvement in The Companies matters. The Firm will work closely with The Companies personnel to assure that attorneys and other personnel assigned to The Companies matters enjoy The Companies confidence in their expertise, credibility and professional demeanor.

III. The Companies Claim Handler shall approve settlement amounts and the timing of settlement offers.

IV. The firm and The Companies understand that in light of the uniqueness of this fixed fee arrangement and the lack of identity and litigation status of the specific cases to be assigned, The Firm and The Companies will review this fixed-fee agreement after the first three months and shall in good faith examine any inequities in this agreement.

V. Each lawsuit counts as one "matter," with the following exceptions:

A. In the event that the same insured is involved in another lawsuit, in a different state, with The Companies involving the same type of underlying exposure (i.e., environmental, asbestos, NIHL, etc.), that additional piece of litigation would count as an additional 1/3 of a "matter". Thus if The Companies were sued by, say Company X for recovery of environmental losses in both California and Illinois (each case presumably involving different sites), The Firm would handle both cases as 1-1/3 "matter".

B. In the event that the same insured is involved in another lawsuit, or claim, but that other litigation involves a different type of exposure, representation in that new litigation would be counted as 2/3 of a "matter". Each additional different exposure representation involving the same insured would count as an additional 1/3 of a "matter." Thus if The Firm were to represent The Companies in litigation against Company X involving one environmental action, one asbestos action and two NIHL actions, these three cases would constitute 2-2/3 "matters" (environmental=1, asbestos=2/3 and NIHL=2/3 + 1/3=1).

C. In the event that multiple insureds are involved in the same litigation as a result of corporate mergers, acquisitions, sales, or divestitures, (i.e. Studebaker-Worthington; Houston Oil/El Paso/Tenneco), such multiple entities will constitute "one" case count.

D. For each additional related insurers of The Companies (including but not limited to Stonewall, Seaton and GEICO) who is a named defendant in a declaratory judgment action would be represented by The Firm under the same "matter" without additional cost or count.

VI. Additional Provisions

A. The Firm will assume responsibility for all pending cases for which it receives instruction from The Companies once this Agreement commences.

B. The Firm will cover only those costs incurred after the date it takes over a case and has the discretion to terminate or reduce the participation of any previously consulted expert, with The Companies approval.

VII. Good Faith Yearly Appraisal

The Companies and The Firm mutually recognize and agree that it is their desire and expectation that both parties will benefit financially from this relationship. Accordingly, at the end of the tenth month of each full year, The Companies and The Firm will review and discuss the results obtained that year and, further, the parties will review and discuss the economic impact this Agreement has had on each of the parties during the year just passed. If either party has been adversely affected financially, The Companies and The Firm will, in good faith, negotiate a new fixed-fee amount, for the upcoming year.

VIII. Either party to this agreement may elect to terminate the relationship with sixty (60) days notice after the first anniversary of the agreement.

Crowell & Moring

Resolute Management

Ken Randall America, Inc.